1  Anthony L. Lanza, Bar No. 156703
   Brodie H. Smith, Bar No. 221877
2  LANZA & SMITH
   A Professional Law Corporation
3  3 Park Plaza, Suite 1650
   Irvine, California 92614-8540
4  Telephone (949) 221-0490
   Facsimile (949) 221-0027
5
6  Attorneys for Defendants Robert T. Hume, Joey C. Montoya,
   Stanley Crawford, Avrum Katz, Kwo Lee, Inc., and Shuzhang Li
7
8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10 HARMONI INTERNATIONAL SPICE,          CASE NO: 2:16-cv-00614
   INC., a California corporation, and
11 ZHENGZHOU HARMONI SPICE CO.,          Honorable Beverly Reid O'Connell
   LTD., a corporation,
12
              Plaintiff,                 **OPPOSITION TO *EX PARTE*
13                                       APPLICATION FOR EXPEDITED
   v.                                    DISCOVERY, BY DEFENDANTS
14                                       HUME, MONTOYA, CRAWFORD,
   WENZUAN BAI, an individual, JICHENG   KATZ, LI, AND KWO LEE, INC.**
15 YE, an individual, RUOPENG WANG, an
   individual, ROBERT T. HUME, an
16 individual, JOEY C. MONTOYA, an
   individual, STANLEY CRAWFORD, an
17 individual, AVRUM KATZ, an individual,
   HUAMEI CONSULTING CO., INC., a
18 corporation, KWO LEE, INC., a California
   corporation, SHUZHANG LI, an individual,
19 C. AGRICULTURE GROUP CORP.,
   corporation, HEIBEI GOLDEN BIRD
20 TRADING CO., LTD., a corporation,
   QINGDAO TIANTAIXING FOODS, CO.,
21 LTD., a corporation, JINXIANG HEJIA
   CO., LTD., a corporation, QINGDAO
22 LIANGHE INTERNATIONAL TRADING
   CO., LTD., a corporation, CHEN
23 HONGXIA, an individual, JIN XIA WEN,
   an individual, MINGJU XU, an individual,
24 CAI DU, an individual, QINGHUI ZHANG,
   an individual, LUCY WANG, an individual,
25
26            Defendants.
27
28
---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants Robert T. Hume ("Hume"), Joey C. Montoya ("Montoya"), Kwo Lee, Inc., a California corporation ("Kwo Lee"), and Shuzhang Li ("Li"), Avrum Katz ("Katz"), and Stanley Crawford ("Crawford") (collectively "Defendants") *specially* appear to oppose Plaintiffs' Ex Parte Application for Expedited Discovery on the grounds set forth in this Opposition.

LANZA & SMITH, PLC

March 7, 2016

/s/Brodie H. Smith
Brodie H. Smith
3 Park Plaza, Suite 1650
Irvine, CA  92614
Phone: (949) 221-0490
Fax:     (949) 221-0027
Brodie@lanzasmith.com
*Attorneys for Defendants*
Robert T. Hume, Kwo Lee, Inc.,
Shuzhang Li, Joey Montoya, Avrum Katz,
and Stanley Crawford

1
2

# TABLE OF CONTENTS

3

<u>Page</u>

4

I.   INTRODUCTION ...................................................................................1

5

II.  BACKGROUND OF THE CASE.........................................................3

6

   A.  Background Regarding Plaintiff Harmoni and the FGPA...........................4

7

   B.  The FGPA Manipulates U.S. Antidumping Law and Procedures ...............5

8

   C.  Harmoni Blocks Crawford and Katz from Retail and Wholesale Markets ..7

9

10

III. ANALYSIS.............................................................................................8

11

   A.  Harmoni Fails to Establish Exigent Circumstances
      for its *Ex Parte* ....................................................................................8

12

13

   B.  Harmoni Fails to Show Good Cause for Expedited Discovery ...................9

14

      1.  A preliminary injunction is pending ....................................11

15

      2.  The proposed discovery is overbroad ...................................11

16

      3.  There is no legitimate purpose for the requested discovery ................12

17

      4.  The burden on defendants would be substantial...................................14

18

      5.  The requested discovery is premature ...................................14

19

20

   C.  The Litigation Privilege Bars the Relief
      Sought by Plaintiffs' PI Motion .......................................................15

21

22

      1.  The litigation privilege is absolute and broadly construed...................16

23

      2.  The litigation privilege applies to administrative hearings
         and quasi-judicial hearings ................................................................17

24

      3.  The litigation privilege applies to all tort and quasi-tort claims...........18

25

26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   D.  The *Noerr-Pennington* Doctrine Disallows Plaintiffs' RICO Claim .......19

   E.  The Rule Against Prior Restraints on
      Speech Bars Harmoni's PI Motion ..........................................................21

   F.  The PI Motion is a waste of Time Because There is No Threat of
      Irreparable Harm..................................................................................22

   G.  This Court Lacks Personal Jurisdiction ...................................................22

      1.  Personal Jurisdiction Under R.I.C.O .................................................22

      2.  The Court lacks personal jurisdiction over Montoya,
          Crawford and Katz in California .......................................................23

IV.  CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                              <u>Page</u>

*Albertson v. Raboff,* <u>46 Cal. 2d 375, 378-379 (1956)</u>.................................................. 17

*American Legalnet, Inc. v. Davis,*

   <u>673 F.Supp.2d 1063, 1067 (C.D. Cal. 2009)</u> ....................................... 10, 11

*Aronson v. Kinsella,* <u>58 Cal. App. 4th 254, 262 (1997)</u> ...........................................17

*Asherman v. Nattinson,* <u>23 Cal.App.3d 861, 865 (1972)</u> ...................................17, 18

*Associates v. Environ Systems, Inc.,*<u>14 Cal.App.4th 842, 845 (1993)</u>....................19

BE & K Construction Co. v. NLRB, <u>536 U.S. 516, 525 (2002)</u> ............................20

*Bill Johnson's Restaurants, Inc. v. NLRB,* <u>461 U.S. 731 (1983)</u> ............................20

*Brandenberg v. Sidel,* <u>859 F.2d 1179 (4th Cir. 1988)</u> ...............................................19

*Butcher's Union Local No. 498 v. SDC Inv., Inc.,*

   <u>788 F 2nd 535, 539 (9th Cir. 1986)</u> ................................................................23, 24

*Dole Food Co. v. Watts,* <u>303 F.3d 1104, 1110 (9th Cir. 2002)</u>.............................22

*Duncan v. Al Stuetzle,* <u>76 F.3d 1480 (9th Cir. 1996)</u> ...............................................19

*Duncan v. Atchison, T. & S. F. R. Co.,*<u>72 F. 808 (9th Cir. 1896)</u>...........................18

*Empress LLC v. City & County of S.F.,* <u>419 F.3d 1052, 1056 (9th Cir. 2005)</u> .......20

*Friedman v. Kanchecht,* <u>248 Cal.App. 2d 455, 460 (1967)</u>........................... 17

*In re Countrywide Fin. Corp. Derivative Lit.*

   <u>542 F.Supp.2d 1160, 1179 (C.D. Cal. 2008)</u> ......................................... 10

*In re Intermagnetics America, Inc.* <u>101 B.R. 191, 192-193 (C.D. CA 1989)</u> .......... 9

*Jacob B. v. County of Shasta,* <u>40 Cal.4th 940, 957-959 (2007)</u> ................................ 16

*Kachig v. Boothe,* <u>22 Cal.App.3d 626, 641 (1971)</u> ...............................................17

*King v. Borges,* 28 Cal. App. 3d 27, 34 (1972) ......................................18

*Lee v. Flick,* 135 Cal. App. 4th 89, 97 (2005) ........................................18

*Lewis v. Linn,* 209 Cal. App. 2d 394, 399 (1962) ..................................17

*Martin v. Kerney,* 51 Cal.App.3d 309, 311 (1975) ................................18

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*,

   194 F.R.D. 618, 623 (N.D. Ill. 2000) .......................................... 10

*Mission Power Engineering Co. v. Continental Casualty Co.*,

   883 F. Supp. 488, 492 (C.D. Cal. 1995) .........................................8

*Monex Deposit Co. v. Gilliam,* 680 F.Supp.2d 1148, 1161 (C.D. Cal. 2010) .........19

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ....................................21

*Oakley, Inc. v. McWilliams,* 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) ..........22

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118 (1990) ...........19

*Qwest Comm. Int'l, Inc. v. World Quest Networks, Inc.*

   213 F.R.D. 418, 419 (D.Colo. 2003) .......................................... 10

*Raider v. Thrasher,* 22 Cal. App. 3d. 883, 887 (1972)..............................................16

*Rubenstein v. Rubenstein,* 81 Cal. App. 4th 1131, 1146 (2000).............................18

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd. et al.,*

   2015 WL 6680807, at 11 (C.D. Cal. 2015) (O'Connell, J.) ................................ 10

*Silberg v. Anderson,* 50 Cal. 3d 205, 218-219 (1990)........................................ 16, 17

*Smith v. Maldonado,* 72 Cal.App.4th 637, 645 (1999) ...................................... 19

*Sosa v. DIRECTV, Inc.,* 437 F.3d 923 (9th Cir. 2006) ...................................... 20

*Thornton v. Rhodan,* 245 Cal.App.2d 80, 93 (1966) ...................................... 17

*Totes-Isotoner Corp. v. United States,* 594 F.3d 1346 (Fed. Cir. 2010) ............... 3, 7

OPPOSITION TO EX PARTE APPLICATION FOR EXPEDITED DISCOVERY

iv

X:\D\705-01\Pleadings\Opp. to Ex Parte Eped. Disc\Opposition to Ex Parte - -  030716.docx

*Transcom v. United States*, 294 F.3d 1371 (Fed. Cir. 2002) ........................................ 5

*Western Electro-Plating Co. v. Henness,* 196 Cal.App.2d 564, 570 (1961) ............... 19


Codes

19 C.F.R. § 351.102(b)(29)(v) .......................................................7, 8, 13

19 C.F.R. § 351.213(b)(1) .........................................................................5

19 C.F.R. § 351.213(b)(2) .........................................................................5

19 C.F.R. § 351.213(d)(1) .........................................................................5

19 U.S.C. § 1675 ......................................................................................5

19 U.S.C. § 1677f-1 ..................................................................................5

19 U.S.C. § 1677(9)(c) ........................................................................7, 8, 12

19 U.S.C. § 1677(10) ............................................................................ 12

18 U.S.C. §1965(b) ......................................................................... 22, 23

28 U.S.C. §1581 .......................................................................................7

81 Fed. Reg. 736 .......................................................................................5

California Business and Professions Code Section 17200 .........................................19

Civil Code § 47(b) .......................................................................16, 17, 18

*Educ. Code* § 48918.6 ...............................................................................18

OPPOSITION TO EX PARTE APPLICATION FOR EXPEDITED DISCOVERY

v

X:\D\705-01\Pleadings\Opp. to Ex Parte Eped. Disc\Opposition to Ex Parte - -  030716.docx

1

Federal Rule of Civil Procedure §65(b)..................................................................9

2

Fed.R.Civ.P 26(d)(1) ............................................................................................10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### I.   INTRODUCTION

2    This action is a retaliatory lawsuit filed to intimidate two domestic garlic farmers,

3  Defendants Crawford and Katz, into withdrawing their Department of Commerce

4  ("DOC") review request of Plaintiff Harmoni's (an exporter of Chinese garlic) cash

5  deposit rates.

6    Plaintiff Harmoni's Motion for Preliminary Injunction ("PI Motion"), and the *Ex*

7  *Parte* Application for Expedited Discovery to support the PI Motion, rest on fallacious

8  legal grounds.  The speciousness of Harmoni's 'game plan' cannot be overstated.

9  Harmoni is currently subject to a review of its artificially low garlic cash deposit rates by

10 the DOC, assuming Defendants Crawford and Katz do not withdraw their review request

11 by the April 11, 2016, deadline.  Rather than simply respond to the review request in the

12 DOC and demonstrate why their cash deposit rates should not be increased, Harmoni

13 filed this separate RICO lawsuit – so as to effectively circumvent federal regulatory

14 oversight.  Plaintiffs' PI Motion asks the Court to render decisions on many of the same

15 ultimate issues before the DOC on Harmoni's review hearing.  They ask the Court to

16 jump ahead of the DOC, and before the DOC can render a ruling, to determine that

17 statements made in petitions filed with the DOC were false.  They want the Court to issue

18 an injunction forcing Defendants to "retract" statements in their DOC filings, thereby

19 preventing the DOC from doing its job and ruling on these issues.  The breadth of

20 problematic issues this raises is truly difficult to cover in a single brief, which is the first

21 of many reasons *ex parte* relief is inappropriate here.

22    Plaintiffs' *Ex Parte* Application seeks an order permitting them to take seven

23 depositions (in Los Angeles) of witnesses domiciled in New Mexico and New York, and

24 to serve highly objectionable and irrelevant document demands—all to be completed by

25 March 21st in the hopes of gaining evidence for a PI Motion which has no basis in law.

26 Among the many terminal flaws in Plaintiffs' plan:

27    • The litigation privilege of California Civil Code 47(b) is an absolute privilege.

28

It is a complete bar to Plaintiffs' PI Motion – and this entire lawsuit as to most Defendants.  It is broadly construed and applies to statements made in connection with any type of governmental or quasi-governmental proceeding.  The Court cannot force Defendants to "retract" DOC petitions or statements therein – and thus expedited discovery is pointless.

• By the same token, the *Noerr-Pennington* doctrine protects Defendants' right to petition the government for redress of grievances.  It holds that no federal statute can be used to prevent a party from exercising its privileges under the Petition Clause of the First Amendment of the U.S. Constitution.  The *Noerr-Pennington* doctrine also renders Plaintiff' PI Motion hopeless.

• The rule against prior restraints on speech mandates that Plaintiff's PI Motion be denied.

• None of the Defendants specially appearing through this Opposition have appeared in the case yet.  They must be permitted to challenge personal jurisdiction before they are subject to discovery in this action.

• The proposed expedited discovery is overbroad and ventures into highly objectionable matters of attorney-client privilege, attorney work product, and confidentiality, and matters that have no realistic chance of affecting the outcome of the PI Motion or salvaging this fatally flawed lawsuit.

• The number of depositions requested (seven) is without precedent for expedited discovery.

• Because not all parties have been served with a summons yet (especially the Chinese defendants), the seven proposed deponents would be subject to deposition on the same topics *twice*—once in expedited discovery and again after new parties enter the case.  There are a total of 22 defendants, only three of which have been served with the Amended Complaint, and half of which has not been served at all.

• The proposed Deposition Notices seek to take the depositions of seven out-of-

state defendants in Los Angeles, on shortened notice, all on the same day and at the same time.

• The DOC and/or Court of International Trade is the proper forum, with exclusive jurisdiction to litigate the matters set forth in Plaintiffs' Amended Complaint. 28 U.S.C. §1581; *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346 (Fed. Cir. 2010).

## II.   BACKGROUND OF THE CASE

This action is a strategic and retaliatory lawsuit filed to discourage two domestic garlic farmers, Defendants Crawford and Katz, from continuing with an administrative review of Plaintiff Harmoni's[1] zero cash deposit rate on garlic imported from China.

Since 2004, Plaintiff Harmoni China has been the *only* Chinese exporter of Garlic to enjoy a zero cash deposit rate.  Harmoni pays nothing, while nearly every other exporter pays substantially higher rates, up to $4.71/kg.  This has allowed Harmoni to monopolize the U.S. garlic market, while flooding the U.S. with cheap, inferior garlic. Harmoni has been able to retain this zero cash deposit rate by "gaming" the U.S. Department of Commerce ("Commerce" or "DOC") and its review system (explained in more detail below.)

Now Defendants Crawford and Katz, two domestic Garlic producers, have requested that Commerce review Harmoni China – just like every other Chinese exporter. In response, Harmoni filed this retaliatory lawsuit, attempting to bully Defendants into withdrawing the review request (so Harmoni China can continue to dump cheap Chinese garlic in the U.S.).

Harmoni's Amended Complaint consists of a blend of small amounts of truth with

---

[1] Plaintiff Harmoni International Spice, Inc. (a/k/a "Harmoni USA") is a domestic *importer* of garlic.  Zhengzhou Harmoni Spice, Co. (a/k/a/ "Harmoni China") is a Chinese *exporter* of garlic.  They are sometimes referenced collectively herein as "Harmoni."

1  large amounts of fiction. While its description of U.S antidumping law and procedures is

2  partially accurate, its portrayal of the parties and Defendants' alleged enterprise is a

3  creative fantasy.

4  Many of Harmoni's allegations center on U.S. antidumping law and Commerce's

5  1994 antidumping order addressing fresh garlic from China.  Antidumping orders ensure

6  that imports of certain products are sold at their fair value.  For imports sold below their

7  fair value, Commerce assesses antidumping duties in amounts to bring the import prices

8  up to their "fair value."  Harmoni China currently accounts for well over 50% of Chinese

9  garlic shipments to the U.S. and falsely claims some inherent right to continue receiving

10  a 0.00% cash deposit rate (a rate it has maintained by "gaming" the DOC system).

11  **A.   Background Regarding Plaintiff Harmoni and the FGPA**

12  The DOC's 1994 China Garlic Order (the "Order") covers all Chinese garlic

13  exporters.  Harmoni China, however, differs from all the other Chinese garlic exporters in

14  that Harmoni has a collusive relationship with the Fresh Garlic Producer's Association

15  ("FGPA").  Year after year, the FGPA, the only petitioner in the antidumping proceeding

16  dating back from the inception of the Order, ensures that Harmoni China's garlic exports

17  are not reviewed by the DOC.  This protects Harmoni from receiving a new dumping

18  margin and Harmoni China maintains its 0.00% cash deposit rate and, thus, an anti-

19  competitive advantage over competitors.  This advantage ensures that the vast majority of

20  Chinese garlic in U.S. markets comes from one exporter (Harmoni) and is funneled

21  through one group of distributors (the FGPA.)  No one else can compete.

22  Four large, corporate garlic producers and sellers in California make up the FGPA:

23  Christopher Ranch L.L.C. ("Christopher Ranch"); The Garlic Company; Valley Garlic;

24  and Vessey and Company, Inc.  Christopher Ranch is the largest seller, effectively

25  controlling the garlic business in the U.S.  Christopher Ranch is aided in its U.S. market

26  domination with the help of Harmoni China's no cash deposit, low-priced garlic.  With

27  access to Harmoni China's unwarranted 0.00% cash deposit rate on Chinese garlic

28

1  imports, the FGPA has expanded their U.S. market control with the lowest priced garlic
2  in the world.  The effect has been to eliminate or cripple most competition in the U.S.
3  market for fresh garlic.

4  　　　Plaintiffs filed this action because they fear the pending antidumping
5  administrative review that Defendants Crawford and Katz initiated on January 7, 2016
6  (81 Fed. Reg. 736) will result in Harmoni finally being assessed millions of dollars in
7  antidumping duties and the loss of its 0.00% cash deposit rate.  According to the DOC's
8  rescission regulation, 19 C.F.R. § 351.213(d)(1), interested parties have 90 days from the
9  date of initiation to withdraw their respective review request(s).  The government's four-
10 day closure due to due to snowstorm "Jonas" pushed Katz and Crawford's rescission
11 deadline date to April 11, 2016.  The timing of Plaintiff's Amended Complaint, with
12 many of its allegations occurring years earlier, shows Plaintiffs' true intent: to intimidate
13 Katz and Crawford into withdrawing their review request.

14 　　**B.**　　**The FGPA Manipulates U.S. Antidumping Law and Procedures**

15 　　　Interested parties may request administrative reviews ("ARs") once a year – on the
16 anniversary date of the antidumping ("AD") order.  19 U.S.C. § 1675.   While domestic
17 interested parties may request reviews of all exporters of the subject merchandise (19
18 C.F.R. § 351.213(b)(1)), foreign exporters can only request a review of themselves.  19
19 C.F.R. § 351.213(b)(2).

20 　　　Under 19 U.S.C. § 1677f-1, no exporter is excluded from the Chinese Garlic Order
21 because the statute requires that all known exporters be reviewed. That is, all exporters
22 from non-market economy ("NME") countries are presumed to be companies covered
23 under the Order.  No companies are *required* to be specifically identified in a review
24 request, *Transcom v. United States*, 294 F.3d 1371 (Fed. Cir. 2002), although the FGPA
25 *does* identify specific companies in order to take advantage of a loophole.

26 　　　Antidumping regulations afford two ways in which an interested domestic
27 producer can request review of exporters.  *Id.*  The interested party can request that all

28

1   exporters from a given country be reviewed, or that certain listed exporters be reviewed.

2   *Id.*  The FGPA, in order to maintain their anticompetitive advantage with Harmoni, wants

3   all Chinese exporters reviewed *except* Harmoni.  Because of this, the FGPA cannot use

4   the general procedure of requesting that all Chinese exporters be reviewed.  Instead, the

5   FGPA files review requests listing virtually all Chinese exporters, including Harmoni

6   China.  When this type of specific review request is filed, regulations require that the list

7   be taken from governmental records of all exporters who actually exported garlic into the

8   country the previous year.  Thus, the FGPA cannot simply omit Harmoni from the list.

9          However, in a loophole that was likely unintended, the antidumping regulatory

10   structure allows the FGPA to withdraw the names of specific exporters from any review

11   request listing specific companies (but not general review requests).  Thus, every year

12   (dating back well over a decade), the FGPA plays the same game of first requesting that

13   Harmoni China and all other exporters (listed by name) be reviewed, and then

14   withdrawing Harmoni China from the list.  To hide the scheme, the FGPA also

15   withdraws the names of exporters who have ceased to export to the United States, hoping

16   that Harmoni's special treatment will be overlooked as but one name among many.

17   Using this loophole, the FGPA and Harmoni have managed to manipulate U.S.

18   Antidumping law to create for themselves an advantage that virtually guarantees they

19   will be the only real "player" in this garlic industry. They have maintained this scheme

20   for *twelve (12) years* and counting.

21          Only "domestic interested parties" can request a review of Harmoni.  But the

22   FGPA, partially *because* of this scheme, has been able to dominate the U.S. Garlic

23   market, leaving no other "domestic interested parties" with sufficient resources or

24   courage to challenge their scheme. Thus, the scheme perpetuates itself.  Medium-sized

25   producers of fresh garlic have long since been (1) forced out of business because of

26   FGPA's manipulation of the antidumping law, or (2) acquired by the four members of the

27   FGPA.  For all practical purposes, very few domestic garlic producers survived who

28

---

could bring the issue to the DOC.

The FGPA and Harmoni have realized tens of millions of dollars in illicit profits this way.  With only themselves and small regional farmers left as "domestic interested producers," they could count on the fact that the small, local farmers likely would not have the resources or the gumption to challenge them.  Now that two small New Mexican garlic farmers have dared challenge them, Harmoni, as a puppet of the FGPA, has filed this blatantly retaliatory lawsuit in order to protect their racket. Defendants Crawford and Katz are garlic producers of subject merchandise within the meaning of the law, and have every right to file a review request.  19 C.F.R. § 351.102(b)(29)(v) and 19 U.S.C. § 1677 (9)(c).

Harmoni USA and members of the FGPA, including Christopher Ranch, ask this Court to prevent the DOC from reviewing Harmoni China's garlic sales prices to the U.S. for the latest period of review (the 21st segment, from November 2014 to October 2015). But, the U.S. Court of International Trade ("CIT") has exclusive original appellate jurisdiction of trade matters, including antidumping, and is the required forum for Plaintiffs to challenge the review request.  28 U.S.C. §1581; *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346 (Fed. Cir. 2010).  At no point in the federal government's foreign commerce process for products such as garlic does jurisdiction vest in a U.S. District Court.  Congress has statutorily granted exclusive jurisdiction for such matters initially with the DOC, followed by appellate rights to the Court of International Trade (CIT), followed by the U.S. Court of Appeals for the Federal Circuit (in Washington DC), followed by the U.S. Supreme Court.  Harmoni may not like this structure, but there is no right to circumvent it by asking this Court to overrule Congress or exceed its jurisdictional boundaries in adjudicating foreign commerce. By filing this strategic action in District Court, Plaintiffs acknowledge that they possess no basis for filing with the DOC or CIT who have jurisdiction and specialization in this area.

### C.   Harmoni Blocks Crawford and Katz from Retail and Wholesale Markets

The Amended Complaint alleges that Christopher Ranch and Harmoni USA do not compete with Defendants Crawford and Katz.  Harmoni claims that Crawford and Katz are mere "hobby farmers" who "only" sell Garlic in the Santa Fe farmer's market.  The irony is, it is because of the FGPA/Harmoni scheme that Crawford and Katz find it difficult to profitably compete in retail and wholesale markets.

Christopher Ranch maintains displays in the Albertsons store in Taos, New Mexico, less than 30 miles from Mr. Crawford and Mr. Katz's farms, selling two large Chinese garlic bulbs for $1.00.  This price is roughly $1/3^{rd}$ the price Crawford and Katz are able to deliver to the same Albertsons store.  Yet, the Christopher Ranch garlic has traveled more than 6,000 miles from the garlic fields in Shandong Province, China, and Christopher Ranch is making profit on the sale.  Efforts by Crawford and Katz to sell to wholesalers and retailers have been rebuffed for the simple reason that Christopher Ranch can provide these same wholesalers and retailers with cheap imported garlic (albeit of inferior quality).  In fact, it is partially because of the inferior quality of Harmoni/Christopher Ranch's garlic that they seek to paint Crawford and Katz as producers of a higher grade of garlic, hoping this distinction somehow robs Crawford and Katz of standing before the DOC.  It does not.  19 C.F.R. § 351.102(b)(29)(v) and 19 U.S.C. § 1677 (9)(C).

### III.   ANALYSIS

### A.   Harmoni Fails to Establish Exigent Circumstances for Its *Ex Parte*

*Ex parte* applications "are solely for extraordinary relief and are rarely granted." *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).  An ex parte application must show why the moving party should be allowed to "go to the head of the line in front of all other litigants and receive special treatment." *Id.* at 492.  It must show that the moving party's cause will be irreparably

OPPOSITION TO EX PARTE APPLICATION FOR EXPEDITED DISCOVERY

8

X:\D\705-01\Pleadings\Opp. to Ex Parte Eped. Disc\Opposition to Ex Parte - -  030716.docx

1    prejudiced if the underlying motion is heard according to regular noticed motion

2    procedures.  The "*rare*" cases in which ex parte applications may be proper are when: a

3    real emergency exists, threatening immediate and irreparable injury before the adverse

4    party can be heard in opposition (e.g., temporary restraining orders under FRCP 65(b));

5    or there is danger that, if given notice, the opposing party will flee or destroy evidence or

6    hide assets; or certain routine orders where the other side has been served with the

7    application (e.g., shortening notice of motion or for permission to file over-long brief).

8    *In re Intermagnetics America, Inc.* 101 B.R. 191, 192-193 (C.D. CA 1989).

9         Although Harmoni has a pending PI Motion, the PI Motion is set to be heard after

10   the April 11th deadline for Katz and Crawford to withdraw their review request.  Under

11   DOC procedures, the review will proceed if the request is not withdrawn by the April 11th

12   deadline.  The PI Motion will thus be moot by the time of its hearing, but the *expedited*

13   *discovery* would conclude *before* the deadline.  The point of the requested expedited

14   discovery, which Harmoni hopes to complete before the April 11th deadline, is to impress

15   upon the Defendants the costly burdens of federal litigation—in their ongoing efforts to

16   convince Defendants to withdraw their review request.  This is obviously not justification

17   for an emergency motion.

18        DOC administrative reviews (ARs) proceed on the same timeline year after year. A

19   preliminary decision is usually rendered in December, and a final decision the following

20   June.  Thus, for the current pending Garlic 21 AR, the preliminary determination can be

21   expected in December, 2016, and the final one in June, 2017.  Thus, there are no exigent

22   circumstances – given that the PI Motion is set to be heard after the deadline to withdraw

23   review requests (rendering it moot in that respect), and 13 months *before* the DOC's final

24   decision.  There is sufficient time to have a fully litigated hearing on the merits, not a

25   rushed ex parte application or PI Motion.  Since the PI Motion is unnecessary and

26   premature, there are also no grounds for this *Ex Parte* Application.

27

28

1

### B.    Harmoni Fails to Show Good Cause for Expedited Discovery

2      Ordinarily, no party may conduct discovery until after the Rule 26(f) conference.

3  Prior to the Rule 26 conference, a party "may not seek discovery … except … when

4  authorized by … a court order." Fed.R.Civ.P 26(d)(1).  Courts in the Ninth Circuit use

5  the "good cause" standard to determine when expedited discovery will be permitted.

6  *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd. et al.,* 2015 WL 6680807, at

7  11 (C.D. Cal. 2015) (O'Connell, J.)

8      The "party seeking expedited discovery in advance of [the] Rule 26(f) conference

9  has the burden of showing good cause for the requested departure from usual discovery

10  procedures." *Qwest Comm. Int'l, Inc. v. World Quest Networks, Inc.* 213 F.R.D. 418,

11  419 (D.Colo. 2003).  Expedited discovery "is not the norm.  Plaintiff must make some

12  *prima facie* showing of the *need* for the expedited discovery." *American Legalnet, Inc. v.*

13  *Davis*, 673 F.Supp.2d 1063, 1067 (C.D. Cal. 2009), citing *Merrill Lynch, Pierce, Fenner*

14  *& Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000).  Good cause exists "where

15  the need for expedited discovery, in consideration of the administration of justice,

16  outweighs the prejudice to the responding party." *Id.* quoting *In re Countrywide Fin.*

17  *Corp. Derivative Lit.* 542 F.Supp.2d 1160, 1179 (C.D. Cal. 2008).

18      While the good cause standard can sometimes be met when a party seeks a

19  preliminary injunction, "expedited discovery is not automatically granted merely because

20  a party seeks a preliminary injunction." *American Legalnet, supra,* at 1066.  "Where a

21  plaintiff seeks expedited discovery to prepare for a preliminary injunction hearing, it

22  makes sense to examine the discovery request … on the entirety of the record to date and

23  the reasonableness of the request in light of all the surrounding circumstances." *Merrill*

24  *Lynch, supra,* at 624.

25      "Factors commonly considered in determining the reasonableness of expedited

26  discovery include: (1) whether a preliminary injunction is pending; (2) the breadth of the

27  discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden

28

1  on defendants to comply with the requests; and (5) how far in advance of the typical

2  discovery process the request was made." *American Legalnet, supra,* at 1066.  In this

3  case, while it is true that a PI Motion is pending, the Motion is in fact a farce; and none of

4  the remaining factors weigh in favor of expedited discovery.

5                   1.      <u>A preliminary injunction is pending</u>

6        The original Complaint does not include a prayer for injunctive relief.  The request

7  for injunctive relief was added to the Amended Complaint (filed on the same day as the

8  *Ex Parte*) as an afterthought to support a desperate effort to circumvent the timing of

9  discovery under rule 26, because the goal of this litigation is to prevent the DOC from

10 doing its job.  Thus, the PI Motion is in reality a subterfuge. On page 8 of the *Ex Parte*

11 Application, plaintiff seeks to force defendant to retract the false statements made to the

12 DOC. This would be akin to one judge telling another that a plaintiff's case cannot be

13 heard because the parties are supposedly lying in court submissions.  This is untenable.

14                  2.      <u>The proposed discovery is overbroad</u>

15       There is an incongruity between Harmoni's Motion for Preliminary Injunction and

16 its proposed expedited discovery.  The discovery is much broader than needed for the PI

17 Motion.

18       In the PI Motion, Harmoni seeks an order "to retract all false statements made in

19 conjunction with their fraudulent petition before the DOC."  (PI Motion, 25:6-7.)  Setting

20 aside for a moment the fact that Harmoni cannot Constitutionally be granted the relief

21 they seek (for many reasons, some of which are set forth below), it follows that

22 Harmoni's discovery should be tailored to prove that the statements in the DOC petition

23 were "false" and "fraudulent." This raises two problems for Harmoni.

24       First, Harmoni has not established which specific statements from the DOC filings

25 it believes are false. Again and again, Harmoni's Amended Complaint and PI Motion

26

27

28

refer obliquely to "false and fraudulent statements" without quoting or identifying them.[2] In failing to provide the Court with this basic evidence, Harmoni robs Defendants and the Court of the ability to fully evaluate its request pursuant to the "breadth of discovery" prong.  Is Harmoni challenging *every* sentence in all of Defendants' DOC filings as "false and fraudulent?"  The court in *American Legalnet* faulted the moving party for providing "absolutely no evidence supporting its allegations" in favor of expedited discovery. *American Legalnet, supra,* at 1066.  So too has Harmoni failed to meet its burden.

Second, the proposed discovery goes far beyond the evidence needed to prove "false and fraudulent statements" in the DOC petitions, and ventures into highly objectionable matters of attorney-client privilege, attorney work product, and confidentiality.   In Plaintiffs' own words, they seek:

"All Communications [of *clients* Crawford and Katz] with any co-defendant [including their *attorneys* Hume and Montoya] from January 1, 2014 to the present referring to or relating to Plaintiffs." (Mtn. Exped. Disc. 3:13-14.)  They also seek discovery of the same communications from attorneys Hume and Montoya running to their clients Katz and Crawford.  (Mtn. Exped. Disc. 3:13-14.)  Harmoni also seeks to depose the witnesses on these same privileged topics.  (Mtn. Exped. Disc. 4:23-5:26.) Clearly, these are attorney-client privileged communications, and yet Harmoni carves out no exceptions.  It is also an improper attempt to drive a wedge between attorneys and clients.

The remaining document requests seek invasive financial records, offering no explanation of how the production of Crawford and Katz's "total revenues" and other

---

[2] The single exception to this is where Harmoni's PI Motion quotes the following language: "El Bosque Garlic Farm of Dixon, New Mexico, is a domestic interested party within the meaning of 19 U.S.C. 1667(9)(c) producing a product within the meaning of 19 U.S.C. 1677(10)."  (PI Motion, 7:15-17).  This statement is, in fact, true.

1   trade secrets and financial data can help prove that DOC filings were "false."  The

2   proposed discovery of financial information requires production of tax returns and other

3   financial information, which is subject to objections based on privacy and confidentiality

4   (especially among competitors in the U.S. garlic market).  These are highly contested

5   areas, and often result in protracted discovery battles even during the course of normal

6   (non-expedited) discovery.  These subjects are not the type that can be resolved on an

7   expedited basis.  Additionally, gathering and producing detailed financial records going

8   back several years takes significant time.  It is a task that is inappropriate for expedited

9   discovery.

10                  3.    <u>There is no legitimate purpose for the requested discovery</u>

11          First, the Litigation Privilege, the *Noerr-Pennington* Doctrine, and California's

12   Anti-SLAPP statute bar the relief Harmoni seeks to obtain through its PI Motion.  This is

13   exceedingly clear.  This Court must analyze the PI Motion in order to grant ex parte relief

14   – and yet this is unfair on an emergency basis.  Even without the benefit of an opposition

15   brief (forthcoming), Defendants believe it will be obvious to the Court that Plaintiffs' PI

16   Motion is untenable.  This means that Plaintiffs' requested expedited discovery is

17   pointless.  The unsustainability of the PI Motion is discussed in more detail in Sections C

18   *et seq*. below.

19          Second, even if Harmoni can prove that Defendants Katz and Crawford's farming

20   operations are "small," it will not matter.  A "domestic interested party" in a DOC AR is

21   defined simply as any "producer…of like product."  <u>19 CFR §351.102(b)</u>.  The term

22   "like product" has *never* been interpreted, in the agricultural context, to exclude different

23   "grades" of the same food.  Apples are apples; garlic is garlic.  Nor has it been

24   interpreted to have some sort of lower threshold which excludes local, non-corporate

25   farmers.  (If such authority existed, Plaintiffs would have cited it.)  Likewise, *if* Harmoni

26   can somehow show, through expedited discovery, that attorneys Hume and Montoya

27   recruited their clients Katz and Crawford, it simply will not matter.  There is nothing

28

1 | "fraudulent" or wrongful about that.  Plaintiffs' working theory is truly frivolous.

2 |       Every DOC garlic notice (preliminary or final) contains a section entitled "Scope

3 | of the Order."  Using the Scope language in the Garlic 19 preliminary decision (79 F.R.

4 | 72626, Dec. 8, 2014) as an example: "The merchandise covered by the order includes all

5 | grades of garlic, whole or separated into constituent cloves."  Thus, again, the discovery

6 | plaintiff seeks is simply irrelevant.  Plaintiffs have put forth only token effort to show

7 | that it *is* relevant, hoping to obfuscate the legal baselessness of the PI Motion.  In that

8 | sense, Plaintiffs have again failed to meet their burden of showing that there is good

9 | cause for the proposed expedited discovery, because the information they seek is not

10 | germane to any relief that is *actually* available pursuant to Harmoni's PI Motion.

11 |                   4.   The burden on defendants would be substantial

12 |       Harmoni cites six cases in which expedited discovery was granted, two from this

13 | Court (see, ex parte application, 6:10-8:21).  None of those cases permitted more than

14 | one deposition, and in some, the moving party only sought written discovery.  Here,

15 | Defendants seek *seven* depositions in a two week period.  Four of the proposed deponents

16 | live in New Mexico, but each in distinct regions of New Mexico.  (Amended Complaint,

17 | para. 42-45).  The other three proposed deponents, on information and belief, reside in or

18 | around New York.  Harmoni seeks to take the depositions of all four of the New Mexican

19 | Defendants *in Los Angeles* (see Exhibit 2 to Schreiber Decl.), thereby burdening the

20 | deponents with last-minute travel expenses, including late hotel and air reservations.

21 | Further increasing the burden, the Notices of Deposition set *all seven depositions* for the

22 | same date and time (March 21, 2016 at 9:00 a.m.), ensuring wasted time as each

23 | deponent waits for the others to conclude.  At four hours each for seven depositions, it is

24 | impossible to take all 7 depositions in one day, unless depositions occur simultaneously,

25 | which would violate each Defendant's right to observe other depositions.

26 |       Further, Plaintiffs have not yet filed proofs of service for all Defendants.  Most (if

27 | not all) of the Chinese defendants have yet to be served and may not even know about

28 |

1  this case yet.  Thus, those Defendants, after they eventually appear in the case, would

2  have the right to depose the proposed deponents on the same topics – again.  Harmoni

3  argues that there is no burden because they allegedly will not cover these same topics in

4  future depositions with the same deponents, but other parties would have the right.

5              5.   The requested discovery is premature

6       Of the six Defendants specially appearing together in this opposition, *none* have

7  yet (1) filed a responsive pleading, (2) been served with the Amended Complaint, or (3)

8  appeared in the action.  This Court does not have personal jurisdiction over many

9  defendants and, in fact, Defendants will argue in Rule 12 motions that there is no

10  personal jurisdiction over at least three of them (Montoya, Crawford and Katz.)  As such,

11  this motion is premature, as it cannot yet be determined which discovery vehicles would

12  be appropriate for these Defendants.  (Indeed, they should not even *be* Defendants for

13  long.)  Since there is no personal jurisdiction in this Court, Plaintiffs will need to issue

14  subpoenas.

15       Harmoni does not cite any precedent for expedited discovery on parties who have

16  yet to appear in the case; Defendants are aware of none.  Defendants should, at the very

17  least, be permitted to challenge jurisdiction and the sufficiency of the Amended

18  Complaint before submitting to invasive, premature discovery.

19       There are 22 total defendants, only half of which have been served with the

20  original complaint, and only a few have potentially responded (those being the clients of

21  the Heller & Edwards firm). In fact, the Amended Complaint was filed on the same day

22  as the *Ex Parte* Application, consisting of 59 pages of complex factual and legal issues,

23  and it has not yet been served on anyone. Discovery at this early stage is extremely

24  premature and prejudicial.

25  **C.   The Litigation Privilege Bars the Relief Sought in the Plaintiffs' PI**

26       **Motion**

27  Harmoni's PI Motion is untenable (meaning there is no good cause for expedited

28

discovery).[3]  The PI Motion seeks an order "to retract all false made [sic] statements made in conjunction with their fraudulent petition before the DOC."  (PI Motion 25:7-8).  It also seeks to enjoin future statements.  See, Plaintiffs' [Proposed] Preliminary Injunction.  The litigation privilege is a complete defense to any such attempt.

California's litigation privilege is codified in Civil Code § 47(b):

> A privileged communication or broadcast is one made:  . . . (b) in any (1) legislative proceeding, (2) judicial proceeding, (3) in **any other official proceeding authorized by law**, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . (Civil Code § 47(b), emphasis added).

1.  The litigation privilege is absolute and broadly construed.

The privilege granted by Civil Code § 47(b) is absolute because it protects even publications made with actual malice or with intent to do harm.  *Silberg v. Anderson,* 50 Cal. 3d 205, 218-219 (1990).  The California Supreme Court has held that there is no requirement that the communication be "in the interest of justice" to be absolutely privileged.  *Id.* at 212.  Therefore, communications that are made in connection with and logically related to litigation or other official proceedings do no fall outside of the judicial privilege merely because they are alleged to be fraudulent, perjurious, unethical, or even illegal.  *Jacob B. v. County of Shasta*, 40 Cal.4th 940, 957-959 (2007).

The privilege is not limited to pleadings, to oral or written evidence, or to publications in open court *if* the publication is made to achieve the objects of the litigation or proceeding.  *Raider v. Thrasher,* 22 Cal. App. 3d 883, 887 (1972).  Persons

---

[3] Harmoni's PI Motion accurately cites the Ninth Circuit standard for preliminary injunctions, which includes (1) likelihood of success on the merits, (2) likelihood of irreparable harm, (3) balance of the equities, (4) and public interest. (PI Motion 14:4-12.). Here, defenses like the litigation privilege, *Noerr-Pennington* doctrine, rule against prior restraints, and lack of personal jurisdiction obliterate any possibility of success on the merits.

1   who qualify for the absolute privilege afforded by Civil Code 47(b) include attorneys

2   [*Friedman v. Kanchecht,* 248 Cal.App. 2d 455, 460 (1967)], parties [*Albertson v. Raboff,*

3   46 Cal. 2d 375, 378-379 (1956)] and witness and prospective witnesses [*Asherman v.*

4   *Nattinson,* 23 Cal.App.3d 861, 865 (1972)] among others.  Because there is no exception

5   to the privilege when the testimony is perjured, courts have held that there is also no

6   exception to the preparation and presentation of false documentary evidence.[4]  *Kachig v.*

7   *Boothe,* 22 Cal.App.3d 626, 641 (1971).

8       Moreover, statements made *before or after* the litigation or other official

9   proceeding are privileged under Civil Code Section 47(b) if the statement is made in

10  connection with the litigation that is contemplated in good faith and under serious

11  consideration.  *Aronson v. Kinsella,* 58 Cal. App. 4th 254, 262 (1997).  California courts

12  favor a liberal construction of the scope of jurisdiction and relevancy of Section 47(b).

13  *Lewis v. Linn,* 209 Cal. App. 2d 394, 399 (1962).  Under Civil Code Section 47(b),

14  doubts are to be resolved in favor of relevancy and pertinency of the litigation privilege.

15  *Thornton v. Rhodan,* 245 Cal.App.2d 80, 93 (1966).

16          2.  The litigation privilege applies to administrative hearings

17              and quasi-judicial hearings.

18      A publication or broadcast made in any official proceeding authorized by law is

19  privileged.  Civ. Code § 47(b)(3)&(4).  The phrase "In any other official proceeding

20  authorized by law" contained in Civil Code § 47(b) encompasses those proceedings that

21  resemble judicial and legislative proceedings, such as transactions of administrative

22  boards and quasi-judicial and legislative proceedings.  *Silberg v. Anderson,* 50 Cal. 3d

23  205, 218-219 (1990).  The general rule is now well-established that the absolute privilege

24  is applicable not only to judicial but also to *quasi*-judicial proceedings.  *Id.* at 212.  The

25  interpretation of what is considered an official proceeding essentially includes any

26  _____

27  [4] Plaintiffs *allege* that false evidence was proffered to the DOC, but this will be disproven
    if the case proceeds.

28

1    proceeding where government officials make decisions effecting others. *Id.* It has been

2    applied even for testimony provided by a pupil as a witness in a school's expulsion

3    hearing. *Educ. Code* § 48918.6.

4        The primary factors that determine the nature of quasi-judicial proceedings under

5    Civil Code § 47(b) are (1) whether the administrative body is vested with discretion on

6    an investigation and consideration of evidentiary facts; (2) whether it is entitled to hold

7    hearings and decide the issue by application of rules of law to the ascertained facts; and,

8    (3) whether its power affects the personal or property rights of private persons.

9    *Ascherman v. Natanson,* 23 Cal.App.3d 861, 865 (1972).

10       A communication to an official administrative agency, which communication is

11   designed to prompt action by that agency, is as much part of the "official proceeding" as

12   a communication made after the proceedings have commenced. *Martin v. Kerney,* 51

13   Cal.App.3d 309, 311 (1975). Moreover, because a complaint or other official filing

14   constitutes part of the official proceedings, it is not necessary that the official body take

15   any particular action on the complaint itself to be protected. *Lee v. Flick,* 135 Cal. App.

16   4th 89, 97 (2005). The absolute privilege of Section 47(b) has been extended to letters

17   written to the State Division of Real Estate and letters sent to public school teacher

18   superiors — essentially, any written communication that is part of or initiates an official

19   proceeding. See, *King v. Borges,* 28 Cal. App. 3d 27, 34 (1972); and *Martin v. Kearny,*

20   *supra,* at 311. In *Duncan v. Atchison, T. & S. F. R. Co.,* 72 F. 808 (9th Cir. 1896),

21   allegedly libelous statements contained in an answer filed in proceedings before the

22   Interstate Commerce Commission were deemed protected by the litigation privilege.

23           3. <u>The litigation privilege applies to all tort and quasi-tort claims.</u>

24       The absolute litigation privilege of Section 47(b) bars derivative tort actions, and

25   applies to all torts other than malicious prosecution, including fraud, negligence, and

26   negligent misrepresentation. *Rubenstein v. Rubenstein,* 81 Cal. App. 4th 1131, 1146

27   (2000). Federal Courts in the Central District of California consistently uphold this

28

1   understanding – and thus confirm that the litigation privilege bars all tort causes of action

2   arising from privileged communications, except a claim for malicious prosecution.

3   *Monex Deposit Co. v. Gilliam,* 680 F.Supp.2d 1148, 1161 (C.D. Cal. 2010).

4          All six causes of action in Plaintiffs' Amended Complaint are torts and are thus

5   barred by the litigation privilege.  The first cause of action for violation of RICO has

6   been consistently held to be a statutory tort.  In *Brandenberg v. Sidel,* 859 F.2d 1179 (4th

7   Cir. 1988), the court held "Civil RICO is of course a statutory tort remedy — simply one

8   with particularly drastic remedies.  Causation principles generally applicable to tort

9   liability must be considered applicable."

10         Similarly, in addressing the second cause of action, Unfair Competition claims

11   pursuant to California Business and Professions Code Section 17200, *et. seq.* are

12   statutory torts.  *Western Electro-Plating Co. v. Henness,* 196 Cal.App.2d 564, 570

13   (1961).

14         Plaintiffs' third cause of action for common law Unfair Competition is also a tort.

15   *Duncan v. Al Stuetzle,* 76 F.3d 1480 (9th Cir. 1996) (referring to "California's common

16   law tort of Unfair Competition.")  The remaining three causes of action – Trade Libel,

17   Tortious Interference with Contractual Relations, and Intentional Interference with

18   Prospective Economic Advantage – are also all common law torts, and are thus barred in

19   this case by the litigation privilege. See, *Smith v. Maldonado*, 72 Cal.App.4th 637, 645

20   (1999) (libel is a tort); *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118

21   (1990) (intentional interference with contractual relations is a tort); *Associates v. Environ*

22   *Systems, Inc.,* 14 Cal.App.4th 842, 845 (1993) (intentional interference with prospective

23   economic advantage is a tort.)

24         Paragraph 270 of the Amended Complaint lists fifteen alleged "fraudulent

25   statements" that form the basis of Plaintiffs' RICO claim.  *Fourteen of those fifteen*

26   *statements were made to the DOC.*  These are the same statements, each in DOC filings,

27   that Plaintiffs' now ask the court to order Defendants to "retract."  Under Section 47(b),

28

1  the DOC petitions are subject to absolute privilege (a complete defense.)  The PI Motion

2  is untenable, and thus, Plaintiffs should not be granted expedited discovery to support a

3  motion that has no realistic chance of success.

4  ### D. The *Noerr-Pennington* Doctrine Disallows Plaintiffs' RICO Claim

5  The *Noerr-Pennington* doctrine derives from the U.S. Constitution's First

6  Amendment guarantee of "the right of the people…to petition the Government for

7  redress of Grievances.  *Sosa v. DIRECTV, Inc.,* 437 F.3d 923 (9th Cir. 2006).  Under the

8  doctrine, "those who petition *any department of the government* for redress are generally

9  immune from statutory liability for their petitioning conduct." *Id.* at 929 (emphasis

10  added) (citing *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir.

11  2005).

12  The doctrine originally arose in the antitrust context and reflected the Supreme

13  Court's effort to reconcile the Sherman Act with the First Amendment Petition Clause.

14  *Id*. at 929.  However, the doctrine has since been expanded outside the antitrust field to

15  protect, generally, petitions of any kind to any department of the government pursuant to

16  the Petition Clause of the First Amendment. *Id.* at 930 (citing *Bill Johnson's Restaurants,*

17  *Inc. v. NLRB*, 461 U.S. 731 (1983).  "In BE & K Construction Co. v. NLRB, 536 U.S.

18  516, 525 (2002), the Supreme Court expanded on its holding in *Bill Johnson's*, making it

19  clear that the principles of statutory construction embodied in the *Noerr-Pennington*

20  doctrine apply with full force in other statutory contexts." *Sosa, supra*, at 930.

21  *Sosa*, like this case, involved a RICO lawsuit alleging, as its predicate acts,

22  violations of federal mail and wire fraud statutes.  And like this case, in *Sosa* the alleged

23  acts of mail fraud and wire fraud were also acts of petitioning the government. (In *Sosa*,

24  even a pre-petition demand letter was considered part of the process of petitioning the

25  government.) Citing the *Noerr-Pennington* doctrine, the *Sosa* court stated: "We hold that

26  RICO and the predicate statutes at issue here [including mail fraud and wire fraud] do not

27  permit the maintenance of a lawsuit for sending of a pre-litigation demand to settle legal

28

1  claims that do not amount to a sham…Our decision today makes clear that the *Noerr-*

2  *Pennington* doctrine requires that, to the extent possible, we construe federal statutes so

3  as to avoid  burdens on activity arguably falling within the scope of the Petition Clause of

4  the First Amendment." *Sosa, supra*, at 942.

5          There is no question that the DOC review requests at the center of Plaintiffs'

6  Amended Complaint involve government petitioning activity.  They are textbook

7  examples. The DOC is a "department of the government" as described in *Sosa*, and the

8  alleged acts of mail fraud, wire fraud, and extortion all related to either (1) petitions to

9  the DOC requesting review of Harmoni, or (2) in the case of the extortion predicate act

10  alleged against C. Agriculture, a pre-petition demand letter (which is equally protected.)

11  Accordingly, the *Noerr-Pennington* doctrine mandates that Plaintiffs' RICO claim will

12  be dismissed as soon as Defendants appear and are able to file a Motion to Dismiss.

13  Without RICO, this Court will no longer possess subject matter jurisdiction over the case,

14  unless the Court chooses to exercise continuing jurisdiction (which is discretionary).

15  More importantly, this is yet another reason why Plaintiffs' PI Motion is untenable and,

16  thus, expedited discovery is unjustified.

17      **E.     The Rule Against Prior Restraints on Speech Bars Harmoni's PI**

18              **Motion**

19          Harmoni's PI Motion seeks "to prevent defendants from *continuing to make*

20  fraudulent and false statements…on the record with the DOC." (PI Motion, 23:15-18.)

21  This would violate the rule against prior restraints on speech, which prevents, *inter alia*,

22  courts from issuing injunctions on future speech.  In *Nebraska Press Ass'n v. Stuart*, 427

23  U.S. 539, 559 (1976) the Supreme Court collected a number of prior restraint cases and

24  noted, "the thread running through all these cases is that prior restraints on speech and

25  publication are the most serious and the least tolerable infringement on First Amendment

26  rights."  *Id.*  Injunctions against any speech, even libel, constitute prior restraints: they

27  'prevent speech before it occurs,' by requiring court permission before that speech can be

28

repeated." *Oakley, Inc. v. McWilliams,* 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012).

When the rule against prior restraints is applied to judicial injunctions (as opposed to legislative enactments), the rationale is not only based on Constitutional considerations, but practical considerations. *Id.*  It would be nearly impossible for the Court to predict future circumstances, or how the enjoined speech might be used in context.  In this case, Defendants ask to the Court to enjoin Defendants from submitting future "fraudulent and false" statements to the DOC.  Yet, a hearing would be required in order to determine whether any future statements were false.  It would be a truly outrageous and unprecedented use of injunctive power to require Defendants to seek District Court permission every time they need to make a DOC filing.  In that sense, the requested relief is as much unrealistic as it is unconstitutional.

## F.    The PI Motion Is a Waste of Time Because There is No Threat of Irreparable Harm

The allegedly irreparable harm Plaintiffs complain about is a fiction because there is an adequate remedy at law for the allegedly false submissions to the DOC.  Harmoni merely needs to respond to the AR and convince the DOC that it is entitled to retain its 0% cash deposit rates on Chinese garlic.  As demonstrated above, Congress has delegated jurisdiction over such matters to the DOC and/or CIT – so there is an adequate remedy at law without the need for injunctive relief.

## G.    This Court Lacks Personal Jurisdiction

### 1.    Personal Jurisdiction Under R.I.C.O.

Where liability under a federal statute discussing personal jurisdiction is alleged, application of the relevant provisions in the statute is determinative on the issue of jurisdiction. See, *Dole Food Co. v. Watts,* 303 F.3d 1104, 1110 (9th Cir. 2002).  In section 1965(b), Congress provided for service of process upon RICO defendants residing outside the federal court's district when it is shown that "the ends of justice" require it. 18 U.S.C. §1965(b).  Subsection (b) states: "In any action under

1    section 1964 of this chapter [18 U.S.C. §1964] in any district court of the United States in

2    which it is shown that the ends of justice require that other parties residing in any other

3    district be brought before the court, the court may cause such parties to be summoned,

4    and process for that purpose may be served in any judicial district of the United States by

5    the marshal thereof." 18 U.S.C. §1965(b).

6        However, "merely naming persons in a RICO complaint does not, in itself, make

7    them subject to section 1965(b)'s nationwide service provisions." *Butcher's Union Local*

8    *No. 498 v. SDC Inv., Inc.,* 788 F 2nd 535, 539 (9th Cir. 1986). The *Butcher's Union* court

9    stated that "the Unions also failed to allege a multi-district conspiracy that encompassed

10   [two of the defendants]. As the [plaintiffs] concede, none of the four defendant

11   employers had any specific knowledge of, or participation in any of the other

12   conspiracies." *Id* at 539. The Ninth Circuit Court further reasoned that "the district court

13   properly concluded that the complaint did not allege a *single* nationwide RICO

14   conspiracy as required for national service of process under the "ends of justice provision

15   of section 1965 (b)." (Emphasis added). The court held that this standard does not create

16   jurisdictional gaps because it does not prevent plaintiffs from pursuing separate suits

17   against non-resident RICO defendants who did not participate in this single racketeering

18   enterprise. *Id.*

19            2.    The Court lacks personal jurisdiction over Montoya, Crawford and

20                  Katz in California

21       Defendant Joey Montoya, an attorney, has lived his entire life in New Mexico. He

22   currently resides in Santa Fe, New Mexico. (Amended Complaint, ¶ 42.) He attended

23   high school, college, and law school all in the State of New Mexico. Montoya has been

24   to California just one time in his life, in 2008, for a total of three days as part of a post-

25   college "road trip" with friends. Montoya's position with Hume & Associates was his

26   first employment after graduating law school. He is licensed to practice law before the

27   CIT and in the State of New Mexico. (Amended Complaint, ¶ 42.) He has never

28

1  practiced law in California.  He started work at Hume & Associates in August, 2015,

2  about 5 months before this lawsuit was filed.  See, Montoya Declaration, ¶3-4.  Plaintiffs

3  now accuse him, vaguely, of participating in an enormous international conspiracy to

4  influence the garlic importation market, charging that he violating federal racketeering

5  laws.

6       The allegations against Montoya are contained in Section V.D.iii. of the Amended

7  Complaint (paragraphs 227-239; see also ¶ 42).  There are no allegations that Montoya

8  was connected to or directed any of his activities toward the State of California.  A

9  detailed analysis of specific and general jurisdiction with respect to Montoya is

10 unnecessary because, quite simply, he has *no* contacts with California.

11      Plaintiffs allege simply that Montoya "verified the authenticity" of two

12 submissions to the DOC—i.e. he signed pleadings.  (Amended Complaint ¶ 242.)  Based

13 on these ordinary acts of attorney work, Plaintiffs decided it was appropriate to sue this

14 young attorney, fresh from law school, in a Federal RICO lawsuit in a state in which he

15 has been present a total of three days in his life.

16      There is no personal jurisdiction over Montoya in California, even under RICO's

17 nationwide service of process provisions.  Under the *Butcher's Union* standard, Plaintiffs

18 fail to allege (and cannot allege) that Montoya participated in a multi-district conspiracy.

19 His act of signing pleadings as part of his job—protected by the litigation privilege—

20 does not make him part of a multi-district conspiracy.  The allegations (of what one

21 assumes was meant to be an association-in-fact enterprise) are so tenuous, based on

22 suggestion and innuendo, that they cannot form the basis of personal jurisdiction in

23 California. Montoya did not have a common purpose with the alleged RICO enterprise –

24 and thus there is no possible "single" conspiracy as required under *Butcher's Union*.  He

25 has no vested interest in "acquiring a larger share of the U.S. garlic market." (Amended

26 Complaint ¶ 15.)  He is a paid agent.  Accepting all of the allegations in the Amended

27

28

---

1    Complaint as true, Montoya's interest was merely in receiving compensation, via salary
2    from his employer Hume & Associates, for his legal work.

3         Defendants Crawford and Katz are two garlic farmers living and working in New
4    Mexico.  They have been to California on brief vacations, none lasting more than two
5    weeks.  Katz has never lived in California, and Crawford has not lived in California since
6    1968. As the Amended Complaint alleges, they sell their garlic at the Santa Fe Farmer's
7    Market in New Mexico (not California). (Amended Complaint, ¶¶ 42-43.)  They do not
8    direct any of their garlic sales to California, nor do they sell to any wholesalers who later
9    re-sell their garlic in California.  In short, they have no connection to California
10   whatsoever – aside from occasional vacations.  See, declarations of Crawford & Katz,
11   ¶¶2-4.  These Defendants should not be required to respond to expedited discovery in the
12   absence of personal jurisdiction.

13

14                          IV.   **CONCLUSION**

15        For the foregoing reasons, Defendants respectfully request that the Court deny
16   Plaintiffs *Ex Parte* Application for Expedited Discovery.

17                                        LANZA & SMITH, PLC

18

19   March 7, 2016                        /s/Brodie H. Smith
20                                        Brodie H. Smith
21                                        3 Park Plaza, Suite 1650
                                          Irvine, CA  92614
22                                        Phone: (949) 221-0490
23                                        Fax:     (949) 221-0027
                                          Brodie@lanzasmith.com
24                                        Tony@lanzasmith.com
25                                        *Attorneys for Defendants*
                                          Robert T. Hume, Joey C. Montoya,
26                                        Stanley Crawford, Avrum Katz, Kwo Lee,
                                          Inc., and Shuzhang Li
27

28