Anthony L. Lanza, Bar No. 156703
Brodie H. Smith, Bar No. 221877
LANZA & SMITH
A Professional Law Corporation
3 Park Plaza, Suite 1650
Irvine, California 92614-8540
Telephone (949) 221-0490
Facsimile (949) 221-0027

Attorneys for Defendants Robert T. Hume, Joey C. Montoya,
Stanley Crawford, Avrum Katz, Kwo Lee, Inc., Shuzhang Li,
and Huamei Consulting Co., Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| HARMONI INTERNATIONAL SPICE, INC., a California corporation, and ZHENGZHOU HARMONI SPICE CO., LTD., a corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>WENZUAN BAI, an individual, JICHENG YE, an individual, RUOPENG WANG, an individual, ROBERT T. HUME, an individual, JOEY C. MONTOYA, an individual, STANLEY CRAWFORD, an individual, AVRUM KATZ, an individual, HUAMEI CONSULTING CO., INC., a corporation, KWO LEE, INC., a corporation, SHUZHANG LI, an individual, C. AGRICULTURE GROUP CORP., a corporation, HEIBEI GOLDEN BIRD TRADING CO., LTD., a corporation, QINGDAO TIANTAIXING FOODS, CO., LTD., a corporation, JINXIANG HEJIA CO., LTD., a corporation, QINGDAO LIANGHE INTERNATIONAL TRADING CO., LTD., a corporation, CHEN HONGXIA, an individual, JIN XIA WEN, an individual, MINGJU XU, an individual, CAI DU, an individual, QINGHUI ZHANG, | CASE NO: 2:16-cv-00614<br><br>Honorable Beverly Reid O'Connell<br><br>**MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. SECTION 425.16 ET SEQ. (ANTI-SLAPP) AND F.R.C.P. RULE 12(F)**<br><br>Date:   April 25, 2016<br>Time:   1:30 p.m.<br>Courtroom: 14 |

1   an individual, LUCY WANG, an individual,

2       Defendants.

3

4

5       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

6       PLEASE TAKE NOTICE that on April 25, 2016, at 1:30 p.m., or as soon thereafter as

7   the parties may be heard, Defendants Robert T. Hume ("Hume"), Joey C. Montoya

8   ("Montoya"), Stanley Crawford ("Crawford"), Avrum Katz ("Katz"), Huamei Consulting

9   Co., Inc. ("Huamei"), Kwo Lee, Inc., a California corporation ("Kwo Lee"), and Shuzhang Li

10  ("Li") (collectively "Defendants") will move the court, located at the United States Courthouse,

11  312 North Spring Street, Los Angeles, California 90012-4701, Courtroom 14, by and through

12  their undersigned attorneys and pursuant to Rule 12(f) of the Federal Rules of Civil Procedure

13  and California Code of Civil Procedure Section 425.16 et seq., to strike the Second through

14  Sixth Claims for Relief in Plaintiffs' First Amended Complaint (the "Complaint"), or in the

15  alternative, to strike the following:

16      (1) Paragraph 280 of the Complaint, improperly seeking punitive damages under

17          Plaintiffs' Unfair Competition Law claim;

18      (2) The words ". . . and restitutionary relief . . ." from paragraph 279 of the Complaint,

19          and paragraph 3 of the Prayer for Relief, incorrectly seeking restitution where

20          Plaintiffs have not been dispossessed of any money or property by Defendants; and

21      (3) Paragraphs 279, 285, 289, 296, and 306 of the Complaint, and paragraph 2 of the

22          Prayer for Relief, as constituting illegal requests for prior restraints on speech.

23      This Motion is brought on the grounds that the Complaint filed by Harmoni International

24  Spice, Inc., a California corporation (Harmoni"), and Zhengzhou Harmoni Spice Co., Ltd., a

25  corporation ("Zhengzhou") (collectively "Harmoni") seeks to stifle Defendants' ability to act in

26  furtherance of their right of petition or free speech pursuant to the United States or California

27  Constitution in connection with a public issue.  In the alternative, this Motion is also based on

28  the rule against prior restraints on speech, seeking to strike all portions of the Complaint related

1  to proposed injunctive relief; UCL law and its limitations on damages; and the law of

2  restitution.

3       This Motion is made following the conference of counsel pursuant to Local Rule 7-3,

4  which took place on February 26, 2016, and March 17, 2016.  Plaintiffs' counsel opposes the

5  relief requested herein. This Motion is based on this Notice of Motion and Motion, the

6  accompanying Memorandum of Points and Authorities, and the pleadings and papers on file in

7  this action.

8

9                                                          LANZA & SMITH, PLC

10

11  March 25, 2016                                   /s/Brodie H. Smith

12                                                          Brodie H. Smith

13                                                          3 Park Plaza, Suite 1650
                                                             Irvine, CA  92614

14                                                          Phone: (949) 221-0490

15                                                          Fax:     (949) 221-0027

16                                                          Brodie@lanzasmith.com
                                                             *Attorneys for Defendants*

17                                                          *Robert T. Hume, Joey C. Montoya,*
                                                             *Stanley Crawford, Avrum Katz, Kwo Lee,*

18                                                          *Inc., Shuzhang Li, and Huamei Consulting*
                                                             *Co., Inc.*

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................1

II.  STATEMENT OF FACTS ...............................................................3

     A.  Applicable U.S Antidumping Laws and Procedures .............................4

     B.  Background of U.S. Antidumping Laws ..................................6

     C.  Administrative Reviews of Fresh Garlic..................................8

     D.  The RICO Complaint ................................................9

III. ANALYSIS.....................................................................10

     A.  California's Anti-SLAPP Statute..............................................10

         1.  Anti-SLAPP motions in federal court ...............................12

         2.  The Anti-SLAPP statute applies to all
             of Plaintiffs' state law claims .............................13

         3.  Step 1:  The lawsuit arises from Defendants'
             exercise of free speech.........................................13

         4.  Step 2:  Plaintiffs cannot demonstrate a probability of
             prevailing ...........................................14

             a.  The litigation privilege is absolute and broadly construed...........15

             b.  The litigation privilege applies to administrative hearings and
                 quasi-judicial hearings ......................................17

             c.  The litigation privilege applies to all tort and quasi-tort claims....18

     B.  Plaintiffs Improperly Seek Punitive Damages
         Under Their UCL Claim........................................19

     C.  Plaintiffs' Restitution Allegations and Prayer Should be Stricken..........20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.  Plaintiffs' Requests for Injunctive Relief Should be Stricken
and Illegal Prior Restraints on Speech.......................................................22

E.  Defendants Should Be Awarded Attorney's Fees and Costs ...................23

IV.    CONCLUSION ...........................................................................................24

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                    <u>Page</u>

*Albertson v. Raboff,* <u>46 Cal. 2d 375, 378-379 (1956)</u> ................................. 16

*Aronson v. Kinsella,* <u>58 Cal. App. 4th 254, 262 (1997)</u> ............................. 16

*Asherman v. Nattinson,* <u>23 Cal.App.3d 861, 865 (1972)</u> ..................................... 16-17

*Associates v. Environ Systems, Inc.,*<u>14 Cal.App.4th 842, 845 (1993)</u> .................... 19

*Bank of the West v. Superior Court,* <u>2 Cal.4th 1254, 1266 (1992)</u> ........................... 20

*Cacique, Inc. v. Robert Reiser & Co.,* <u>169 F.3d 619, 624 (9th Cir. 1999)</u> ............... 20

*Cell-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
    <u>20 Cal. 4th 163, 180 (1999)</u> ................................................... 20

*City of Costa Mesa v. D'Alessio Investments, LLC,*
    <u>214 Cal. App. 4th 358 (2013)</u> ............................................. 13

*Czechowski v. Tandy Corp.,* <u>731 F.Supp. 406 (N.D. CA 1990)</u> .............................. 20

*Direct Shopping Network, LLC v. James,* <u>206 Cal.App. 4th 1551 (2012)</u> ............... 13

*Duncan v. Atchison, T. & S. F. R. Co.,* <u>72 F. 808 (9th Cir. 1896)</u> ........................... 18

*Duncan v. Stuetzle*, <u>76 F.3d 1480, 1489 (9th Cir. 1996)</u> .................................. 18

*Equilon Enterprises v. Consumer Cause, Inc.,* <u>29 Cal. App. 4th 53, 67 (2002)</u> ...... 15

*Friedman v. Kanchecht,* <u>248 Cal.App. 2d 455, 460 (1967)</u> ...................................... 16

*Globe Trotter Software, Inc. v. Elan Computer Group, Inc.,*
    <u>63 F.Supp. 2d 1127, 1129-1130 (N.D. Cal. 1999)</u> ................................. 12

*Hilton v. Hallmark Cards,* <u>599 F.3d 894, 905 (9th Cir. 2009)</u> ............................ 12

*Jacob B. v. County of Shasta*, <u>40 Cal.4th 940, 957-959 (2007)</u> ............................. 16

*Jarrow Formulas, Inc. v. La Marche,* <u>31 Cal.4th 728 (2003)</u> .................................. 11

*Kachig v. Boothe,* <u>22 Cal.App.3d 626, 641 (1971)</u> ............................................ 16

*King v. Borges,* 28 Cal. App. 3d 27, 34 (1972) ........................ 18

*Lee v. Flick,* 135 Cal. App. 4th 89, 97 (2005) ........................ 17

*Lewis v. Linn,* 209 Cal. App. 2d 394, 399 (1962) ........................ 16

*Martin v. Kerney,* 51 Cal.App.3d 309, 311 (1975) ........................ 17-18

*Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (2003) .................. 20

*Macis v. Heartwell,* 55 Cal. App. 4th 669, 675 (1997) ................................. 14

*MAI Systems Corp. v. UIPS* (N.D.Cal.1994) 856 F.Supp. 538, 542 ...................... 21

*Metabolife Intern., Inc. v. Wornick,* 264 F.3d 832, 845-847 (9th Cir. 2001) ........... 13

*Monex Deposit Co. v. Gilliam,* 680 F.Supp.2d 1148, 1161 (C.D. Cal. 2010) ........ 18

*Navellier v. Sletten,* 106 Cal. App. 4th 763, 776 (2003) ............................ 15

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976) .................................. 22-23

*Oakley, Inc. v. McWilliams,* 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012) ........... 23

*Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118 (1990) ........... 18

*People ex rel. Lockyer v. Brar,* 115 Cal.App.4th 1315 (2004) ............................... 11

*Pineda v. Bank of America, N.A.,* 50 Cal. 4th 1389, 1401 (2010) ........................... 19

*Raider v. Thrasher,* 22 Cal. App. 3d. 883, 887 (1972) ............................ 16

*Robertson v. Rodriguez,* 36 Cal. App. 4th 347, 359 (1995) ............................ 15

*Rogers v. Home Shopping Network, Inc.,*
    57 F.Supp. 2d 973, 980 (C.D. Cal. 1999) ............................ 12

*Rubenstein v. Rubenstein,* 81 Cal. App. 4th 1131, 1146 (2000) ............................ 18

*Silberg v. Anderson,* 50 Cal. 3d 205, 218-219 (1990) ............................ 16-17

*Smith v. Maldonado,* 72 Cal.App.4th 637, 645 (1999) ............................ 18

*Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.,*
    720 F.Supp. 805, 810 (N.D. CA 1989) ............................ 20

*Taus v. Loftus*, 40 Cal. 4th 683 (2007) ........................................................ 15

*Thornton v. Rhodan*, 245 Cal.App.2d 80, 93 (1966) ................................. 16

*Transcom v. United States*, 294 F.3d 1371 (Fed. Cir. 2002) ....................... 5

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963, 972 (9th Cir. 1999) ........................................... 7, 12

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003)...................... 13

*Western Electro-Plating Co. v. Henness*, 196 Cal.App.2d 564, 570 (1961) ......... 18

Codes

19 C.F.R. § 351.213(b)(2)........................................................................ 4

19 C.F.R. § 351.213(d)(1).................................................................... 4, 8

19 U.S.C. § 1675........................................................................................ 4

19 U.S.C. § 1677b(c)(4) .......................................................................... 7

19 U.S.C. § 1673c ................................................................................... 7

19 U.S.C. § 1673c(4) ............................................................................... 7

19 U.S.C. § 1675(b) ................................................................................ 7

19 U.S.C. §1675(a)(2)(A) ...................................................................... 5

19 U.S.C. § 1675(b) ................................................................................ 7

19 U.S.C. § 1677 (9)(c) .......................................................................... 9

19 U.S.C. § 1677a(a) .............................................................................. 7

19 U.S.C. §1677a(b) ............................................................................... 7

19 U.S.C. § 1677b ................................................................................... 7

28 U.S.C. § 1331..................................................................................... 13

28 U.S.C. § 1367(a) ............................................................................... 13

59 Fed. Reg. 59, 209 ......................................................................... 8

Business and Professions Code Section 17200 .............................. 18-20

Business and Professions Code Section 17203 .............................. 19-20

Business and Professions Code Section 17500 ................................ 19

Business and Professions Code Section 17535 ................................ 19

Cal. Code of Civil Proc. Civil Code § 47 ....................................... 17

Cal. Code of Civil Proc. Civil Code § 47(b) .............................. 15-19

Cal. Code of Civil Proc. Civil Code § 47(b)(3) .............................. 17

Cal. Code of Civil Proc. Civil Code § 47(b)(4) .............................. 17

Cal. Code of Civil Proc. Section 425.16 ................................ 10-12, 14

Cal. Code of Civ. Proc. § 425.16 (b)(1) .............................. 12, 14-15

Cal. Code of Civ. Proc. § 425.16(c)(1) ......................................... 24

Cal. Code of Civ. Proc. § 425.16(c)(1) ......................................... 12

Cal. Code of Civ. Proc. § 425.16 (f) ............................................. 12

Cal. Code of Civ. Proc. § 425.16(g) ............................................. 13

*Educ. Code* § 48918.6 ............................................................... 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This action is a retaliatory lawsuit filed to discourage two domestic garlic farmers, Defendants Crawford and Katz, from requesting an administrative review of Plaintiff Harmoni's[1] unfair zero cash deposit rate on garlic imported from China.

For over a decade, Plaintiff Harmoni China has been the *only* Chinese exporter of Garlic to pay no tariffs.  Harmoni pays nothing, while nearly every other exporter pays substantially higher rates, up to $4.71/kg.  This has allowed Harmoni to virtually monopolize the U.S. garlic market, while flooding the U.S. with inferior garlic.  Harmoni has been able to retain this absurd tariff rate by "gaming" the U.S. Department of Commerce ("Commerce" or "DOC") and its review system -- explained in more detail below.

Now Crawford and Katz, two domestic Garlic producers, have requested that Commerce review Harmoni China – just like every other Chinese exporter. In response, Harmoni filed this retaliatory lawsuit, attempting to bully Defendants into withdrawing the review request (so Harmoni China can continue to dump cheap Chinese garlic in the U.S.).

Harmoni's First Amended Complaint ("Complaint") consists of a blend of small amounts of truth with a hefty dose of fiction. While its description of U.S antidumping laws and procedures is partially accurate, its portrayal of the parties and Defendants' alleged enterprise is a creative fantasy.

Many of Harmoni's allegations center on U.S. antidumping law and Commerce's 1994 antidumping order addressing fresh garlic from China.  Antidumping orders ensure that imports of certain products are sold at their fair value.  For imports sold below their

---

[1] Plaintiff Harmoni International Spice, Inc. (a/k/a "Harmoni USA") is a domestic *importer* of garlic.  Zhengzhou Harmoni Spice, Co. (a/k/a/ "Harmoni China") is a Chinese *exporter* of garlic.  They are sometimes referenced collectively as "Harmoni."

fair value, Commerce assesses antidumping duties as necessary to bring the import prices up to their "fair value."  Harmoni China currently accounts for well over 50% of Chinese garlic shipments to the U.S. and fraudulently claims some inherent right to continue receiving a 0.00% cash deposit rate (a rate it has maintained by "gaming" the DOC system).

Under Commerce's regulations, a domestic interested party can request an exporter be included in an administrative review.  Indeed, an exporter does not receive an annual review by Commerce unless an interested party submits a request to Commerce that the exporter be reviewed.  Each year since 2004, Harmoni's U.S. partner, a collection of four corporate U.S. garlic distributors called the Fresh Garlic Producers Association ("FGPA"), has requested Commerce to review all Chinese exporters, which would include Harmoni China.  Each year, however, FGPA has then withdrawn Harmoni China's name from the review request – immediately before the 90 day deadline.  For reasons explained in more detail below, if FGPA had not requested Commerce to review Harmoni, FGPA could not withdraw the request, and thus Harmoni would have been reviewed along with all other Chinese exporters (as it should be).  In this way, FGPA has effectively blocked any Commerce review of Harmoni for a decade, while all other exporters are periodically reviewed.

Harmoni China received a 0.00% cash deposit rate in the 10th Administrative Review.  Every subsequent year, the charade of requesting and withdrawing the requests continued.  Through this charade, Harmoni China keeps its 0.00% cash deposit rate and Harmoni USA sells cheap, poor quality garlic to FGPA.  These duty free garlic imports involve tens of millions of dollars in sales annually.  Other Chinese exporters are subject to cash deposit rates ranging from $1.82/kg to $4.71/kg, meaning they simply cannot compete with Harmoni and FGPA, who have thus exploited their manipulation of the Commerce review process to unfairly monopolize the U.S. garlic market.

Defendants Crawford and Katz requested Commerce to include Harmoni China in

the current review covering the period November 2014 – October 2015.  The deadline for withdrawing this review request is April 11, 2016 (90 days from the date of initiation of the review, plus four snow days).  While Commerce could conclude that Harmoni China has no antidumping margins and hence may keep its 0.00% cash deposit rate, Harmoni obviously believes Commerce will find very large margins.  This would severely degrade its profit margins (plus those of the FGPA, notably Christopher Ranch) and jeopardize 1) their ability to unlawfully dump Chinese garlic in the USA, and 2) their monopoly on the U.S. garlic market. Harmoni filed this action in an attempt to intimidate Crawford and Katz into withdrawing their review request, and to induce the other defendants to pressure Crawford and Katz or to otherwise enable Harmoni to continue its unfair advantage in the U.S. market.

## II.   STATEMENT OF FACTS

The DOC's 1994 China Garlic Order (the "Order") covers all Chinese garlic exporters.  Harmoni China, however, differs from all the other Chinese garlic exporters in that Harmoni has a collusive relationship with the FGPA.  Year after year, the FGPA, the only petitioner in the antidumping proceeding dating back from the inception of the Order, ensures that Harmoni China's garlic exports are not reviewed by the DOC.  This protects Harmoni from receiving a new dumping margin and Harmoni China maintains its 0.00% cash deposit rate and, thus, an enormous advantage over competitors who are not permitted to avoid tariffs.  This advantage ensures that the vast majority of Chinese garlic in U.S. markets comes from one exporter (Harmoni) and is funneled through one small group of distributors (the FGPA.)  No one else can compete.

Four large, corporate garlic producers and sellers in California make up the FGPA: Christopher Ranch L.L.C. ("Christopher Ranch"); The Garlic Company; Valley Garlic; and Vessey and Company, Inc.  Christopher Ranch is the largest seller, effectively controlling the garlic business in the U.S.  Christopher Ranch is aided in its U.S. market

domination with the help of Harmoni China's no tariff, low-priced garlic.  With access to Harmoni China's unfair 0.00% cash deposit rate on Chinese garlic imports, the FGPA has expanded their U.S. market control with the lowest priced garlic in the world.  The effect has been to progressively eliminate or cripple most competition in the U.S. market for fresh garlic.

Plaintiffs filed this action because they believe the pending antidumping administrative review that Defendants Crawford and Katz initiated on January 7, 2016 (81 Fed. Reg. 736) will result in Harmoni finally being assessed millions of dollars in antidumping duties and the loss of its 0.00% cash deposit rate.  According to the DOC's rescission regulation, 19 C.F.R. § 351.213(d)(1), interested parties have 90 days from the date of initiation to withdraw their respective review request(s).  The government's four-day closure due to snowstorm "Jonas" pushed Katz and Crawford's rescission deadline date to April 11, 2016.  The timing of Plaintiff's Complaint, with many of its allegations occurring years earlier, shows Plaintiffs' true intent: to intimidate Katz and Crawford into withdrawing their review request.

Plaintiffs are far from being injured parties.  Plaintiffs and members of the FGPA, including Christopher Ranch and The Garlic Company, have been gaming, circumventing and acting in an anticompetitive manner for over a decade to eliminate garlic competitors. Without a bona fide administrative review, Harmoni will continue to eradicate U.S. competition and dominate the U.S. market by funneling its low price, low quality, no tariff garlic to the largest U.S. sellers (and apparently re-sellers) of garlic.

### A.  Applicable U.S Antidumping Laws and Procedures

Interested parties may request administrative reviews ("ARs") once a year – on the anniversary date of the antidumping ("AD") order.  19 U.S.C. § 1675.  While domestic interested parties may request reviews of all exporters of the subject merchandise (19 C.F.R. § 351.213(d)(1)), foreign exporters can only request a review of themselves.  19 C.F.R. § 351.213(b)(2).

1    Under 19 U.S.C. §1675(a)(2)(A), no exporter is excluded from the Chinese Garlic

2    Order because the statute requires that all known exporters be reviewed. That is, all

3    exporters from non-market economy ("NME") countries are presumed to be companies

4    covered under the Order.  No companies are *required* to be specifically identified in a

5    review request, *Transcom v. United States*, 294 F.3d 1371 (Fed. Cir. 2002), although

6    FGPA *does* identify specific companies in order to take advantage of a loophole.

7    Antidumping regulations afford two ways in which an interested domestic

8    producer can request a review of exporters.  The interested party can request that all

9    exporters from a given country be reviewed, or that certain listed exporters be reviewed.

10   The FGPA, in order to maintain their anticompetitive advantage with Harmoni, wants all

11   Chinese exporters reviewed except Harmoni.  Thus, they cannot use the general

12   procedure of requesting that all Chinese exporters be reviewed.  Instead, Christopher

13   Ranch and other members of the FGPA file review requests listing virtually all Chinese

14   exporters, including Harmoni China.  When this type of specific review request is filed,

15   regulations require that the list be taken from governmental records of all exporters who

16   actually exported garlic into the country the previous year.  Thus, the FGPA cannot

17   simply omit Harmoni from the list.

18   However, in a loophole that was likely unintended, the antidumping regulatory

19   structure allows the FGPA to withdraw the names of specific exporters from any review

20   request listing specific companies (but not general review requests).  Thus, every year

21   (dating back well over a decade), the FGPA plays the same game of first requesting that

22   Harmoni China and all other exporters (listed by name) be reviewed, and then

23   withdrawing Harmoni China from the list.  To hide the scheme, the FGPA also

24   withdraws the names of exporters who have ceased to export to the United States, hoping

25   that Harmoni's special treatment will be overlooked as but one name among many.

26   Yet, when one examines the FGPA's annual list of withdrawn exporters, it

27   contains dozens of inactive exporters, accounting for $0 exports to the U.S., along with

28

1   one exporter (Harmoni China) who is responsible for much of the garlic exported from

2   China to the U.S.  Year after year, Harmoni China is the only exporter withdrawn that

3   has exports of garlic to the U.S. during the period of review.  Using this loophole, the

4   FGPA and Harmoni have managed to manipulate U.S. Antidumping law to create for

5   themselves an advantage that virtually guarantees they will be the only real "player" in

6   this garlic industry. They have maintained this scheme for over a decade.

7        The antidumping law does not permit other Chinese exporters to challenge the

8   FGPA/Harmoni scheme.  Essentially, the Chinese exporters have no standing.  As

9   referenced above, only "domestic interested parties" can request a review of Harmoni.

10   The problem is that the FGPA, partially *because* of this scheme, has been able to utterly

11   dominate the U.S. Garlic market, leaving no other "domestic interested parties" with

12   sufficient resources or courage to challenge their scheme. Thus, the scheme perpetuates

13   itself.  Medium-sized U.S. producers of fresh garlic have long since been (1) forced out

14   of business because of FGPA's manipulation of the antidumping laws, or (2) acquired by

15   the four members of the FGPA.  For all practical purposes, very few domestic garlic

16   producers survived who could bring the issue to the DOC.

17        The FGPA and Harmoni have realized millions of dollars in illicit profits this way.

18   With only themselves and small regional farmers left as "domestic interested producers,"

19   they could count on the fact that the small, local farmers likely would not have the

20   resources or the gumption to challenge them.  Now that two small New Mexican garlic

21   farmers have dared challenge them, Harmoni, as a puppet of the FGPA, has filed this

22   blatantly retaliatory lawsuit in order to protect their racket.

23       **B.**    **Background of U.S. Antidumping Laws**

24        The Antidumping Act, incorporated in the Tariff Act of 1930, currently codified in

25   Title 19 of the United States Code, applies complex rules to determine whether foreign

26   exports and U.S. imports are fairly priced.  The DOC traditionally determines whether a

27   company is "dumping" by comparing an exporter's home market prices with the

28

X:\D\705-01\Pleadings\Anti-SLAPP Mtn - March 25, 2016.docx

exporter's prices to the United States. 19 U.S.C. § 1675(b). For example, if an exporter's home market price is $2.00 and its U.S. export price is $1.00, then the dumping margin is 100%. The DOC calculates the dumping margin by taking the home market price as the numerator and the export price as the denominator. The lower the U.S. sales price and the higher the home market price, the greater the dumping margin.

As trade with China increased, Congress added the Trade Agreement Act of 1979 to include non-market economy ("NME") countries in the antidumping duty framework. An NME country is any foreign country that the DOC determines does not operate on market principles where the fair value of the merchandise is reflected in the export price. 19 U.S.C. § 1673c. The People's Republic of China is a NME -- as determined by DOC.

To value the factors of production in an NME country, the DOC must "utilize, to the extent possible, the prices or costs of factors of production in one or more market economy countries that are — (a) at a level of economic development comparable to that of the nonmarket economy country, and (b) significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(4). That is, the DOC uses surrogate values to determine whether there are dumping margins in NME countries cases.

For exporters who ship directly to unrelated importers in the U.S., the DOC uses the weighted average export prices to determine if there are dumping margins. 19 U.S.C. § 1677a(a). For exporters like Harmoni China who ship to an affiliate, the DOC uses the constructed export price methodology and examines the price to the first unrelated purchaser in the U.S. 19 U.S.C. §1677a(b).

Any Chinese garlic exporter that made shipments during a period covered by the review may file a separate rate certification ("SRC"), a separate rate application ("SRA") or a no shipment certification. Both SRAs and SRCs confirm that the company is free of Chinese government control. After filing a SRA or a SRC the exporter will receive the average of the margins Commerce calculates for the mandatory respondents. This average rate is called a "separate rate". Once an exporter receives a separate rate, the

1   exporter may file a SRC annually thereafter to keep its separate rate status.  If an exporter

2   does not ship during the applicable period of review, the exporter may file a no shipment

3   certificate to maintain its cash deposit rate.

4        To avoid a new calculation of antidumping duties, a mandatory respondent must

5   have the review request withdrawn under 19 C.F.R. § 351.213(d)(1).  It is through this

6   process that Harmoni has retained its zero cash deposit rate even though, based on the

7   quantity of garlic it shipped to the U.S. and the very low prices at which it sold its garlic,

8   Harmoni should have a substantial cash deposit rate.  Harmoni and FGPA manipulate the

9   administrative review system so they can avoid a review and thereby perpetuate the

10   original (and now, undeserved) zero cash deposit rate.

11      **C.**   **Administrative Reviews of Fresh Garlic**

12        As the surrogate values used for garlic from China increased, Harmoni China's

13   relative advantage has grown because it maintains a 0.00% cash deposit, while competing

14   exporters of whom the FGPA requested annual reviews (while withdrawing Harmoni),

15   were forced to increase their prices commensurate with the increased dumping margins.

16        As Harmoni China's only importer, Harmoni USA can sell fresh garlic at any price

17   it chooses, effectively enjoying monopoly power due to tariff-free products.  Harmoni

18   USA essentially passes Harmoni China's garlic through to the FGPA members.  In this

19   way, Harmoni USA is used to obscure the relationship between Harmoni China (an

20   exporter) and the members of the FGPA.

21        In 1994, the FGPA filed an antidumping petition that showed the industry was

22   being materially injured and provided evidence that Chinese garlic exporters were selling

23   their garlic in the U.S. at prices below "fair value."  59 Fed. Reg. 59, 209 (Dep't of

24   Commerce Nov. 16, 1994).  The DOC determined the "fair value" using India as the

25   surrogate. *Id.*

26        In their petition, the FGPA alleged margins of 376%.  No Chinese exporter

27   participated in the investigation and the DOC adopted the 376% figure provided by the

28

1  FGPA.

2       The 376% ad valorem rate was later converted to the $4.71/kg specific rate to stop

3  exporters from charging low prices and paying a percentage-based dumping duty.

4  Harmoni USA and members of the FGPA, including Christopher Ranch, want to prevent

5  Commerce from reviewing Harmoni China's garlic sales prices to the U.S. for the latest

6  period of review (the 21st segment, from November 2014 to October 2015). The U.S.

7  Court of International Trade ("CIT") has exclusive jurisdiction of trade matters, including

8  antidumping, and would be the natural forum for Plaintiffs to challenge the review request.

9  Clearly, by filing this strategic action in District Court, Plaintiffs acknowledge that there

10  is no basis for filing with the CIT, the court with jurisdiction and specialization in this

11  area.

12       Defendants Crawford and Katz are garlic producers of subject merchandise within

13  the meaning of the law. 19 C.F.R. § 351.102(b)(29)(v) and 19 U.S.C. § 1677 (9)(c).

14  They have a Constitutional right to petition Commerce to review Harmoni China.

15      **D.  The RICO Complaint**

16       Contrary to Plaintiffs' assertions, defendants named in the Complaint are not

17  engaged in any unlawful enterprise. Plaintiffs' Complaint repeatedly alleges Defendants

18  filed "fraudulent" statements with the DOC. In each instance, Plaintiffs' allegedly

19  fraudulent statements are provably *true*. The Complaint is replete with deceitful

20  allegations, including those regarding findings by Chinese authorities and an alleged

21  "$1.6 million war chest," all of which has been fabricated.

22       The Complaint alleges that Christopher Ranch and Harmoni USA do not compete

23  with Defendants Crawford and Katz (who they claim are "hobby farmers.") That

24  allegation is patently false. Christopher Ranch maintains displays in the Albertsons store

25  in Taos, New Mexico, less than 30 miles from Mr. Crawford and Mr. Katz's farms,

26  selling two large Chinese garlic bulbs for $1.00. This price is far below the price

27  Crawford and Katz are able to deliver to the same Albertsons store. Yet, the Christopher

28

Ranch garlic has traveled more than 6,000 miles from the garlic fields in Shandong Province, China, and Christopher Ranch is making profit on the sale. Efforts by Crawford and Katz to sell to wholesalers and retailers have been rebuffed for the simple reason that Christopher Ranch can provide these same wholesalers and retailers with cheap imported garlic (albeit of objectively inferior quality).

In fact, it is partially because of the inferior quality of Harmoni's and Christopher Ranch's garlic that they seek to paint Crawford and Katz as producers of "artisanal" garlic, thereby distinguishing Crawford and Katz in a different category. In reality, there is no meaningful difference in production methods between large and small garlic producers, except the degree of mechanization, and yet both Katz and Crawford utilize highly mechanized operations.

Crawford and Katz increasingly are being harmed because of the ever expanding imports of Harmoni's cheap Chinese garlic that escapes review. A trickle 10 years ago is a flood today. Harmoni's avoidance of reviews is contrary to the countrywide concept of all AD orders. While Harmoni claims otherwise, Harmoni now sets the price in the U.S. market and affects all competitors. The Christopher Ranch prices in Albertsons represent merely one small example that directly impacts Crawford and Katz. Every garlic farmer in the U.S. not connected with the FGPA is adversely impacted in a similar way.

## III.   ANALYSIS

### A. California's Anti-SLAPP Statute.

Code of Civil Procedure Section 425.16 et seq. – California's "anti-SLAPP" statute – is the front-line defense against any action threatening petitioning or free speech. It states, in part:

> (b) (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall

be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.  (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. . . .

(c) (1) Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5. . .

(e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or **judicial proceeding**, or any **other official proceeding authorized by law**, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a **public forum in connection with an issue of public interest**, or (4) **any other** or the constitutional right of free speech in connection with a public issue or an issue of public interest.  Code of Civil Procedure § 425.16 (emphasis added).

  As one appellate court explained, "[t]he point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights." *People ex rel. Lockyer v. Brar,* 115 Cal.App.4[th] 1315 (2004). Resolution of an anti-SLAPP motion requires the court to engage in a two-step process. *Jarrow Formulas, Inc. v. La Marche,* 31 Cal.4[th] 728 (2003).  In the first step, the defendant must show that the conduct underlying the plaintiff's cause of action is an act arising from the defendant's constitutional rights of free speech or petition.  Cal. Code of

1 | Civ. Proc. §425.16(b)(1).  In the second step, the burden shifts to the plaintiff to prove
2 | that he or she has a legally sufficient claim and to prove with "admissible evidence" a
3 | "probability" that the plaintiff will prevail on the claim.  If the plaintiff cannot show a
4 | probability of prevailing, then the court will grant the special motion to strike and dismiss
5 | plaintiff's action (*either* the entire lawsuit or individual causes of action).  Cal. Code of
6 | Civ. Proc. § 425.16(b)(1).  Defendant is entitled to recover their attorney's fees and costs
7 | incurred in the trial and appellate courts.  Code of Civ. Proc. § 425.16(c)(1).

### 1. Anti-SLAPP motions in federal court

While Code of Civ. Proc. § 425.16 is unavailable against federal claims in federal court, it may be used against pendent (supplemental) state law claims that are joined in federal question cases.  *Globe Trotter Software, Inc. v. Elan Computer Group, Inc.,* 63 F.Supp. 2d 1127, 1129-1130 (N.D. Cal. 1999).  The Ninth Circuit Court of Appeals has consistently determined that California Code of Civ. Procedure § 425.16 must be "construed broadly."  *Hilton v. Hallmark Cards,* 599 F.3d 894, 905 (9th Cir. 2009).

Certain provisions within Code of Civ. Proc. § 425.16 are "procedural in nature" and "directly collide" with the Federal Rules of Civ. Proc., and therefore do not apply in federal court.  *Rogers v. Home Shopping Network, Inc.,* 57 F.Supp.2d 973, 980 (C.D. Cal. 1999).  Although anti-SLAPP motions are available against state court claims brought in federal court, differing federal rules of procedure apply depending on the nature of defendant's legal challenge.  *Id.*

In federal court, the mandatory attorney's fees provisions (available to the defendant *only*) of the anti-SLAPP statute are deemed "substantive" for *Erie* doctrine purposes and do not "directly interfere" or "collide" with any of the Federal Rules of Civil Procedure.  Thus, the mandatory attorney fee recovery to defendants is available in federal court.  *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,* 190 F.3d 963, 972 (9th Cir. 1999).  Conversely, because the "discovery-limiting aspects" of the thirty-day and sixty-day requirements of the statute (Code of Civ. Proc. § 425.16 (f)) and

1   the automatic stay of all discovery proceedings (Code of Civ. Proc. § 425.16(g)) "Collide

2   with the discovery – allowing aspects of Rule 56, these aspects of subsections (f) and (g)

3   cannot apply in federal court." *Metabolife Intern., Inc. v. Wornick,* 264 F.3d 832, 845-

4   847 (9th Cir. 2001).

5          In this case, federal subject matter jurisdiction is based on federal question

6   pursuant to 28 U.S.C. § 1331 (Complaint ¶33, referring to Plaintiffs' RICO Claim), with

7   the remaining five state and common law claims brought under supplemental jurisdiction

8   pursuant to 28 U.S.C. § 1367(a) (Complaint ¶34).  Thus, this anti-SLAPP motion is

9   brought against Plaintiffs' five state law claims.

10              2.   The Anti-SLAPP statute applies to all of Plaintiffs'

11                   state law claims

12         Each of Plaintiffs' five state law claims is subject to the anti-SLAPP statute.  In

13  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1109 (9th Cir. 2003), the Ninth Circuit

14  upheld the application of California's anti-SLAPP statute to state law claims of unfair

15  competition.  Anti-SLAPP also applies to defamation generally, and specifically trade

16  libel as alleged in this case.  *Metabolife Intern., Inc. v. Wornick,* 264 F.3d 832, 845-847

17  (9th Cir. 2001).  Anti-SLAPP has also been used to strike complaints for Intentional

18  Interference with Contractual Relations (*Direct Shopping Network, LLC v. James,* 206

19  Cal.App. 4th 1551 (2012) and to Intentional Interference with Prospective Economic

20  Advantage. *City of Costa Mesa v. D'Alessio Investments, LLC,* 214 Cal. App. 4th 358

21  (2013).

22              3.   Step 1:  The lawsuit arises from Defendants' exercise of free speech

23         Each of the "acts and omissions" alleged in Plaintiff's Complaint relates to

24  Defendants' right to petition the government, specifically the DOC.  The heart of the

25  Complaint is contained in paragraph 270, which consists of a bullet-pointed list of 15

26  "fraudulent statements."  Fourteen of these statements were contained in pleadings filed

27

28

1  with the DOC.[2]

2       The Factual Allegations section of the Complaint builds to this one paragraph

3  (270), as Plaintiffs attempts to explain why the statements made to the DOC (a federal

4  administrative agency) were allegedly fraudulent.  All of the allegedly false statements

5  that form the basis of the Complaint are then collected and summarized in paragraph 270.

6       Plaintiffs have thus far demonstrated reluctance for the Court to view the alleged

7  false statements, failing to attach the DOC filings (or C. Agriculture's demand letter) to

8  the Complaint.  The allegedly fraudulent statements should, however, be analyzed as part

9  of this Anti-SLAPP Motion.  Defendants therefore ask that the Court take judicial notice

10  of the DOC filings referenced in Plaintiffs' Complaint.  (See Request for Judicial Notice,

11  Exhibits 1-14).

12       Exhibits 1-14 to Defendants' Request for Judicial Notice demonstrate, on their

13  face, that they constitute "conduct in furtherance of the exercise of the constitutional right

14  of petition" as that term is used in Code of Civil Procedure § 425.16.  These documents,

15  filed with the DOC, cannot constitute illegal activity, as Plaintiffs' Complaint alleges,

16  because they consist of petitioning activity that is evident on the face of the documents.

17  Moreover, Plaintiffs' Complaint *admits* that it is based entirely on petitions to the DOC, a

18  branch of the government, and a single demand letter.  There is no other basis for the

19  Complaint.  Accordingly, the burden shifts to Plaintiffs to prove a probability of

20  prevailing on the merits.

21            4.    Step 2:  Plaintiffs cannot demonstrate a probability of prevailing

22       Because Defendants' speech plainly falls within the scope of § 425.16, the burden

23  shifts to Plaintiffs to present admissible evidence demonstrating they have a probability

24  of success on the merits.  *Code of Civ. Proc.* § 425.16(b)(1); *Macis v. Heartwell,* 55 Cal.

25

26  _____

27  [2] The remaining statement, an allegedly extortionary demand letter, does not concern the
moving defendants.  It is also protected under Anti-SLAPP.

28

App. 4th 669, 675 (1997).  To satisfy this burden, it is not sufficient that Plaintiffs'
Complaint survive a demurrer/motion to dismiss.  *Navellier v. Sletten,* 106 Cal. App. 4th
763, 776 (2003).  Nor can Plaintiffs rely on the bare allegations of their own pleading;
instead they must "establish evidentiary support for [their] claim."  *Id.* at 775-76; *Equilon
Enterprises v. Consumer Cause, Inc.,* 29 Cal.App.4[th] 53, 67 (2002) (recognizing plaintiff
must provide the court with sufficient evidence, not theories in the complaint, to permit
the court to determine whether he/she can prevail.)  Plaintiff also must "meet the
defendant's constitutional defenses by providing evidence against them." *Robertson v.
Rodriguez,* 36 Cal.App.4[th] 347, 359 (1995).

     Reviewing a special motion to strike, the court applies a standard similar to
summary judgment.  *Taus v. Loftus,* 40 Cal.4[th] 683 (2007).  Plaintiffs' claims must be
"supported by sufficient prima facie showing of facts to sustain a favorable judgment if
the evidence submitted by the plaintiff is credited." *Id.* at 713-14.  If Plaintiffs fail to
satisfy their evidentiary burden, then the court must strike the Complaint. *Code of Civ.
Proc.* § 425.16(b)(1).

     This case is not realistically winnable for Plaintiffs' (for both legal and factual
reasons).  That is, even if Plaintiffs could establish every allegation in their Complaint as
true (they cannot), they nevertheless do not possess a valid claim that can survive
Defendants' affirmative defenses – such as litigation privilege.

     California's litigation privilege is codified in Civil Code § 47(b):

> A privileged communication or broadcast is one made: . . . (b)
> in any (1) legislative proceeding, (2) judicial proceeding, (3) in
> **any other official proceeding authorized by law**, or (4) in the
> initiation or course of any other proceeding authorized by law
> and reviewable pursuant to Chapter 2 (commencing with
> Section 1084) of Title 1 of Part 3 of the Code of Civil
> Procedure . . . (Civil Code § 47(b), emphasis added).

### *a. The litigation privilege is absolute and broadly construed*

The privilege granted by Civil Code § 47(b) is absolute because it protects even publications made with actual malice or with intent to do harm.  *Silberg v. Anderson,* 50 Cal. 3d 205, 218-219 (1990).  The California Supreme Court has held that there is no requirement that the communication be "in the interest of justice" to be absolutely privileged.  *Id.* at 212.  Therefore, communications that are made in connection with and logically related to litigation or other official proceedings do no fall outside of the judicial privilege merely because they are alleged to be fraudulent, perjurious, unethical, or even illegal.  *Jacob B. v. County of Shasta*, 40 Cal.4th 940, 957-959 (2007).

The privilege is not limited to pleadings, to oral or written evidence, or to publications in open court if the publication is made to achieve the objects of the litigation or proceeding.  *Raider v. Thrasher,* 22 Cal. App. 3d. 883, 887 (1972).  Persons who qualify for the absolute privilege afforded by Civil Code 47(b) include attorneys [*Friedman v. Kanchecht,* 248 Cal.App. 2d 455, 460 (1967)], parties [*Albertson v. Raboff,* 46 Cal. 2d 375, 378-379 (1956)] and witness and prospective witnesses [*Asherman v. Nattinson,* 23 Cal.App.3d 861, 865 (1972)] among others.  Because there is no exception to the privilege when the testimony is perjured, courts have held that there is also no exception to the preparation and presentation of false documentary evidence.[3]  *Kachig v. Boothe,* 22 Cal.App.3d 626, 641 (1971).

Statements made *before or after* the litigation or other official proceeding are privileged under Civil Code Section 47(b) if the statement is made in connection with the litigation that is contemplated in good faith and under serious consideration.  *Aronson v. Kinsella,* 58 Cal. App. 4th 254, 262 (1997).  California courts favor a liberal construction of the scope of jurisdiction and relevancy of Section 47(b).  *Lewis v. Linn,* 209 Cal. App. 2d 394, 399 (1962).  Under Civil Code Section 47(b), doubts are to be resolved in favor of relevancy and pertinency of the litigation privilege.  *Thornton v. Rhodan,* 245

---

[3] Plaintiffs *allege* that false evidence was proffered to the DOC, but this will be disproven if the case proceeds.

1  Cal.App.2d 80, 93 (1966).

## b. The litigation privilege applies to administrative hearings and quasi-judicial hearings

4  A publication or broadcast made in any official proceeding authorized by law is
5  privileged.  Civ. Code § 47(b)(3)&(4).  The phrase "In any other official proceeding
6  authorized by law" contained in Civil Code § 47(b) encompasses those proceedings that
7  resemble judicial and legislative proceedings, such as transactions of administrative
8  boards and quasi-judicial and legislative proceedings.  *Silberg v. Anderson,* 50 Cal. 3d
9  205, 218-219 (1990).  The general rule is now well-established that the absolute privilege
10  is applicable not only to judicial but also to *quasi*-judicial proceedings. *Id.* at 212.  The
11  interpretation of what is considered an official proceeding essentially includes any
12  proceeding where government officials make decisions affecting others. *Id.*  It has been
13  applied even for testimony provided by a pupil as a witness in a school's expulsion
14  hearing. *Educ. Code § 48918.6.*

15  The primary factors that determine the nature of quasi-judicial proceedings under
16  Civil Code § 47(b) are (1) whether the administrative body is vested with discretion on
17  an investigation and consideration of evidentiary facts; (2) whether it is entitled to hold
18  hearings and decide the issue by application of rules of law to the ascertained facts; and,
19  (3) whether its power affects the personal or property rights of private persons.
20  *Ascherman v. Natanson,* 23 Cal.App.3d 861, 865 (1972).

21  A communication to an official administrative agency, which communication is
22  designed to prompt action by that agency, is as much part of the "official proceeding" as
23  a communication made after the proceedings have commenced. *Martin v. Kerney,* 51
24  Cal.App.3d 309, 311 (1975).  Moreover, because a complaint or other official filing
25  constitutes part of the official proceedings, it is not necessary that the official body take
26  any particular action on the complaint itself to be protected. *Lee v. Flick,* 135 Cal. App.
27  4th 89, 97 (2005).  The absolute privilege of Section 47(b) has been extended to letters

28

1    written to the State Division of Real Estate and letters sent to public school teacher

2    superiors — essentially, any written communication that is part of or initiates an official

3    proceeding.  See, *King v. Borges,* 28 Cal. App. 3d 27, 34 (1972); and *Martin v. Kearny,*

4    *supra,* at 311.  In *Duncan v. Atchison, T. & S. F. R. Co.,* 72 F. 808 (9th Cir. 1896),

5    allegedly libelous statements contained in an answer filed in proceedings before the

6    Interstate Commerce Commission were deemed protected by the litigation privilege.

7                         ***c.   The litigation privilege applies to all tort and***

8                               ***quasi-tort claims***

9             The absolute litigation privilege of Section 47(b) bars derivative tort actions, and

10   applies to all torts other than malicious prosecution, including fraud, negligence, and

11   negligent misrepresentation.  *Rubenstein v. Rubenstein,* 81 Cal. App. 4th 1131, 1146

12   (2000).  Federal Courts in the Central District of California consistently uphold this

13   understanding – and thus confirm that the litigation privilege bars all tort causes of action

14   arising from privileged communications, except a claim for malicious prosecution.

15   *Monex Deposit Co. v. Gilliam,* 680 F.Supp.2d 1148, 1161 (C.D. Cal. 2010).

16            All six causes of action in Plaintiffs' Complaint are torts and are thus barred by the

17   litigation privilege (although the First Claim for Relief—RICO—cannot be stricken

18   under Anti-SLAPP).  Plaintiffs' Second Claim for Unfair Competition pursuant to

19   California Business and Professions Code Section 17200, *et. seq.* is a statutory tort, and

20   thus subject to the litigation privilege.  *Western Electro-Plating Co. v. Henness,* 196

21   Cal.App.2d 564, 570 (1961).

22            Plaintiffs' Third Claim for common law Unfair Competition is also a tort.  *Duncan*

23   *v. Al Stuetzle,* 76 F.3d 1480 (9th Cir. 1996) (referring to "California's common law tort of

24   Unfair Competition.")  The remaining three Claims – Trade Libel, Tortious Interference

25   with Contractual Relations, and Intentional Interference with Prospective Economic

26   Advantage – are also all common law torts, and are thus barred in this case by the

27   litigation privilege. See, *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999) (libel is a

28

1   tort); *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118 (1990)

2   (intentional interference with contractual relations is a tort); *Associates v. Environ*

3   *Systems, Inc.*, 14 Cal.App.4th 842, 845 (1993) (intentional interference with prospective

4   economic advantage is a tort.)

5       Paragraph 270 of the Complaint lists fifteen alleged "fraudulent statements" that

6   form the basis of Plaintiffs' entire Complaint.  Fourteen of those fifteen statements were

7   made in official DOC filings, and the fifteenth was in a pre-litigation demand letter. (See,

8   First Amended Complaint; Decl. of Robert T. Hume; and Request for Judicial Notice

9   Exhibits 1-7.)  Under Section 47(b), DOC petitions are subject to absolute privilege (a

10   complete defense.)  Plaintiff's entire Complaint is thus barred by the litigation privilege.

11   Harmoni cannot demonstrate that it has a probability of success on the merits when its

12   entire Complaint rests on alleged statements made in official filings with the DOC.

13   Because Defendants' speech is clearly in furtherance of the exercise of free speech, and

14   because Plaintiffs' cannot demonstrate a probability of success on the merits,

15   Defendants' Anti-SLAPP motion should be granted.

16      **B.  Plaintiffs Improperly Seek Punitive Damages Under Their UCL Claim**

17       In the alternative, if Defendants' Anti-SLAPP motion is not granted, the Court

18   should strike Plaintiffs' request for punitive damages pursuant to UCL.  Under Plaintiffs'

19   Second Claim for Relief pursuant to Business and Professions Code Section 17200,

20   Plaintiffs allege:

21          "280. The aforementioned acts of Defendants were willful,

22          oppressive, and malicious, in that Defendants unfairly

23          competed with Plaintiffs with the deliberate intent to injury

             Plaintiffs' business.  Plaintiffs are therefore entitled to payment

24          of damages in a sum sufficient to punish Defendants and to set

25          an example and deter such conduct in the future."

26      Business and Professions Code Section 17500 and Section 17535 "do not authorize

27   recovery of damages by private individuals." Bus. & Prof. Code 17500, 17535; *Accord*,

28

1   *Pineda v. Bank of America, N.A.,* 50 Cal. 4th 1389, 1401 (2010).  Likewise, damages are

2   not recoverable under Section 17200 and Section 17203.  For a time, there was

3   disagreement among the California appellate courts whether damages were available

4   under the UCL statute, but that debate was ended with the California Supreme Court's

5   pronouncement in *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1266 (1992) that

6   "damages are not available under Section 17203."  Every federal court that has applied

7   California law has disallowed damages under Section 17200 et seq.  *Cacique, Inc. v.*

8   *Robert Reiser & Co.,* 169 F.3d 619, 624 (9th Cir. 1999).

9         The rule that private plaintiffs (*i.e.,* non-Attorneys General) cannot recover

10   damages under UCL Law includes a prohibition against punitive damages.  In

11   *Czechowski v. Tandy Corp.,* 731 F.Supp. 406 (N.D. CA 1990), the court held that

12   punitive damages are not available under Section 17200, *et. seq.*  Likewise, in *Southwest*

13   *Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F.Supp. 805, 810 (N.D. CA 1989), the

14   court held that "Plaintiffs' relief under Section 17200 is limited to equitable relief,

15   including restitution.  Thus, no claim for punitive damages under Section 17200 may be

16   had."

17         Because California law contains an absolute bar to recovery of punitive damages

18   under UCL law, Plaintiffs have no basis to seek punitive damages pursuant to their

19   Second Claim for Relief.  Accordingly, the Court should strike paragraph 280 from the

20   Complaint.

21         **C.   Plaintiffs' Restitution Allegations and Prayer Should be Stricken**

22         Plaintiffs' Complaint seeks restitution under the Second and Third Claims for

23   Relief, but fails to plead facts to support restitution.  (See, ¶ 279, and Prayer for Relief,

24   ¶2).  While the scope of conduct covered by the UCL is broad, its remedies are limited.

25   *Cell-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163,

26   180 (1999).  A UCL action is equitable in nature; damages cannot be recovered.  *Bank of*

27   *the West v. Superior Court,* 2 Cal.4[th] 1254, 1266 (1992).

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (2003), the plaintiff sought disgorgement of profits from the defendant, a competitor of plaintiff who had been awarded a contract from the Korean government to which both plaintiff and defendant had offered bids.  *Id*. at 1140.  After the Korean government awarded the contract to the defendant, the plaintiff brought a lawsuit alleging that the contract had been awarded as a result of bribes and sexual favors.  *Id*. at 1141–1142.  Claiming a right to restitution, plaintiff sought to recover money the defendant received under the contract.  *Id*.  The California Supreme Court rejected plaintiffs' claim for so-called "restitution" under the UCL, reasoning:

> "The remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants. First, it is clear that plaintiff is not seeking the return of money or property that was once in its possession. KSC has not given any money to Lockheed Martin; instead, it was from the Republic of Korea that Lockheed Martin received its profits....[¶] ... [¶] ... [Further, KSC cannot establish that it had a vested interest in the money it seeks to recover because] KSC itself acknowledges that, at most, it had an 'expectancy' in the receipt of a commission. KSC's expected commission is merely a contingent interest since KSC only expected payment if MacDonald Dettwiler was awarded the SAR contract. [Citation.] Such an attenuated expectancy cannot, as KSC contends, be likened to 'property' converted by Lockheed Martin that can now be the subject of a constructive trust. ...[¶]The nonrestitutionary disgorgement remedy sought by plaintiff closely resembles a claim for damages, something that is not permitted under the UCL. As one court has noted:  "Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims." (*MAI Systems Corp. v. UIPS* (N.D.Cal.1994) 856 F.Supp. 538, 542.)"  *Id.* at 1149–1150.

The Court concluded by holding that "nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL." *Id*. at 1152.

A valid claim for restitution requires that, prior to the lawsuit, money or property belonging to plaintiff come under the possession, custody, or control of defendants.  A

restitution claim seeks to return the money or property to its rightful owner. *Id.*

In their Complaint, Plaintiffs allege they were harmed in exactly two ways by the actions of Defendants:  Plaintiffs allege they (1) "lost market share and profit," and (2) "incurred significant expenses, including legal fees, in defending itself from baseless threats of administrative review and the fraudulent statements made regarding its business practices to the DOC." (Complaint, ¶¶ 200, 201 and 246).  Harmoni does *not* allege that any money or property was divested from its coffers and placed in the possession, custody, or control of Defendants.  The boilerplate restitution allegations and prayers were included in the Complaint reflexively, without any attempt to apply the factual allegations of the Complaint.  Harmoni's factual allegations cannot support a claim for restitution and thus, restitution should be stricken form the Complaint.  The following allegations should be stricken from the Complaint:

(1) ". . . and restitutionary relief . . ." (¶ 279); and

(2) "Recovery of restitution from Defendants in an amount to be determined at trial, and/or any interest in money or property, which may have been acquired by means of Defendants' Unfair Competition or other unlawful acts." (Prayer for Relief, ¶3).

## D.  Plaintiffs' Requests for Injunctive Relief Should be Stricken as Illegal Prior Restraints on Speech

Harmoni's Complaint asks the court to enjoin Plaintiffs from filing future "fraudulent statements" with the DOC. (Complaint, ¶¶ 279, 285, 289, 296, and 306; and paragraph 2 of the Prayer for Relief.)  This would violate the rule against prior restraints on speech, which prevents, *inter alia*, courts from issuing injunctions on future speech.  In *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), the U.S. Supreme Court collected a number of prior restraint cases and noted, "the thread running through all these cases is that prior restraints on speech and publication are the most serious and the

1   least tolerable infringement on First Amendment rights." *Id.* "Injunctions against any

2   speech, even libel, constitute prior restraints: they 'prevent speech before it occurs,' by

3   requiring court permission before that speech can be repeated." *Oakley, Inc. v.*

4   *McWilliams,* 879 F. Supp. 2d 1087, 1089 (C.D. Cal. 2012).

5       When the rule against prior restraints is applied to judicial injunctions (as opposed

6   to legislative enactments), the rationale is not only based on Constitutional

7   considerations, but practical considerations. *Id.* It would be nearly impossible for the

8   Court to predict future circumstances, or how the enjoined speech might be used in

9   context.  In this case, Defendants ask the Court to enjoin Defendants from submitting

10  future "fraudulent and false" statements to the DOC.  Yet, multiple court hearings would

11  be required in order to determine whether any future statements were false to begin with.

12  It would be a truly outrageous and unprecedented use of injunctive power to require

13  Defendants to seek District Court permission every time they wish to submit a DOC

14  filing.  In that sense, the requested relief is as much unrealistic as it is unconstitutional.

15      In every instance in which Plaintiffs reference injunctive relief in the Complaint, it

16  is with respect to enjoining future speech. (Complaint, ¶¶ 279, 285, 289, 296, and 306; and

17  paragraph 2 of the Prayer for Relief.)  The Supreme Court is clear: Injunctive relief is

18  simply not available under these circumstances. *Nebraska Press Ass'n*, supra, at 559.  As

19  such, the Court should strike paragraphs 279, 285, 289, 296, and 306 of the Complaint; and

20  paragraph 2 of the Prayer for Relief.

21      **E.   Defendants Should Be Awarded Attorney's Fees and Costs**

22      California's Anti-SLAPP statute permits the recovery of attorney's fees and costs

23  associated with bringing an anti-SLAPP motion.  Code of Civil Procedure Section

24  425.16(c) provides: "…in any action subject to subdivision (b), a prevailing defendant on

25  a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs."

26  [emphasis added.]  Given the amount of time that would have been required to prepare

27  Plaintiffs' 75 page Complaint, and their lengthy Preliminary Injunction Motion, Plaintiffs

28

1  are either aware, or should be aware, that their Complaint is without merit.  Plaintiffs

2  were made aware of the litigation privilege at least as early as the first meet and confer

3  conference among counsel on February 26th, and yet persisted with their baseless

4  Complaint.  Defendants, therefore, should be awarded their attorney's fees and costs

5  associated with bringing this Anti-SLAPP Motion.  If the Court grants this Motion,

6  Defendants will provide a separate declaration and supporting documents enumerating

7  their attorney's fees and costs.

8

9  ## IV.   CONCLUSION

10     For the foregoing reasons, Defendants respectfully request that the Court grant this

11  Motion to Strike in its entirety, striking Defendants' Second through Sixth Claims for Relief, or

12  in the alternative, striking specific allegations and prayers as set forth above.  Moving

13  Defendants further request that they be awarded attorney's fees and costs pursuant to Code of

14  Civil Procedure § 425.16(c).

15

16                LANZA & SMITH, PLC

17

18  March 25, 2016        /s/Brodie H. Smith

19               Brodie H. Smith

20               3 Park Plaza, Suite 1650

             Irvine, CA  92614

21               Phone: (949) 221-0490

22               Fax:    (949) 221-0027

23               Brodie@lanzasmith.com

             Tony@lanzasmith.com

24               *Attorneys for Defendants*

Robert T. Hume, Joey C. Montoya,

25  Stanley Crawford, Avrum Katz, Kwo Lee,

Inc., Shuzhang Li, and Huamei Consulting

26  Co., Inc.

27

28

X:\D\705-01\Pleadings\Anti-SLAPP Mtn - March 25, 2016.docx