JOHN E. SCHREIBER (261558)
WINSTON & STRAWN LLP
333 S. Grand Avenue #3800
Los Angeles, CA 90071-1543
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  jschreiber@winston.com

JEFFREY L. KESSLER (*pro hac vice*)
A. PAUL VICTOR (*pro hac vice*)
GEORGE E. MASTORIS (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  jkessler@winston.com

Attorneys for Plaintiffs
HARMONI INTERNATIONAL SPICE, INC. AND
ZHENGZHOU HARMONI SPICE CO., LTD.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARMONI INTERNATIONAL SPICE, INC., a California corporation, and ZHENGZHOU HARMONI SPICE CO., LTD., a corporation,<br><br>   Plaintiffs,<br><br>  v.<br><br>WENXUAN BAI, an individual, et al.,<br><br>   Defendants. | Case No. 2:16-cv-00614-BRO-ASx<br><br>Hon. Beverly Reid O'Connell<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS C AGRICULTURE GROUP CORP., JIN XIA WEN, AND MINGJU XU'S MOTION TO DISMISS AND/OR STRIKE THE FIRST AMENDED COMPLAINT**<br><br>Hearing:  April 18, 2016, 1:30 p.m.<br>Courtroom:  14 |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION AND SUMMARY OF RELEVANT FACTUAL
        ALLEGATIONS ...................................................................................................1

II.     LEGAL STANDARD .........................................................................................3

III.    SUMMARY OF THE C AGRICULTURE DEFENDANTS'
        ARGUMENTS ....................................................................................................4

IV.     PLAINTIFFS HAVE ADEQUATELY PLED FACTS
        DEMONSTRATING THAT THE "LITIGATION PRIVILEGE" DOES
        NOT APPLY AND THUS THAT THE FAC ADEQUATELY STATES
        A CLAIM FOR EACH OF COUNTS I-VI ..........................................................5

V.      PLAINTIFFS HAVE PROPERLY ALLEGED A RICO CLAIM
        AGAINST DEFENDANTS ..................................................................................9

        A.      The RICO Cause of Action Is Not Barred by the Noerr-Pennington
                Doctrine .....................................................................................................9

        B.      Plaintiffs Have Adequately Alleged a Viable RICO Violation
                Against the C Agriculture Defendants .....................................................12

                1.      Existence of an Ongoing Enterprise .............................................12

                2.      Pattern of Racketeering Activity Involving the C Agriculture
                        Defendants ....................................................................................14

                3.      Existence of Proximate Injury Caused by the RICO
                        Violation .......................................................................................16

VI.     PLAINTIFFS' STATE LAW CLAIMS ARE ADEQUATELY
        ALLEGED .........................................................................................................17

        A.      Plaintiffs Have Adequately Alleged an Unfair Competition
                Violation Under Each of the Three Prongs of the Statute .......................17

        B.      Plaintiffs' Allegations Are Sufficient to State a Trade Libel Claim........21

        C.      Plaintiffs Have Adequately Alleged a Claim for Tortious
                Interference With Contractual Relations...................................................22

        D.      Plaintiffs' Allegations Set Forth a Claim for Intentional
                Interference With Prospective Economic Advantage ..............................24

VII.    CONCLUSION ..................................................................................................25

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
  No. C 11-02243, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012)..........................7

*AICCO, Inc. v. Ins. Co. of N. Am.*,
  90 Cal. App. 4th 579 (2001) ...................................................................19

*Allwaste, Inc. v. Hecht*,
  65 F.3d 1523 (9th Cir. 1995) ..................................................................16

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)..................................................................................17

*Barnes-Hind, Inc. v. Super. Ct.*,
  181 Cal. App. 3d 377 (1986) ..............................................................21, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................. 3

*Bergman v. Bank of Am.*,
  2013 WL 5863057 (N.D. Cal. 2013) .....................................................14

*Bias v. Wells Fargo & Co.*,
  942 F. Supp. 2d 915 (N.D. Cal. 2013) ...................................................14

*Blanks v. Shaw*,
  171 Cal. App. 4th 336 (2009) ................................................................20

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013) ........................................23

*Brewer v. Indymac Bank*,
  609 F. Supp. 2d 1104 (E.D. Cal. 2009) .............................................3, 20

*Brown v. Wireless Networks, Inc.*,
  No. C 07-4301, 2008 WL 1859990 (N.D. Cal. Apr. 24, 2008).............7

*Brunelle v. GE Capital Info. Tech. Solutions*, Inc.,
  328 F. App'x 381 (9th Cir. 2009)..........................................................24

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

ii

*Bylin Heating Sys., Inc. v. M & M Gutters, LLC*,
  No. 07-CV-00505, 2008 WL 744706 (E.D. Cal. Mar. 18, 2008) ........................7

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) ...............................................................................17

*Catch Curve, Inc. v. Venali, Inc.*,
  519 F. Supp. 2d 1028 (C.D. Cal. 2007) ..............................................................10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ...............................................................................18, 19

*Clipper Exxpress v. Rocky Mountain Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982) ............................................................................10

*Edwards v. Centex Real Estate Corp.*,
  53 Cal. App. 4th 15 (1997) ...................................................................................5

*Eisenberg v. Alameda Newspapers, Inc.*,
  74 Cal. App. 4th 1359 (1999) .....................................................................passim

*Express, LLC v. Fetish Grp., Inc.*,
  464 F. Supp. 2d 965 (C.D. Cal. 2006) ................................................................20

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
  No. CIV.S-09-580 FCD/JFM, 2009 WL 2462505 (E.D. Cal. Aug. 11, 2009) ......
  ........................................................................................................................19, 22

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ............................................................................11

*Friedman v. 24 Hour Fitness USA, Inc.*,
  580 F. Supp. 2d 985 (C.D. Cal. 2008) ................................................................14

*Fuhrman v. Cal. Satellite Sys.*,
  179 Cal. App. 3d 408 (1986), *overruled on other grounds by Silberg v.
  Anderson*, 50 Cal. 3d 205 (1990)..........................................................................5

*Gamboa v. Trustee Corps.*,
  No. 09-0007, 2009 WL 656285 (N.D. Cal. Mar. 12, 2009)................................15

*Gruen v. Edfund*,
  No. C 09-00644, 2009 WL 2136785 (N.D. Cal. July 15, 2009) ........................20

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iii

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   429 U.S. 229 (1989) ................................................................................... 14

*Haneline Pac. Properties, LLC v. May*,
   167 Cal. App. 4th 311 (2008) ..................................................................... 5

*Heflebower v. JPMorgan Chase Bank, NA*,
   No. 12-cv-1671, 2014 WL 897352 (E.D. Cal. Mar. 6, 2014) ................... 17

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................... 20

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) ....................................................... 22

*iYogi Holding Pvt Ltd. v. Secure Remote Support, Inc.*,
   C-11-0592 CW, 2011 WL 6291793 (N.D. Cal. Oct 25, 2011) .................. 19

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (2009) ............................................................... 18, 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ..................................................... 18, 24, 25

*Kottle v. NW. Kidney Ctrs.*,
   146 F.3d 1056 (9th Cir. 1998) ..................................................................... 9

*Lerette v. Dean Witter Org.*,
   60 Cal. App. 3d 573 (1976) ......................................................................... 8

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ..................................................................... 17

*Nguyen v. Proton Tech. Corp.*,
   69 Cal. App. 4th 140 (1999) ........................................................................ 6

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ..................................................................... 12

*Oliver & Tate Enters., Inc. v. Founds. Worldwide, Inc.*,
   No. CV 13-01683-RGK SHX, 2013 WL 4446827 (C.D. Cal. June 18, 2013) .. 21

*Otter Tail Power Co. v. United States*,
   410 U.S. 366-67 (1973) ............................................................................. 11

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

iv

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Paduano v. Am. Honda Motor Co.*,
   169 Cal. App. 4th 1453 (2009) ....................................................................20

*People ex rel. Gallegos v. Pac. Lumber Co.*,
   158 Cal. App. 4th 950 (2008) .......................................................................8

*People ex rel. Mosk v Nat'l Research Co. of Cal.*,
   201 Cal. App. 2d 765 (1962) ......................................................................19

*PMC, Inc. v. Saban Entm't, Inc.*,
   45 Cal. App. 4th 579 (1996) .......................................................................25

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
   No. 5:11-cv-01860, 2012 WL 1669726 (C.D. Cal. May 14, 2012) ............10, 11

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993).................................................................................9, 11

*Quelimane Co. v. Stewart Title Guar. Co.*,
   19 Cal. 4th 26 (1998) .................................................................................23

*Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.*,
   No. C-06-4693, 2007 WL 1394427 (N.D. Cal. May 10, 2007) .........................7

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) .....................................................................19

*Saunders v. Super. Ct.*,
   27 Cal. App. 4th 832 (1994) .......................................................................18

*Sebastian Int'l, Inc. v. Russolillo*,
   162 F. Supp. 2d 1198 (C.D. Cal. 2001)........................................................23

*Seikaly & Stewart, P.C. v. Fairley*,
   18 F. Supp. 3d 989, 995 (D. Ariz. 2014) ....................................................16

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001) .......................................................................19

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) .................................................................9, 11

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
   933 F. Supp. 918 (C.D. Cal. 1996)..............................................................18

**PLAINTIFFS' OPPOSITION TO THE C AGRICULTURE DEFENDANTS' MOTION TO DISMISS THE FAC**

*United Farm Workers of Am., AFL-CIO v. Dutra Farms,*
 83 Cal. App. 4th 1146 (2000) .......................................................................20

*Valentini v. Shinseki,*
 860 F. Supp. 2d 1079 (C.D. Cal. 2012) ......................................................3

*Visto Corp. v. Sproqit Techs., Inc.,*
 360 F. Supp. 2d 1064 (N.D. Cal. 2005)....................................................8, 9

STATUTES

18 U.S.C. § 1962(c) ....................................................................................4, 12

19 U.S.C. § 1307 ................................................................................................22

Cal. Bus. & Prof. Code §17200 .................................................................18, 20

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2)........................................................................................3

Fed. R. Civ. P. 12(b)(6) .....................................................................................8

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**PLAINTIFFS' OPPOSITION TO THE C AGRICULTURE DEFENDANTS' MOTION TO DISMISS THE FAC**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

## I.     **Introduction and Summary of Relevant Factual Allegations**

In their First Amended Complaint (the "FAC"), Plaintiffs Harmoni International Spice, Inc. ("Harmoni") and Zhengzhou Harmoni Spice Co., Ltd. ("Zhengzhou Harmoni") (together, "Plaintiffs") have pled facts easily sufficient to plausibly show that Defendants C Agriculture Group Corp. ("C Agriculture"), Jin Xia Wen, and Mingju Xu (together, the "C Agriculture Defendants") are part of an unlawful enterprise of Chinese garlic producers (the "Chinese Garlic Association," or "CGA") and their associates in the United States (the "Enterprise"). The goals of this Enterprise include, *inter alia*, extorting money from Plaintiffs, destroying Plaintiffs' business and reputation, and ultimately seizing control of the lucrative United States market for Chinese garlic. FAC ¶¶ 1, 10-11, 31-32, 115-16, 262. And, as the FAC lays out in great detail, the Enterprise is attempting to accomplish these goals by (1) engaging in extortion; (2) making false and fraudulent representations to the U.S. Department of Commerce ("DOC") in order to abuse and distort the antidumping laws and obtain favorable import rates and strip Plaintiffs of their legitimately obtained, favorable rate; (3) falsely implicating Plaintiffs in purported illegal activities; and (4) otherwise disparaging and defaming Plaintiffs to their customers and to the public. *Id.* ¶¶ 114-33, 158, 200-01, 227, 244, 246, 253-58.

The FAC sets forth facts showing that C Agriculture, which is controlled by its owner Wen and manager Xu, distributes and sells garlic produced by members of the CGA in the United States and is intimately involved in the Enterprise's attempts to advance its unlawful goals of extorting money from Plaintiffs and destroying Plaintiffs' Chinese garlic business. *Id.* ¶¶ 31, 55-56, 114, 128-30, 258. In November 2015, the C Agriculture Defendants sent a defamatory and extortionate letter (the "Letter") to Plaintiffs and their largest United States customer. *Id.* ¶¶ 249-55; *see also id.* ¶¶ 31. The Letter issued a clear—and illegal—extortionate demand: either pay us $32 million in the next week or face public (and false) allegations that you broke the law by using prison labor in unsanitary conditions to grow your garlic. *Id.* ¶¶ 247-58

**PLAINTIFFS' OPPOSITION TO THE C AGRICULTURE DEFENDANTS' MOTION TO DISMISS THE FAC**

(describing C Agriculture's plot "to publicly accuse Harmoni of a crime it did not commit unless Harmoni pays it $32 million."); *see also id.* ¶¶ 31, 128-30, 258. Indeed, the Letter went so far as to attach 17 photographs—all of them dark, grainy and fake—purporting to show this criminal conduct on Plaintiffs' part.  ECF No. 27-5.[1]  The letter, which was sent mere days before other members of the Enterprise submitted false information to request a review of Plaintiff Zhengzhou Harmoni by the DOC "with the intention of seeking millions of dollars from Plaintiffs in exchange for withdrawal of the request," FAC ¶¶ 249, 230, 270, has already caused significant harm to Plaintiffs.  As set forth in the FAC, and as Harmoni's Chief Financial Officer has attested, it has already damaged Plaintiffs' relationship with Christopher Ranch (who received the letter) and other customers that belong to industry organizations in which Christopher Ranch participates.  FAC ¶¶ 31, 255, 257; ECF No. 27-7 ¶¶ 27-31. And it has also harmed Plaintiffs' unique reputation for honesty and integrity in a business where deceit and disingenuousness is, all too sadly, the norm and the expectation.  FAC ¶¶ 5-7, 9-11; ECF No. 27-7 ¶¶ 19-20, 30-31.

These allegations, all of which are extensively detailed in the FAC and must be accepted as true for purposes of this motion, are more than sufficient to support each and every one of the state and federal claims brought by Plaintiffs.  Faced with this fact, Defendants have now stirred up a hodgepodge of arguments that are either facially frivolous or rely on a gross misreading of the relevant case law to support a theory that the illegal conduct described in the FAC is somehow legally insulated by either the *Noerr-Pennington* doctrine or a so-called "litigation privilege."  This latter argument—which rests on the premise that the Letter was an everyday, run of the mill "settlement demand" and that the C Agriculture Defendants were actively contemplating litigation—is particularly egregious given the facts as alleged in the

---

[1] Defendants repeatedly attach and reference the letter *without* these exhibits.  The letter, with all of the exhibits, was attached to Plaintiffs' Motion for Preliminary Injunction, as Exhibit 17 to the Declaration of George E. Mastoris in support of that motion.  *See* ECF No. 27-5.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

FAC.  *See, e.g.*, FAC ¶¶ 249-57.  After all, it has been five months since that demand was met with an emphatic "no."  *Id*. ¶¶ 249, 257.  Not only has there been no lawsuit filed, but both C Agriculture and the lawyer who wrote the letter—who does not appear to have any experience litigating the sort of antitrust claims he was "threatening" to bring—went completely silent.  *Id.*[2]  Further, the defamatory assertions in the Letter—relating to Plaintiffs' purported use of prison labor in unsanitary conditions—would have nothing to do with any legitimate antitrust case and thus clearly are not subject to any litigation privilege.  More to the point, the FAC clearly alleges that "the letter was made solely for the purpose of defaming Harmoni and damaging its relationship with its customers, as well as for the purpose of extorting Harmoni, and did not serve as a necessary or useful step in any litigation process."  *Id*. ¶ 257.  Such factual allegations are more than sufficient to defeat a Motion to Dismiss.

## II.   <u>Legal Standard</u>

The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Plaintiffs need allege only "enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  "Only where a plaintiff has not 'nudged [their] claims across the line from conceivable to plausible,' is the complaint properly dismissed."  *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1112 (E.D. Cal. 2009) (citation omitted).  "In evaluating a motion to dismiss, a court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff."  *Valentini v. Shinseki*, 860 F. Supp. 2d 1079, 1089 (C.D. Cal. 2012).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

---

[2] *See* Plaintiffs' concurrently filed Request for Judicial Notice (attaching website biography of James J. DeCristofaro).

3

### III.  <u>Summary of the C Agriculture Defendants' Arguments</u>

The FAC alleges that the C Agriculture Defendants have been participating in the alleged criminal Enterprise by engaging in a pattern of racketeering activity, including extortion, making fraudulent statements regarding Plaintiffs' business intended to injure Plaintiffs' market position, and taking other unlawful actions designed to cripple Plaintiffs' relationships with its customers and ruin Plaintiffs' reputation in the industry. *See* FAC ¶¶ 1, 10-11, 31-32, 60, 114-117, 262-65.  The FAC sets forth these allegations in support of a claim that this conduct violates both the civil RICO statute, 18 U.S.C. § 1962(c), and numerous state laws.  In particular, Plaintiffs allege that the C Agriculture Defendants' most recent conduct in furtherance of the Enterprise's goals—sending a defamatory and extortive letter to Plaintiffs and their largest U.S. customer—constitutes unfair competition, trade libel, tortious interference with contractual relations, and intentional interference with prospective economic advantage.  FAC ¶¶ 259-307.

The C Agriculture Defendants' Motion to Dismiss claims that all of Plaintiffs' claims are precluded by a "litigation privilege" because the demand letter (which Plaintiffs have alleged was extortive and defamatory) was a legitimate pre-litigation communication sent in good faith in connection with a prospective meritorious antitrust litigation.  Mot. at 6-8.  For similar reasons, the Motion argues that Plaintiffs' RICO claims against the C Agriculture Defendants are also protected by *Noerr-Pennington*, a doctrine that specifically does not apply where a communication was sent for the purpose of interfering with the plaintiff's business relations.  Mot. at 8-11.  The C Agriculture Defendants further contend that the FAC does not sufficiently allege their participation in the Enterprise, Mot. at 11-14, or certain other elements of Plaintiffs' state law claims.  *Id*. at 15-24.  As discussed in greater detail below, in making each of their arguments, the C Agriculture Defendants either invent "facts" intended to contradict Plaintiffs' allegations or focus myopically on a handful of FAC paragraphs while conveniently ignoring others that specifically allege the C

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

4

Agriculture Defendants' connection to, and participation in, the larger conspiracy and Enterprise to destroy Plaintiffs' business.

## IV. Plaintiffs Have Adequately Pled Facts Demonstrating that the "Litigation Privilege" Does Not Apply and Thus that the FAC Adequately States a Claim for Each of Counts I-VI

The C Agriculture Defendants' primary argument in support of their motion to dismiss each of the six counts in the FAC is that the Letter "falls squarely within the parameters of the litigation privilege." Mot. at 8. As an initial matter, this is a clear factual question inappropriate for resolution on a Motion to Dismiss. For purposes of the instant motion, it is sufficient that the FAC alleges facts plausibly showing that the Letter was not a bona fide settlement communication, but rather an extortionate demand that Plaintiffs pay up or face the prospect of false, public accusations that they had committed a crime.

Courts have consistently held that the litigation privilege does not protect defamatory statements made in purported "pre-lawsuit" correspondence aimed at extracting extortionate settlement demands. *Haneline Pac. Properties, LLC v. May*, 167 Cal. App. 4th 311, 319-20 (2008) (coercive tactics in pre-litigation letter not protected by the litigation privilege where the litigation proposal was not made in serious consideration of litigation); *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 36 (1997) (threat to file a lawsuit does not trigger litigation privilege if its purpose is to extract a settlement). Indeed, pre-litigation communications are privileged *only* if they are made in relation to a proceeding that "is contemplated in good faith and under serious consideration." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1378 (1999) (citations omitted). The litigation privilege does not apply "when the person publishing an injurious falsehood is not seriously considering litigation. In such a case, the publication has no 'connection or logical relation' to an action and is not made 'to achieve the objects' of any litigation." *Fuhrman v. Cal. Satellite Sys.*, 179 Cal. App. 3d 408, 422 n.5 (1986), *overruled on other grounds by Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990); *see id.* ("No public

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

5

policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation."). Stated another way, the litigation privilege "does not prop the barn door wide open for any and every sort of prelitigation charge or innuendo." *Nguyen v. Proton Tech. Corp.*, 69 Cal. App. 4th 140, 150 (1999).

Here, Defendants are attempting to remove the barn door entirely. As the FAC plausibly sets forth, "C Agriculture had no good faith intention to actually file a lawsuit against Harmoni and/or Christopher Ranch, and, in fact, did not." *Id*. ¶ 257. Rather, "[t]he letter was made solely for the purpose of defaming Harmoni and damaging its relationship with its customers, as well as for the purpose of extorting Harmoni, and did not serve as a necessary or useful step in any litigation process." *Id*. In particular, and as described in detail in the FAC, C Agriculture attempted to damage Plaintiffs' business by falsely telling Plaintiffs' largest customer that Plaintiffs had engaged in the use of prison labor and that any continued dealing with Plaintiffs could give rise to antitrust liability. FAC ¶ 31, 251. It further threatened to widely publicize those false allegations unless Plaintiffs forked over $32 million within five business days. FAC ¶ 256. That is extortion, plain and simple.

Moreover, it bears noting that (i) the allegations that Plaintiffs employed prison labor would have nothing to do with any legitimate antitrust claims, (ii) the Letter was sent by an attorney whose public website—of which this Court may take judicial notice—suggests strongly that he possessed no experience relevant to the antitrust claims he threatened to bring, and (iii) in the nearly five months since the Letter was sent, C Agriculture has not commenced a litigation despite Plaintiffs' unequivocal rejection of its demand. *See* FAC ¶ 257; Plaintiffs' concurrently filed Request for Judicial Notice. This was not a communication made in connection with a lawsuit that was "contemplated in good faith and under serious consideration." *Eisenberg*, 74 Cal. App. 4th at 1378. Rather, as Plaintiffs allege, the Letter served as part of the Defendants' overall conspiracy to extort and destroy Plaintiffs' competitive position in the Chinese garlic business in the United States and to allow members of the CGA to

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

6

1  wrongfully obtain Plaintiffs' market share by ruining Plaintiffs financially and

2  destroying their relationships with important customers like Christopher Ranch.  *Id*. ¶

3  256, 258; *see also id*. ¶¶ 11, 31.

4          Taken as true (as they must be for purposes of this motion), these allegations

5  plausibly show that C Agriculture's "demand letter" was nothing more than a sham

6  aimed at extorting money from Plaintiffs and damaging their business and reputation

7  with their customers.  FAC ¶¶ 247-68, 11, 31.  At the very least, these allegations

8  create an issue of fact which is appropriately settled through the discovery process and

9  a determination on the merits, not at the pleading stage.  *See, e.g.*, *Brown v. Wireless*

10  *Networks, Inc.*, 2008 WL 1859990, at *4 (N.D. Cal. Apr. 24, 2008) (denying motion

11  to dismiss defamation claim based on California litigation privilege because it was not

12  clear that the "the letter in its entirety functioned as a 'necessary or useful step in the

13  litigation process' and served the purposes of that process"); *Bylin Heating Sys., Inc.*

14  *v. M & M Gutters, LLC*, 2008 WL 744706, at *5 (E.D. Cal. Mar. 18, 2008) (denying

15  motion to dismiss claims based on pre-litigation communications because "[t]here

16  remains a factual question . . . as to whether Bylin was seriously and in good faith

17  contemplating litigation when it made the statements *prior* to the initiation of the

18  action"); *Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.*, 2007 WL

19  1394427, at *11 (N.D. Cal. May 10, 2007) (same).

20          None of the cases cited by the C Agriculture Defendants are to the contrary.

21  Mot. at 6-8.  In *Adobe Sys. Inc. v. Coffee Cup Partners, Inc*., 2012 WL 3877783, at

22  *12 (N.D. Cal. Sept. 6, 2012), the plaintiff sent letters to the defendant threatening to

23  file a lawsuit for patent infringement, and then the plaintiff *did* file the lawsuit.  In

24  light of that fact, the court concluded that the plaintiff was contemplating litigation

25  seriously and in good faith.  *Id.*  Again, here, by contrast, the C Agriculture

26  Defendants never filed any antitrust (or other) lawsuit against Plaintiffs for

27  anticompetitive conduct (or anything else), despite the passage of five months since

28  their demand letter.  FAC ¶ 249, 257.  Nor can they explain how the use of prison

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

7

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   labor would have any relationship to any legitimate antitrust claim.  FAC ¶¶ 250-51,

2   256.  And in both *Lerette* and *UMG*, the court did not even address the question of

3   whether the plaintiff was seriously and in good faith contemplating litigation when it

4   made the statements.  *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F.

5   Supp. 3d 1092 (C.D. Cal. 2015).[3]

6         Indeed, one of the decisions relied upon by the C Agriculture Defendants

7   underscores precisely why the instant motion must be *denied*.  In *Visto Corp. v.*

8   *Sproqit Techs., Inc.*, Defendant Sproqit counterclaimed against Plaintiff Visto for

9   intentional interference with prospective economic advantage and defamation based

10  on a letter Visto had sent to Sproqit.  360 F. Supp. 2d 1064, 1068 (N.D. Cal. 2005).

11  According to Sproqit, the letter threatened that if Sproqit did not agree to an

12  acquisition, Visto would sue Sproqit for patent infringement.  *Id.*  Sproqit alleged that

13  Visto's allegation of patent infringement was baseless, and was designed to facilitate

14  Visto's desired acquisition and interfere with Sproqit's business relationships with

15  prospective customers.  *Id.*  In denying Visto's motion to dismiss the counterclaims,

16  the court relied upon the reasoning in *Eisenberg*:

17         [I]t is not the mere *threat* of litigation that brings the privilege into play,

18         but rather the actual good faith contemplation of an imminent, impending

19         resort to the judicial system for the purposes of resolving a dispute.

20         "[B]ecause the privilege does not attach prior to the actual filing of a

21         lawsuit unless and until litigation is seriously proposed *in good faith* for

22         the purpose of resolving the dispute, even a threat to commence litigation

23         will be insufficient to trigger application of the privilege if it is actually

24  _____
[3] The C Agriculture Defendants also argue that any doubt about whether the litigation
25  privilege applies should be resolved in favor of applying it.  Mot. at 8.  In the case
    cited in support of this proposition, however, it is clear that the court made this
26  statement in the context of rejecting the plaintiff's attempt to carve out a *categorical
    exception* to the privilege for claims brought by public entities.  *People ex rel.*
27  *Gallegos v. Pac. Lumber Co.*, 158 Cal. App. 4th 950, 963 (2008), as modified (Feb. 1,
    2008).  The case does not stand for the proposition that courts should resolve factual
28  disputes regarding the applicability of the litigation privilege against the plaintiff on a
    motion to dismiss.  Indeed, any such rule would fly in the face of the well-established
    standards governing motions to dismiss under Rule 12(b)(6).  *See id.*

made as a means of inducing settlement of a claim and not in good faith contemplation of a lawsuit. ***This is a question of fact that must be determined before the privilege is applied.***"

*Id.* at 1070 (quoting *Eisenberg*, 74 Cal. App. 4th at 1379-80) (emphasis altered).  The same is true here.  In short, Defendants have failed to carry their heavy burden of showing that a purported litigation privilege operates to bar Plaintiffs' claims at the pleading stage.

## V.   Plaintiffs Have Properly Alleged a RICO Claim Against Defendants

### A.   The RICO Cause of Action Is Not Barred by the *Noerr-Pennington* Doctrine

As set forth in detail above, Plaintiffs allege that the C Agriculture Defendants' extortive demand letter was sent as part of the broader conspiracy and Enterprise among all of the Defendants to extort and destroy Plaintiffs and obtain Plaintiffs' share of the market, in violation of the civil RICO laws.  *Id.* ¶¶ 1, 10-11, 31-32, 60, 262-65.  The C Agriculture Defendants claim that this demand letter is immunized from RICO claims by the *Noerr-Pennington* doctrine.  Mot. at 8-10.  As the case law relied upon by the C Agriculture Defendants makes clear, however, while the *Noerr-Pennington* doctrine may provide immunity to certain *bona fide* efforts to obtain or influence judicial actions, it does not apply where the petitioner's purpose is to interfere with the business relationships of a competitor.  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006) (recognizing an exception to *Noerr-Pennington* immunity where the conduct, "although 'ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor'"); *Kottle v. NW. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) (same).

The determination of whether the sham exception applies is a ***question of fact***, and thus dismissal is inappropriate where, as here, Plaintiffs have alleged facts that

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

9

plausibly show that the pre-litigation letter was objectively and subjectively baseless and directed at extorting money and harming Plaintiffs' business relationships and reputation. FAC ¶¶ 247-58; *Clipper Exxpress v. Rocky Mountain Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982) ("Whether something is a genuine effort to influence governmental action, or a mere sham, is a question of fact."); *Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, 2012 WL 1669726, at *5 (C.D. Cal. May 14, 2012) ("At the motion to dismiss stage, the Court need not conclude whether Defendants' letters were a sham. Instead, the Court 'must decide only *whether Plaintiff has properly pleaded* that the conduct was a sham…. .") (internal citations omitted) (emphasis added). This is particularly true because the key defamatory allegation at issue—the use of prison labor—has no plausible connection to any objectively reasonable antitrust claim and thus cannot be viewed as being related to any legitimate litigation process.

Here, Plaintiffs have alleged that: (1) the C Agriculture Defendants' allegations of antitrust violations and Plaintiffs' use of prison labor are both legally and factually baseless as an objective and subjective matter; and (2) the letter was not intended to "serve as a necessary or useful step in any litigation process," but rather was sent with the improper motive of furthering the RICO enterprise's scheme by extorting, defaming and disparaging Plaintiffs and interfering with their business relationships. FAC ¶¶ 1, 10-11, 31-32, 247-58. These allegations are more than sufficient at the pleading stage to preclude any dismissal on *Noerr-Pennington* grounds. *See Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1038 (C.D. Cal. 2007) (where the defendant counterclaimed that the plaintiff's patent infringement suit was legally baseless and brought with the intention of interfering with the defendant's customer relationships, the court held that "Venali has sufficiently pled the requisite elements of sham litigation to defeat *Noerr Pennington* protection," and therefore "[could not] conclude that Venali has failed to state an antitrust claim on this basis").

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

10

Further, the sham exception is particularly applicable where, as here, Plaintiffs allege that Defendants had no intention of actually filing a lawsuit.  *See* FAC ¶ 257.  In contrast, in each of the cases cited by the C Agriculture Defendants where the pre-litigation letter was found to not be a sham, litigation *was* actually initiated and/or settlements were reached on the claims.  Mot. at 8-11; *Sosa*, 437 F.3d at 925-26 (recipients of demand letters reached settlements); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183 (9th Cir. 2005) (claims based on discovery misconduct in connection with ongoing lawsuit); *Prof'l Real Estate Investors, Inc.*, 508 U.S. at 52 (purportedly baseless copyright infringement action initiated against petitioners).  In this case, of course, Plaintiffs' rejection of the demand was not met by a lawsuit, but by complete silence—confirming the allegations in the FAC that the demand was simply a sham aimed at harming Plaintiffs.  FAC ¶ 257.

Perhaps unsurprisingly, the C Agriculture Defendants anticipate the suggestion that the Letter was a sham and argue that the exception should not apply here.  Specifically, they contend that the FAC's allegation that C Agriculture "level[ed] a number of baseless claims against Harmoni and demands an immediate and extortionate payment of $32 million in exchange for its promise not to levy these false accusations more publicly and irreparably damage Harmoni's reputation and relationships with its customers" is somehow insufficient.  Mot. at 10-11; FAC ¶ 31.  As an initial matter, this paragraph, which clearly alleges both the falsity of the claims and C Agriculture's wrongful motive, is by itself enough to satisfy the sham exception at the pleading stage.  *Prime Partners*, 2012 WL 1669726, at *5-6.  Moreover, the C Agriculture Defendants ignore the FAC's detailed allegations that the Letter was part of a broader conspiracy, in concert with the other Defendants, to destroy Plaintiffs and their competitive position in the U.S. garlic market, and to allow members of the CGA to capture Plaintiffs' market share.  *Id.* ¶¶ 11, 10-11, 31-32, 60, 262-63, 265.  These facts, which must be taken as true, clearly preclude any application of the *Noerr-Pennington* doctrine.  *See Otter Tail Power Co. v. United States*, 410 U.S. 366-67

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1  (1973) (sham exception to *Noerr-Pennington* doctrine may apply where evidence

2  indicated that litigation was used as part of larger plan to control market and interfere

3  with potential customer's business without any interest in outcome of lawsuit itself).

### B. Plaintiffs Have Adequately Alleged a Viable RICO Violation Against the C Agriculture Defendants

Section 1962(c) of RICO prohibits any person associated with an enterprise

from conducting or participating, directly or indirectly, in the conduct of the

enterprise's affairs through a pattern of racketeering activity.  As alleged in the FAC,

the C Agriculture Defendants have engaged in an ongoing pattern of wire and mail

fraud and extortion perpetrated in connection with the CGA Enterprise's scheme to

economically cripple, defame, and injure Plaintiffs.  FAC ¶ 1, 10-11, 32, 60, 262, 265.

### 1. Existence of an Ongoing Enterprise

A RICO enterprise exists where the Defendants are associated together for a

common purpose of engaging in a course of conduct. *Odom v. Microsoft Corp.*, 486

F.3d 541, 552 (9th Cir. 2007).  The Ninth Circuit has held that an organization

constituting an enterprise may be established by no more than the sum of the predicate

acts. *See id.* at 551 ("RICO does not require any particular organizational structure,

separate or otherwise.").  Plaintiffs have sufficiently alleged that the C Agriculture

Defendants were part of a RICO Enterprise established for the common goal "to injure

Plaintiffs and improperly gain share in the U.S. market for fresh garlic."  FAC ¶ 32.

The C Agriculture Defendants claim Plaintiffs have not sufficiently alleged how

the C Agriculture Defendants participated in the enterprise "or otherwise functioned

as a 'continuing unit' with a 'common goal.'"  Mot. at 11-12.  In doing so, the C

Agriculture Defendants focus on two paragraphs of the FAC describing the false

claims made in the extortive demand letter, *id.* at 11; FAC ¶¶ 253-54, and ignore the

many other paragraphs of the FAC that set forth detailed factual allegations plausibly

explaining how the C Agriculture Defendants assisted the Enterprise with its illegal

goals and associated themselves with other members of the Enterprise in furtherance

of a common purpose.  Reviewing the FAC as a whole, as the Court must on a

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

12

12(b)(6) motion, there is no doubt that Plaintiffs have met their burden at the pleading stage.  Specifically, Plaintiffs allege:

- "C Agriculture is [a distributor] of garlic in the United States working in conjunction with the Chinese Garlic Association" and has "purchased a significant percentage of its garlic supply from [CGA-affiliated companies]."  FAC ¶¶ 128-29, 248.
- "C Agriculture functioned as a distributor and reseller of garlic exported by [CGA member companies]." *Id*. ¶ 129.
- "[E]ach Defendant acted within the course and scope of such conspiracy or agency and with the permission, consent, approval, and ramification of each of the other Defendants.  At all times relevant, each of the Defendants acted in concert with each of the other Defendants towards a common goal." *Id.* ¶ 60.
- "C Agriculture's principals and management, Defendants Wen and Xu, played an active role in the subject defamation and attempted extortion. Both have close business ties to Bai and Ye, and have employed Hume as counsel in prior matters." *Id.* ¶ 258; *see also id.* ¶ 60, 130.
- The C Agriculture Defendants have "close ties to [members of the CGA Enterprise]" and have "injured Harmoni's reputation and tortiously interfered with its contractual relations by sending a false and defamatory letter…" *Id.* ¶ 31; *see also id.* ¶¶ 247-58.
- The Letter was sent just a few days before other members of the Enterprise commenced a fraudulent review request of Zhengzhou Harmoni before the DOC.  *Id.* ¶ 249, 270.

Such detailed allegations which, taken as true, plausibly state a claim that the Letter was not a "bona fide petition," but rather a sham meant to interfere with Plaintiffs' business relationships and extract money from Plaintiffs, are plainly sufficient to survive a motion to dismiss. *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d

13

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

915, 941 (N.D. Cal. 2013) (denying motion to dismiss where plaintiffs explicitly alleged that enterprise members "devised a scheme to defraud borrowers and obtain money from them by means of false pretenses."); *see also Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008).   Furthermore, Plaintiffs have alleged facts that plausibly show that the Enterprise is ongoing.  FAC ¶¶ 262, 268. The only case Defendants cite in this regard is inapplicable here.  *See Bergman v. Bank of Am.*, 2013 WL 5863057, at *30 (N.D. Cal. 2013) (finding no ongoing enterprise organization where Plaintiffs generally alleged a "scheme to defraud everyone").

### 2.   Pattern of Racketeering Activity Involving the C Agriculture Defendants

Plaintiffs have also adequately alleged facts plausibly to show a pattern of racketeering activity of the Enterprise.  As the C Agriculture Defendants concede, such a pattern exists where two acts of racketeering occur within ten years of each other and there is a relationship between the predicate acts.  *H.J. Inc. v. Nw. Bell Tel. Co.,* 429 U.S. 229, 237 (1989).  Here, Plaintiffs have alleged at least 15 related predicate acts spanning more than two years.  As the FAC puts it, "Defendants, and each of them, violated RICO when they conducted or participated in the affairs of Defendants' Enterprise through a pattern of racketeering activity, by making fraudulent statements regarding Plaintiffs' business intended to injure Plaintiffs' market position, and through other fraudulent acts and unfair and illegal business practices."  FAC ¶¶ 265, 268, 270; *see also id.* ¶ 1, 10-11, 31-32, 60, 258, 262.

Faced with these allegations, the C Agriculture Defendants fall back on the assertion that the demand letter does "not in any way relate to the other racketeering predicates alleged against the remaining Defendants."  Mot. at 13.  But this, too, is explicitly contradicted by the factual allegations, which must be accepted as true, in a number of paragraphs in the FAC.  Indeed, the FAC expressly alleges that fraudulent statements from the letter are closely related to the numerous other predicate acts

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

14

perpetrated in furtherance of the Enterprise's scheme as the Defendants are all part of one organization working to effect the same unlawful scheme.  FAC ¶¶ 31, 127-30, 258 ("C Agriculture's principals and management, Defendants Wen and Xu, played an active role in the subject defamation and attempted extortion.  Both have close business ties to Bai and Ye, and have employed Hume as counsel in prior matters.").  The FAC also makes clear that each of the Enterprise's members has acted together in furtherance of Defendants' scheme, namely to extort and cause Plaintiffs economic injury and harm to their business reputation, and to allow members of the CGA to take Plaintiffs' market position.  FAC ¶¶ 116-17.  Plaintiffs further allege that the C Agriculture Defendants' letter was sent just days prior to Defendants Joey C. Montoya, Stanley Crawford, and Avrum Katz's improper submission of fraudulent materials in support of a review of Zhengzhou Harmoni before the DOC in furtherance of the organized plan to extort money from and injure Plaintiffs.  FAC ¶ 270.  Since the FAC was filed, the Letter itself has been submitted by one of the Defendants to the DOC, making the connection to the overall Enterprise even more explicit.[4]

The one case Defendants cite in support of their position is inapposite.  Mot. at 13; *Gamboa v. Trustee Corps.*, 2009 WL 656285 (N.D. Cal. Mar. 12, 2009).  In *Gamboa*, Plaintiffs brought a RICO claim against only two defendants attempting to foreclose on their property and failed to "describe any other attempted foreclosure or loan collection activities, nor … a continuing relationship between [each defendant]." *Id.* at *5.  Here, to the contrary, Plaintiffs have identified at least *fifteen* specific acts in

---

[4] Interestingly, after Defendants' FAC was filed, Defendant Robert T. Hume ("Hume") submitted C Agriculture's false and defamatory letter to the DOC on behalf of Defendant QTF – a client of his and one of the entities intimately involved in the conspiracy to destroy Plaintiffs' business and reputation in the United States.  The C Agriculture Defendants' suggestion that the demand letter is "unrelated" to the Enterprise's activity is somewhat disingenuous, to say the least.  *See* Plaintiffs' Request for Judicial Notice attaching Defendant Hume's March 9 letter to the DOC as Exhibit 2.  *See* Plaintiffs' Request for Judicial Notice attaching Defendant Hume's March 9 letter to the DOC as Exhibit 2.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

furtherance of the enterprise's scheme and have laid out in detail the relationship of each Defendant to the Enterprise, which continues to this day.  FAC ¶¶ 270, 114-133.

Furthermore, as shown in Plaintiffs' Motion for Preliminary Injunction, the C Agriculture Defendants' actions present a real and immediate threat of continued unlawful acts against Plaintiffs and resulting injury, establishing a pattern of racketeering activity in and of itself.  ECF No. 27 at 13-14; *Seikaly & Stewart, P.C. v. Fairley*, 18 F. Supp. 3d 989, 995 (D. Ariz. 2014) ("The requisite continuity may be shown through either a close-ended substantial period of past conduct or an open-ended pattern of conduct with a threat of repetition."); *see also Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527, 1529-30 (9th Cir. 1995).  In *Seikaly*, the court found that Plaintiffs alleged a pattern of racketeering where "Defendants continued to make fraudulent misrepresentations in order to entice Plaintiffs to renew its marketing contract."  18 F. Supp. 3d at 995.  Similarly, Plaintiffs allege that the C Agriculture Defendants are participating in an ongoing practice of making fraudulent statements intended to extort and injure Plaintiffs and their business.  FAC ¶¶ 262, 268.

### 3.    Existence of Proximate Injury Caused by the RICO Violation

Plaintiffs have also adequately alleged facts plausibly to show that the C Agriculture Defendants "have directly and proximately caused Plaintiffs to be injured in their business and property, including in an amount of lost profits to be determined at trial.  These injuries were proximately caused by Defendants' actions which were targeted at Plaintiffs and no one else."  FAC ¶ 274.  Plaintiffs allege that the C Agriculture Defendants have "injured Harmoni's reputation and tortiously interfered with its contractual relations by sending a false and defamatory letter to one of Harmoni's largest U.S. customers," and that the sending of this letter harmed Plaintiffs' business reputation and caused them (and will continue to cause them) to lose customers, sales, and profits.  FAC ¶ 31; *see also id.* ¶¶ 247-58, 274   The C Agriculture Defendants' claim that Plaintiffs' allegations fail plausibly to establish a concrete financial loss attributable to their conduct is meritless.  *See* Mot. at 13-14.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

16

Courts have found similar allegations of harm to be more than sufficient at the pleading stage.  *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005) (district court erred in determining that Plaintiffs' allegations failed to allege a cognizable RICO injury where Plaintiffs alleged "DuPont's fraud and racketeering activities further damage[d plaintiffs'] business and property interests when [plaintiffs] were duped into accepting low settlements" and plaintiffs thus suffered both fraudulent inducement and financial loss).

Case law cited by the C Agriculture Defendants is not to the contrary.  Mot. at 13-14; *Heflebower v. JPMorgan Chase Bank, NA*, No. 12-cv-1671, 2014 WL 897352, at *7 (E.D. Cal. Mar. 6, 2014) (personal injuries, specifically those suffered by emotional distress, are not compensable under RICO); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975, 976 (9th Cir. 2008) (governmental expenditures alone are insufficient to qualify as injury to property).  And in *Anza v. Ideal Steel Supply Corp.*, the plaintiffs claimed that they were harmed by the defendants' acts that defrauded the New York tax authority.  547 U.S. 451, 453 (2006).  The Court held that the injury to the plaintiffs, the defendants' competitors, was not direct because the cause of the plaintiffs' harm was a set of actions entirely distinct from the alleged RICO violation.  *Id.* at 458.  The Court further stated that the defendants could have lowered prices for a variety of reasons.  *Id.*  Here, the alleged damage to Plaintiffs' business and property is a direct result of the extortive letter—which was directed for the sole purpose of injuring Plaintiffs.  FAC ¶ 252-57, 274.  The set of actions (sending a false letter to defame and disparage Plaintiffs) is thus intimately associated with the alleged RICO violation (mail and wire fraud and extortion).  *Id.*

Accordingly, Plaintiffs have adequately alleged a RICO violation against the C Agriculture Defendants and dismissal would be inappropriate.

## VI.   Plaintiffs' State Law Claims Are Adequately Alleged

### A.   Plaintiffs Have Adequately Alleged an Unfair Competition Violation Under Each of the Three Prongs of the Statute

17

California's Unfair Competition Law ("UCL") "covers a wide range of conduct. It embraces anything that can be properly called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003).  Where the plaintiff establishes unfair competition under the UCL, the plaintiff also establishes a claim for California common law unfair competition.  *See Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 943 (C.D. Cal. 1996) ("the Court sees no difference between statutory unfair competition and common law unfair competition" and holding that the validity of plaintiff's UCL claim rendered the common law unfair competition likewise valid). Accordingly, Plaintiffs address their claims for common law and statutory unfair competition together.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200; *see also Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.").  Plaintiffs have asserted claims under each of these separate and independent prongs.  FAC ¶¶ 276-81.  The C Agriculture Defendants argue that Plaintiffs fail to allege a claim for unfair competition under the UCL, but appear to focus only on the "unfair" prong.  Mot. at 15-17.

Plaintiffs have adequately alleged a violation under *all three* prongs (only one of which is necessary to sustain this claim).  First, under the UCL's "unlawful" practices prong, a business practice is "unlawful" if it is "forbidden by any law." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc*., 171 Cal. App. 4th 939, 961 (2009) (citation omitted); *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994) (a claim under the UCL's "unlawful" prong may be premised upon a violation of almost any federal, state, or local law).  "By proscribing 'any unlawful' business practice, '[the UCL] 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech,*

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

18

20 Cal. 4th at 180; *accord Smith v. State Farm Mut. Auto. Ins. Co.,* 93 Cal. App. 4th 700, 717-18 (2001) (UCL "unlawful" prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law").  Here, Plaintiffs' UCL "unlawful" prong claim is predicated on the underlying RICO and trade libel claims.  FAC ¶ 278.  Because, as discussed in more detail in Section V, *supra,*  and Section VI.B, *infra*, Plaintiffs have adequately alleged their RICO and trade libel claims against Defendants, Plaintiffs have also sufficiently alleged a violation of the UCL's "unlawful" prong.  *Cel-Tech*, 20 Cal. 4th at 180.

Second, a business practice may be "unfair" in violation of the UCL even if the practice does not violate any law.  *K.C. Multimedia*, 171 Cal. App. 4th at 961. "Unfair" in this context encompasses a wide variety of conduct.  *AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal. App. 4th 579, 587 (2001); *People ex rel. Mosk v Nat'l Research Co. of Cal.,* 201 Cal. App. 2d 765, 772 (1962) ("[I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited …, since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery").  Here, Plaintiffs have alleged that C Agriculture made false and defamatory statements contained in the Letter in an attempt to interfere with Plaintiffs' business and customer contracts and in order to extort and unfairly compete with Plaintiffs.  FAC ¶¶ 254-257.  Such statements, designed to injure another's business, constitute the very essence of "unfair" conduct under the UCL and California common law.  *See, e.g., Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at *1 (E.D. Cal. Aug. 11, 2009) (denying motion to dismiss where Plaintiff based its unfair competition claim upon allegedly false and misleading statements).  Thus, Defendants' conduct falls well within the "unfair" prong of the UCL.[5]

---

[5] The C Agriculture Defendants' sole reliance on the formulation of the "unfair" prong in *Cel-Tech* is misplaced. Mot. at 15-17.  The so-called "tethering" test set forth in that case is only one of several tests that courts use to determine whether conduct is "unfair" under the UCL.  *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).  As set forth in this section, courts routinely find that conduct that may not necessarily violate the antitrust laws is nevertheless "unfair."  *See e.g., iYogi Holding Pvt Ltd. v. Secure Remote Support, Inc.,* C-11-0592 CW, 2011 WL 6291793, at *13-14 (N.D. Cal. Oct 25, 2011).

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Third, to state a cause of action under the "fraudulent" prong of the UCL, "it is necessary only to show members of the public *are likely to be deceived*; allegations of actual deception and reasonable reliance are unnecessary." *Gruen v. Edfund*, 2009 WL 2136785, at *5 (N.D. Cal. July 15, 2009) (emphasis added). "'Fraudulent' as used in § 17200 'does *not* refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived.'" *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006); *see also Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1469 (2009) ("[T]o state a claim under the [UCL] one need not plead and prove the elements of a tort. Instead, one need only show that members of the public are likely to be deceived."). "This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). Here, Plaintiffs have alleged that the statements made by the C Agriculture Defendants about Plaintiffs' use of prison labor are likely to deceive the public, as the statements were false and have already been disseminated to one of Plaintiffs' main customers, with the threat to republish to the world. *See* FAC ¶¶ 31, 252. Nothing more is required, and thus Plaintiffs have adequately alleged a violation of the UCL's "fraud" prong.

The C Agriculture Defendants are plainly wrong in their assertion that the "singular act" of the letter sent at their direction is not actionable as unfair competition. *See* Mot. at 16. Indeed, "[a] complaint based on an unfair business practice may be predicated on a single act; the statute does not require a pattern of unlawful conduct." *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1122 (E.D. Cal. 2009) (citing *United Farm Workers of Am., AFL-CIO v. Dutra Farms*, 83 Cal. App. 4th 1146, 1163 (2000)). Moreover, "[a]n act may violate the UCL even if the unlawful practice affects only one victim." *Blanks v. Shaw*, 171 Cal. App. 4th 336, 363-64 (2009). And, in any event, as discussed in more detail above, the C

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

20

Agriculture Defendants' conduct does not fall within the protections of the litigation privilege. *See* Section IV, *supra*. Therefore, the C Agriculture Defendants cannot immunize themselves from UCL liability by invoking the safe harbor doctrine based on this privilege. Accordingly, the Court should deny the C Agriculture Defendants' motion to dismiss Plaintiffs' unfair competition claims.[6]

### B.    Plaintiffs' Allegations Are Sufficient to State a Trade Libel Claim

Plaintiffs have adequately pled a claim for trade libel, as they have alleged that the C Agriculture Defendants published or caused to be published demonstrably false statements that defame or disparage Plaintiffs (*i.e.*, that Plaintiffs use prison labor to process garlic), and that these statements were disseminated to Plaintiffs' largest customer, Christopher Ranch. FAC ¶¶ 247-58. This statement is demonstrably false and therefore constitutes trade libel. *Oliver & Tate Enters., Inc. v. Founds. Worldwide, Inc.*, 2013 WL 4446827, at *7-8 (C.D. Cal. June 18, 2013) (disparaging letter sent to plaintiff's customer constituted trade libel).

The C Agriculture Defendants do not argue that Plaintiffs have not pled the substantive elements of this claim, but assert only that Plaintiffs have failed to allege special damages. Mot. at 19-20. However, Plaintiffs in this case need not plead special damages because Plaintiffs have alleged trade libel *per se*, *i.e.*, a statement in which the defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts. *Barnes-Hind, Inc. v. Super. Ct.*, 181 Cal. App. 3d 377, 384-85 (1986) (libel *per se* does not require the plaintiff to plead and prove special damages). "Perhaps the clearest example of libel per se is an

---

[6] The C Agriculture Defendants also request that the Court "strike" Plaintiffs' request for certain relief under their statutory unfair competition claim because only injunctive relief and restitution is available under the UCL. Mot. at 17-18. As a preliminary matter, the paragraph they seek to strike is located in Plaintiffs' First Claim for Relief for RICO Violations and lists a number of fraudulent statements made in furtherance of the Enterprise. FAC ¶ 270. Even giving the C Agriculture Defendants the benefit of the doubt, Plaintiffs *have* requested both injunctive and restitutionary relief under the UCL and do not request attorney's fees for this particular claim. *Id.* ¶ 279 ("By virtue of the acts and omissions of Defendants, they have engaged in fraudulent, unlawful, and unfair conduct that constitutes unfair competition … thereby entitling Plaintiffs to injunctive and restitutionary relief."). Therefore, the motion to strike has no merit.

21

accusation of crime. The courts have manifested liberality, at the pleading stage, in finding libel per se." *Id.* at 385. Plaintiffs allege that the C Agriculture Defendants accused Plaintiffs of the crime of using prison labor to process garlic. FAC ¶¶ 251, 254, 256. U.S. law prohibits the importation of goods produced "wholly or in part in any foreign country by convict labor or/and forced labor or/and indentured labor under penal sanctions." Tariff Act of 1930, 19 U.S.C. § 1307. The libelous and disparaging nature of the C Agriculture Defendants' statements regarding Harmoni's business practices is apparent on its face, and thus constitutes a clear instance of trade libel *per se*. FAC ¶¶ 251, 254, 256. As such, Plaintiffs need not plead special damages.

Even if Plaintiffs were required to plead special damages, they have done so and thus adequately stated a claim for ordinary trade libel. *Id.* ¶¶ 290-91. Under California law, a plaintiff is not necessarily required to allege a specific dollar amount to adequately plead a claim for trade libel. For example, in *Franklin Fueling,* the court held that the plaintiff had sufficiently pled special damages by claiming that it had suffered lost sales as evidenced by lost market share due to the defendant's dissemination of false materials. 2009 WL 2462505, at *6. Here, Plaintiffs have alleged that C Agriculture's letter contained false statements made to others in writing that disparaged its business. FAC ¶¶ 31, 249-258. Plaintiffs have alleged that these false statements have induced others not to deal with them and that they have suffered damages as a result. *Id.* ¶¶ 289-290. This is sufficient at the pleading stage.[7]

### C. Plaintiffs Have Adequately Alleged a Claim for Tortious Interference With Contractual Relations

The elements for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this

---

[7] Even if the Court finds that Plaintiffs' damages require further clarification, Plaintiffs should be permitted leave to amend their complaint. *See Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1049 (C.D. Cal. 1998) (it is proper to allow a party amend its complaint to plead special damages specifically in trade libel cases). In this regard, Plaintiffs have already submitted declarations further supporting these damages claims in support of their Preliminary Injunction Motion. ECF No. 27; 27-7.

PLAINTIFFS' OPPOSITION TO THE C AGRICULTURE DEFENDANTS' MOTION TO DISMISS THE FAC

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

contract, (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage. *Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013); *see also Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998). Plaintiffs allege that Harmoni has valid contractual relationships with all of its customers, including Christopher Ranch, FAC ¶ 293, and that the C Agriculture Defendants knew of these relationships and made false and inflammatory statements about Harmoni's purportedly *criminal* business practices directly to Christopher Ranch, one of its largest customers. FAC ¶¶ 31, 255. Finally, the FAC sets forth that the letter sent by C Agriculture "has injured Harmoni's reputation and tortuously interfered with its contractual relations," FAC ¶ 255, and that "Defendants intentionally submitted fraudulent statements to Harmoni's customers in an effort to encourage Harmoni's customers to breach their contracts with Harmoni," *id*. ¶ 294, and that, as a result, Plaintiffs "have sustained and will continue to sustain damages." *Id*. ¶ 297. Plaintiffs have adequately alleged their claim for intentional interference with contractual relations and the C Agriculture Defendants' motion should be denied.

The C Agriculture Defendants challenge only Plaintiffs' allegations of elements four and five, asserting that Plaintiffs have not adequately alleged an actual breach of the contractual relationship or resulting damage. Mot. at 21-22. They are wrong on both counts. As an initial matter, "California courts have made clear that 'interference' does not necessarily require evidence of any 'breach'" that actually occurred as a result of the interference. *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001). Indeed, courts have taken a much more lenient approach, stating that "in order to satisfy this element, Plaintiffs have to offer credible evidence that Defendants intentional actions resulted in greater expense or burden on the performance of its contractual obligations with third parties." *Id*. at 1205. Especially at the pleading stage, Plaintiffs have satisfied this burden. *See, e.g.*, FAC

23

¶¶ 31, 255-57.

Focusing on Plaintiffs' allegation that the C Agriculture Defendants intended to harm Plaintiffs, the C Agriculture Defendants next make the absurd argument that Plaintiffs fail to allege an "actual breach."  *See* Mot. at 22 ("Plaintiffs allege that 'Defendants ***intended to harm Plaintiffs*** financially.'  Accordingly, Plaintiffs have readily admitted in their complaint that there was neither an 'actual' breach nor a disruption of their contractual relationship with Christopher Ranch LLC") (citing FAC ¶ 285) (emphasis in Motion).  The C Agriculture Defendants' assertion that Plaintiffs' allegations of intent somehow equate to an admission that no breach or interference actually occurred is meritless.  Not only is intent an element of this cause of action, but it defies common sense to suggest that intending to do something precludes the intended result.

### D.   Plaintiffs' Allegations Set Forth a Claim for Intentional Interference With Prospective Economic Advantage

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege the following: (1) there was an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant knew of the relationship; (3) the defendant acted intentionally to disrupt the relationship; (4) the relationship was actually disrupted; and (5) the plaintiff was harmed economically, which was proximately caused by the defendant's acts.  *Korea Supply*, 29 Cal. 4th at 1153.  A plaintiff must also establish "a legally cognizable wrong apart from the alleged interference."  *Brunelle v. GE Capital Info. Tech. Solutions*, Inc., 328 F. App'x 381, 383 (9th Cir. 2009).  For the reasons set forth above in Section VI.C, Plaintiffs have adequately alleged each of these elements.

The C Agriculture Defendants claim that Plaintiffs have failed to allege an actual disruption of their contractual relationship with Christopher Ranch.  Mot at 23.  But this argument is belied by the pleadings, as Plaintiffs expressly allege that C

24

Agriculture sent a letter to Plaintiffs' largest customer defaming Plaintiffs with the assertion that it committed crimes of using prison labor in unsanitary conditions for processing its garlic, FAC ¶¶ 31, 247-58, and that these statements caused actual interference of Plaintiffs' relationship with Christopher Ranch. *Id.* ¶ 31, 294, 304. The C. Agriculture Defendants also contend that Plaintiffs "deficiently fail to identify any particular customers." Mot. at 23. Plaintiffs, of course, specifically identify Christopher Ranch as one of their customer who has been interfered with. *See* FAC ¶ 300 ("An economic relationship exists between Harmoni and its customers, *including Christopher Ranch*, containing probable future economic benefit or advantage to Harmoni.") (emphasis added).[8]

The C Agriculture Defendants also claim that Plaintiffs have failed to allege a separate wrongful act. Mot. at 24. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1159. Plaintiffs, however, have more than satisfied this requirement by alleging that the C. Agriculture Defendants' conduct constituted trade libel and unfair competition. *PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579, 602 (1996) (disapproved on other grounds) (recognizing that wrongful conduct under the tort of intentional interference with prospective economic advantage includes unlawful acts such as "defamation, trade libel, or trademark infringement.").

## VII.   Conclusion

For all of the foregoing reasons, the C Agriculture Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint should be denied in its entirety.

---

[8] Again, the C Agriculture Defendants assert that Plaintiffs' allegation that the interference was *intended* by the C Agriculture Defendants is inconsistent with or somehow forecloses an allegation of actual interference. Mot. at 23, fn. 9 (citing FAC ¶ 294 ("In Plaintiffs' claim for interference with prospective economic advantage they allege, as they do in their interference with contract claim, that "Defendants *intended* to interfere or disrupt the relationship between Harmoni and its customers . . . this allegation is wholly inconsistent with the other allegations . . .")) (emphasis in Motion). For the same reasons as discussed above, this argument is meritless.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

Dated:  March 28, 2016                WINSTON & STRAWN LLP


By:   /s/  *John E. Schreiber*
                 John E. Schreiber
                 Jeffrey L. Kessler
                 A. Paul Victor
                 George E. Mastoris

                 *Attorneys for Plaintiffs*
                 *HARMONI INTERNATIONAL*
                 *SPICE, INC. and ZHENGZHOU*
                 *HARMONI SPICE CO., LTD.*

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

26

**PLAINTIFFS' OPPOSITION TO THE C AGRICULTURE DEFENDANTS' MOTION TO DISMISS THE FAC**