*HELLER & EDWARDS*
Lawrence E. Heller, Esq. State Bar No. 69770
9454 Wilshire Blvd., Suite 500
Beverly Hills, California 90212
Tel:    (310) 550-8833
Fax:    (310) 858-6637

Attorneys for Defendants C. Agriculture Group Corp., Jin Xia Wen and Mingju Xu

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

HARMONI INTERNATIONAL SPICE, INC., a California corporation, and ZHENGZHOU HARMONI SPICE., LTD., a corporation,

                                    Plaintiff,

vs.

WENXUAN BAI, an individual, et, al.,

                                    Defendants.

Case No.:2:16-cv-00614-BRO (ASx)

**DEFENDANTS, C. AGRICULTURE GROUP CORP., JIN XIA WEN, AND MINGJU XU'S REPLY TO THE OPPOSITION FILED BY PLAINTIFFS TO DEFENDANTS' MOTION TO DISMISS PLAINTFFS' FIRST AMENDED COMPLAINT**

**[Concurrently filed with Supplemental Request to Take Judicial Notice]**

**Hearing Date:   May 9, 2016**
**Time:            1:30 p.m.**
**Courtroom:      14**

**Action Filed:   January 27, 2016**
**Trial Date:     None Set**

        Defendants, C. AGRICULTURE GROUP, Jin Xia Wen, and Mingju Xu, (collectively "C Agriculture"), submit hereby their joint Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss:

1
2

# **<u>TABLE OF CONTENTS</u>**

3
4

I.    PLAINTIFFS HAVE NOT MET THEIR BURDEN IN OPPOSING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT……………….……………………………………….……1

5
6
7
8

A.    Plaintiffs' Allegations Intentionally Misstate the Contents of C Agriculture's Letter and Draw Therefrom Unreasonable Inferences Which Are Not Sufficient to State Any Plausible Claim for Relief Against These Defendants……………………….………………………………………...1

9
10

II.    NOERR-PENNINGTON BARS PLAINTIFFS' FIRST AMENDED COMPLAINT IN ITS ENTIRETY…..…………………………………….4

11
12
13

III.    PLAINTIFFFS' FIRST AMENDED COMPLAINT FAILS TO STATE A FACIALLY PLAUSIBLE RICCO CLAIM AGAINST C AGRICULTURE….…………………………………….……………………8

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS, C AGRICULTURE GROUP CORP., JIN XIA WEN, AND MINGJU XU'S REPLY TO THE OPPOSITION FILED BY PLAINTIFFS TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>Cases</u>

3

4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................1

5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................1

6

*Bell Tel. Co.*,
    492 U.S. 229 (1989) ..............................................................................................9

7

8

*Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*,
    528 F.3d 1001 (8th Cir.2008) ..............................................................................8

9

*EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*
    (C.D. Cal. 2010) 711 F.Supp.2d 1074................................................................6

10

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of*
    *Culinary Workers*,
    542 F.2d 1076 (9th Cir.1976) ..............................................................................6

11

12

*Ileto v. Glock, Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ..............................................................................1

13

14

*In re Insurance Brokerage Antitrust Litig.*,
    618 F.3d 300 ( 3rd Cir. 2010) ..............................................................................8

15

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ..................................................................................1

16

*Kottle v. Northwest Kidney Centers*,
    146 F.3d 1056 (9th Cir. 1998) ..............................................................................5

17

18

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
    431 F3d 353 (9th Cir. 2005).................................................................................10

19

*Oregon Natural Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir.1991) .................................................................................6

20

21

*Prime Partners IPA of Temecula, Inc. v. Chauduri*,
    2012 WL 1669726 (C.D. Cal. May 14, 2012) ..................................................6, 8

22

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.*, Inc.,
    508 U.S. 49 (1993) .............................................................................................5, 6

23

24

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir.1992)............................................................................. 9, 10

25

*Reves v. Ernst & Young*,
    507 U.S. 170(1993) ..............................................................................................8

26

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006).................................................................................5

27

28

DEFENDANTS, C AGRICULTURE GROUP CORP., JIN XIA WEN, AND MINGJU XU'S REPLY TO THE OPPOSITION
FILED BY PLAINTIFFS TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1

*Theme Promotions, Inc. v. News America Mktg. FSI,*
    546 F3d 991 (9th Cir. 2008).......................................................................5
*Vasquez v. L.A. Cnty.,*
    487 F.3d 1246 (9th Cir. 2007)...................................................................1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS, C AGRICULTURE GROUP CORP., JIN XIA WEN, AND MINGJU XU'S REPLY TO THE OPPOSITION
FILED BY PLAINTIFFS TO DEFENDNANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PLAINTIFFS HAVE NOT MET THEIR BURDEN IN OPPOSING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

In opposing a motion to dismiss, the non-moving party must demonstrate that the facts as alleged plausibly state a legal basis for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ["A claim has facial plausibility when the plaintiff pleads <u>factual content</u> that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Emphasis added)].   "<u>A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.</u>'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Moreover, while a plaintiff's factual allegations must be accepted as true, where, as here, the allegations are based on mere conclusions and unwarranted inferences, such allegations cannot defeat a motion to dismiss. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) [court is not required to construe "conclusory allegations of law and unwarranted inferences" in favor of the nonmoving party]; *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) [<u>a court should "not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations</u>" (Emphasis added)].

Plaintiffs, Harmoni International Spice, Inc., and Zhengzhou Harmoni Spice., Ltd. ("Plaintiffs") have failed to allege facts that plausibly support the claims being asserted in their First Amended Complaint ("FAC") against moving defendants, C. Agriculture.

**A.     Plaintiffs' Allegations Intentionally Misstate the Contents of C Agriculture's Letter and Draw Therefrom Unreasonable Inferences Which Are Not Sufficient to State Any Plausible Claim for Relief Against These Defendants**

In deciding the instant motion to dismiss, this court may not consider the conclusions, speculative averments, and unreasonable inferences being drawn by the

Plaintiffs in their FAC, as also argued in their Opposition to C Agriculture' motion. This Court must solely rely on the factual averments made, and on such matter of which judicial notice can be taken[1].

As noted in C Agriculture's moving papers, the only allegations made directly against these moving defendants are set forth in ¶¶ 31, 55-56, 128-130, 248-258, 270 and 273 of the FAC.  Of those allegations, only the statements set forth below are factual.  All the remaining allegations are merely "labels and conclusions" which are legally insufficient to state the claims being asserted in the FAC.  Plaintiffs allege the following facts against C Agriculture:

**		That C Agriculture is a fresh garlic reseller/distributor, owned by Defendant Jin Xia Wen ("Wen") and managed by Defendant Mingju Xu ("Xu"). (FAC, ¶¶ 31, 55, 56, 128);

**		That C Agriculture "distributed" garlic exported by two or three of the remaining Defendants. (FAC, ¶¶129 and 248);

**		That the individual defendants, Wen and Xu, are "close business associates of [defendants] Bai and Ye in a number of garlic related ventures." (FAC, ¶130)[2];

**		That on November 18, 2015 attorney James DeCristofaro sent a letter on behalf of Defendant C Agriculture, via Federal Express, to Plaintiff Harmoni and to Christopher Ranch, LLC ("the Letter"). (FAC, ¶¶270, p.51:25-27, and 253);

**		That the Letter accuses Plaintiff Harmoni and Christopher Ranch of "collectively" selling peeled garlic at a price below the U.S. market price, thereby engaging in "unreasonable restraint of trade." (FAC, ¶ 250);

**		That the Letter also asserts that Christopher Ranch "received garlic imported from China processed with prison labor." (FAC, ¶251)[3]; and

---

[1] The C Agriculture Defendants have already requested that this Court take judicial notice of the actual demand letter sent on behalf of C Agriculture by attorney James DeCristofaro, on November 18, 2015[Docket # 38].  Plaintiffs do not object to that Request.

[2] There are no allegations made in the FAC that such "garlic related ventures" have any relationship at all to the purportedly wrongful activities being alleged in the instant lawsuit.

** That the Letter demanded payment by Harmoni of $32 Million to "stave off a lawsuit." (FAC, ¶ 252)[4].

Predicated solely on those factual allegations, the FAC proceeds to draw multiple unwarranted inferences and concludes that C Agriculture's Letter was "false and defamatory"; that it was "extortionate" because it sought the payment of $32 Million "in exchange for [a] promise not to levy these false accusations more publically"; that the Letter "constitutes a threat to publically accuse Harmoni of a crime that it did not commit"; and that C Agriculture had "no good faith intention to actually file a lawsuit against Harmoni and/or Christopher Ranch," when the Letter was sent. (FAC, ¶¶31, 252, 256, and 257). Plaintiffs' conclusions are negated by the following irrefutable facts of which this Court may take judicial notice:

A. When C Agriculture sent the Letter it was in possession of photographic and digital evidence, which it delivered to Harmoni and Christopher Ranch[5], along with the Letter, showing Chinese prisoners engaging in packing 5 lbs bags of peeled garlic into boxes labeled "Golden King." Plaintiffs' FAC does not attach the Letter nor acknowledges the receipt of that enclosed evidence;

B. Plaintiffs, although claiming that the statements made in the Letter were false, neither deny nor disclose in the FAC that Christopher Ranch does import and sell 5lbs bags of "Golden King" garlic. (See Exhibit "1" to the C Agriculture's concurrently filed Supplemental Request for Judicial Notice, which identifies Christopher Ranch as the "manufacturer" of 5 lbs bags of "Golden King" garlic;

---

[3] While admitting in ¶251 that the accusation regarding the use of prison labor to peel garlic was not directed to Plaintiff Harmoni, but in fact was only directed to Christopher Ranch, Plaintiffs nonetheless allege in ¶¶256 and 273 of the FAC that C Agriculture engaged in extortion against Harmoni by accusing it of a crime that it did not commit.

[4] In fact, the Letter, which is addressed to both entities, demands that Harmoni and Christopher Ranch pay the requested sum and thereby avoid being sued for violation of Section 4 of the Clayton Act. (Opposition,p.14-15 [Docket #50-2].

[5] Not merely "copied" as is erroneously alleged in ¶255 of the FAC.

DEFENDANTS, C AGRICULTURE GROUP CORP., JIN XIA WEN, AND MINGJU XU'S REPLY TO THE OPPOSITION FILED BY PLAINTIFFS TO DEFENDNANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

C.   Nowhere in the FAC do Plaintiffs allege that Christopher Ranch either ceased doing business with Plaintiffs, or in any way reduced the scope of its business affiliation with Plaintiffs.

D.   The language of the Letter does not contain any of the threats Plaintiffs alleged were in the Letter (to extort or publicize);

E.   Plaintiffs' FAC does not identify any other customers or affiliated organizations to whom the contents of the Letter, or any part thereof, was ever sent or disclosed by C Agriculture after November 18, 2015;

F.   In their Opposition Plaintiffs disingenuously state that the Letter was filed by Defendant, Robert Hume with the Department of Commerce, and ask the Court to take judicial notice of that filing made on March 9, 2016.  Plaintiffs then conclude, yet again despite the existence of contrary evidence, that Mr. Hume's submission proves C Agriculture's participation in an overall RICCO enterprise (Opposition, p.15:14-16).  Yet, a reading of Mr. Hume's  March 9, 2016 letter clearly discloses that it was Plaintiffs who made the Letter available to the remaining Defendants when Plaintiffs attached it as Exhibit 17 to their Motion for Preliminary Injunction filed on March 4, 2016. (See footnote 8 on page 4 of Docket # 50-2. Also see Exhibit 2 to Plaintiffs' Request for Judicial Notice);and

G.   Although Plaintiffs' speculate that C Agriculture had no good faith intent of filing a lawsuit when it authorized its counsel to send the Letter it fails to assert any credible facts to support that unfounded conclusion.

## II.   *NOERR-PENNINGTON* BARS PLAINTIFFS' FIRST AMENDED COMPLAINT IN ITS ENTIRETY

Intertwined with their failure to allege any plausible claim against C Agriculture is the fact that the conclusory allegations being made by Plaintiffs target the protected First Amendment petitioning conduct of C Agriculture, and of the remaining

defendants who have appeared in this action[6], which conduct is privileged under the *Noerr-Pennington* doctrine, thereby barring Plaintiffs' RICCO claim, as well as the remaining state court tort claims[7]. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929, 934-935 (9th Cir. 2006); *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1059 (9th Cir. 1998); and *Theme Promotions, Inc. v. News America Mktg. FSI*, 546 F3d 991, 1007 (9th Cir. 2008) [the *Noerr-Pennington* Doctrine applies to state law tort claims].

The *Noerr–Pennington* doctrine protects conduct which is "incidental" to the right to petition the government in litigation, including the sending of a pre-litigation demand letter, such as the Letter at issue herein.  It is of course conceded that "[p]re-suit letters threatening legal action may nevertheless be restricted by law where they include representations so baseless that the threatened litigation would fall into the 'sham litigation' exception" to the *Noerr–Pennington* doctrine. *Theme Promotions, Inc. v. News Am. Marketing FSI, supra*, 546 F.3d at 1007.

To determine whether litigation is a sham, courts consider whether: (1) the protected conduct is "objectively baseless" such that "no reasonable litigant could realistically expect to succeed on the merits;" and (2) it is the subjective intent of the litigant to "interfere directly with the business relationships of the competitor." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus*., Inc., 508 U.S. 49, 60-61 (1993)["If an objective litigant could conclude that the suit is <u>reasonably calculated</u> to elicit a favorable outcome, the suit is immunized under *Noerr,* and [any] claim premised on the sham exception must fail." *Id*. at 60.] (emphasis added)

In the Ninth Circuit, a plaintiff alleging the sham exception must include in the pleading specific allegations explaining why the exception should apply. "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington*

---

[6] See arguments raised on pages 17-19 of the Motion to Dismiss filed by Defendant Robert Hume [Docket # 43].

[7] The application of California's litigation privilege to the state claims at issue herein  is addressed in  C Agriculture's concurrently filed Reply to Plaintiffs' Opposition to C Agriculture's Anti –SLAPP Motion to Strike the First Amended Complaint.

1  protection." *Oregon Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir.1991);

2  *Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). [A

3  plaintiff must meet a heightened pleading standard when seeking damages based on

4  conduct that implicates the First Amendment]; *Franchise Realty Interstate Corp. v.*

5  *San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082–83

6  (9th Cir.1976)["[W]here a plaintiff seeks damages or injunctive relief, or both, for

7  conduct which is prima facie protected by the First Amendment, the danger that the

8  mere pendency of the action will chill the exercise of First Amendment rights requires

9  more specific allegations than would otherwise be required."]. Also see, *EcoDisc*

10  *Technology AG v. DVD Format/Logo Licensing Corp.* (C.D. Cal. 2010) 711

11  F.Supp.2d 1074, 1083.

12      Although Plaintiffs' Opposition argues that a sham exception applies to the

13  *Noerr-Pennington* protection being claimed by C Agriculture, Plaintiffs' FAC is

14  devoid of the specific allegations necessary to establish said exception in this case.

15  *Prime Partners IPA of Temecula, Inc. v. Chauduri*, 2012 WL 1669726, at *5 (C.D.

16  Cal. May 14, 2012) ["At the motion to dismiss stage, the Court need not conclude

17  whether [C Agriculture's Letter was] a sham. (Citation omitted).  Instead, the Court

18  "must decide only whether Plaintiff has properly pleaded that the conduct was a sham,

19  i.e., objectively unreasonable and subjectively motivated to interfere with Plaintiff's

20  business relationships." *Id.* (Emphasis added].

21      Accordingly, to qualify for the sham litigation exception and survive C

22  Agriculture's instant motion to dismiss, Plaintiffs would have had to allege in the

23  FAC specific facts demonstrating that C Agriculture "did not have a reasonable basis

24  to believe" that Plaintiff Harmoni and Christopher Ranch were engaged in violation of

25  the Clayton Act, or that prison labor was being used in packing the Golden King

26  brand of peeled garlic being imported by Christopher Ranch, as is contended in the

27  Letter, and as is unequivocally established in Exhibit "1" to C Agriculture's

28  Supplemental Request for Judicial Notice being filed with this Reply. *EcoDisc*

1    *Technology AG v. DVD Format/Logo Licensing Corp.*, 711 F.Supp.2d 1074, 1083-
2    1084 (C.D.Cal.2010).

3         Plaintiffs' FAC fails to allege any specific facts denying the accusations being
4    made in the Letter. The FAC ignores, and makes no mention at all of, the
5    photographic evidence and the video which C Agriculture delivered along with its
6    Letter, as proof of its good faith belief that that claims being asserted in the Letter
7    were true.  While they repeatedly allege that the statements made in the Letter are
8    "false and defamatory," Plaintiffs fail to allege in the FAC that Christopher Ranch
9    does not import and sell the Golden King brand, or that Plaintiffs Harmoni and
10   Christopher Ranch have never obtained any peeled garlic from their Chinese affiliate
11   Zhengzhou Xiwannian, which allowed Harmoni and Christopher Ranch to "sell
12   peeled garlic in the U.S. at a price substantially below the market price," as is claimed
13   in the Letter[8].

14        As a result of these missing allegations, and the irrefutable evidence supporting
15   a finding by this court that C Agriculture's Letter was not "objectively baseless,"  this
16   Court has sufficient basis upon which to decide that Plaintiffs have not "properly
17   pleaded that [the Letter] was a sham[9]."  *Prime Partners IPA of Temecula, Inc. v.*
18
19
20
21   [8] Although rendered moot by Plaintiffs' failure to allege any facts showing "objectively
22   baseless" conduct on the part of C Agriculture, the allegations averred by Plaintiffs in the
     FAC also fail to adduce any specific facts to establish the second prong of the sham litigation
23   exception so as to demonstrate that C Agriculture had the "subjective intent" to interfere with
     the business of Plaintiffs when it sent the Letter to Harmoni and Christopher Ranch. Once
24   again Plaintiffs rely on the mere conclusion that C Agriculture's intent was to interfere with
     their business, but do not aver any facts to establish said purported subjective intent.
25   [9] In their Opposition (p.10:10-13) Plaintiffs argue that the Letter could not have been related
26   to a legitimate litigation process because "-the use of prison labor-has no plausible
     connection to any objectively reasonable anti- trust claim." Yet the Letter itself explains that
27   "[t]he reduced labor cost [resulting from the use of prison labor] enabled Harmoni and
     Christopher Ranch to sell peeled garlic…at a price substantially below the market price, and
28   thus engage in anticompetitive practices."  See, Exhibit "A" to Defendants' Request to Take
     Judicial Notice [Docket #38].

*Chauduri, supra,* at \*5.  Such a finding by this court requires the dismissal of Plaintiffs' FAC in its entirety.

## III.   PLAINTIFFS' FIRST AMENDED COMPLAINT FAILS TO STATE A FACIALLY PLAUSIBLE RICCO CLAIM AGAINST C AGRICULTURE

The "[m]ere association with an enterprise does not violate § 1962(c)."  *In re Insurance Brokerage Antitrust Litig.,* 618 F.3d 300, at 370 ( 3rd Cir. 2010) (emphasis added).  Rather, § 1962(c) makes it unlawful for a person associated with a RICO enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs."  As explained by the Supreme Court, this simply means that to be liable under RICO, "one must participate in the operation or management of the enterprise itself" through an alleged pattern of racketeering activity.  *Reves v. Ernst & Young,* 507 U.S. 170, 185(1993).  Moreover, "[t]he requirements of § 1962(c) must be established as to each individual defendant."  *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.,* 528 F.3d 1001, 1027 (8th Cir.2008).

Other than averring in a conclusory fashion that each defendant in this case is associated with the "enterprise" and participated directly or indirectly in the management of the "enterprise" (FAC,¶263), Plaintiffs have not alleged any specific facts describing how C Agriculture, has directed the purported enterprise.  Instead, Plaintiffs indiscriminately lump all the "Defendants" together (FAC, ¶¶262, 263, 265, and 268).  "By pleading in this fashion, Plaintiffs fail to delineate how any of these individual defendants independently participated in the operation or management of the enterprise, much less how they did so through the alleged pattern or patterns of racketeering activity."  *Prime Partners IPA of Temecula, Inc. v. Chaudhuri, supra,* 2012 WL 1669726, at \*11.

Plaintiffs' FAC also fails to demonstrate the requisite connection between C Agriculture's alleged association with the "enterprise" and its purported participation in the alleged criminal activity.  Merely alleging that Defendants Wen and Xu had previously engaged in unrelated garlic ventures with some of the other defendants

(FAC,¶130), or that <u>C Agriculture had purchased garlic from two or three of the other defendants</u> (FAC,¶129) is insufficient to establish these defendants' participation in the operation or management of the "enterprise" with which C Agriculture is alleged to have been associated.

In addition, Plaintiffs cannot possibly establish the existence of a *pattern of racketeering activity* based on the facts alleged in the FAC. The Supreme Court has explained that to establish the existence of a "pattern," a plaintiff must show *both* (1) the "relatedness" of the predicate acts; and (2) that those predicate acts "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. New. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "Predicate acts are related if they have "the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics <u>and are not isolated events</u>." *Id.* at 240. (Emphasis added).

Plaintiffs herein have not sufficiently pleaded the requisite element of relatedness. *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir.1992) ("An allegation of two isolated criminal acts is insufficient to satisfy the relatedness requirement...."). Contrary to the assertions made in their Opposition, Plaintiffs' FAC avers two separate and isolated purportedly wrongful acts which were allegedly committed by C Agriculture, on the one hand, and by the remaining defendants, on the other hand. The latter involved the filing with a governmental agency of multiple, allegedly false declarations, by all the defendants, other than C Agriculture (FAC, ¶270, p.50:26 through 51:24, and 52:1 through 9). Whereas the wrongful act attributed to C Agriculture involved the sending of a single letter, to Plaintiff Harmoni and Christopher Ranch (FAC, ¶270, p.51:25 to 27). Merely referring to all the defendants as co-conspirators, or alleging that they acted as an enterprise, does not resolve the legal impediment to establishing a RICO violation under the facts at bar, which exists as a result of the isolated acts at issue.

Nor does Plaintiffs' FAC establish the "continuity" prong necessary to state a RICO claim. *H .J., Inc.*, 492 U.S. at 242 ("A party alleging a RICO violation may

demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement ...."); *Religious Tech. Ctr.*, 971 F.2d at 366–67 ["We have found no case in which a court has held the [continuity] requirement to be satisfied by a pattern of activity lasting less than a year. A pattern of activity lasting only a few months does not reflect the 'long term criminal conduct' to which RICO was intended to apply."].

Plaintiffs FAC does not allege any facts to support a finding that C Agriculture participated in a "continuing" course of misconduct, or committed any purportedly wrongful act other than sending the Letter on November 18, 2015.

Finally, once again, lumping all the Defendants together Plaintiffs allege that "[d]efendants' violations of federal law and their pattern of racketeering activity have directly and proximately caused Plaintiffs to be injured in their business and property, including in an amount of lost profits to be determined at trial" (FAC, ¶274).  Said conclusory allegation fails to establish the proximate injury purportedly caused by the RICO violation allegedly committed by C Agriculture in sending the Letter.

In their Opposition Plaintiffs claim that similar allegations were deemed sufficient at the pleading stage when made by the plaintiffs in *Living Designs, Inc. v. E.I. Dupont de Nemours & Co*., 431 F3d 353, 364 (9th Cir. 2005).  However, in *Living Designs, supra*, plaintiffs alleged that they suffered both harm to a specific property interest (i.e. a fraudulent inducement), and a financial loss (i.e. they settled their claims for a smaller percentage of their alleged damages than they could have received absent defendants' fraudulent inducement.) *Id.*  Based on those specific allegations the Ninth Circuit held that the district court had erred in determining that plaintiffs "fail[ed] to allege a cognizable RICO injury…as a matter of law." *Id.*

That is clearly not the situation here, where no specific allegations are made by Plaintiffs regarding either any particular harm proximately caused by the conduct of C Agriculture, or of a resulting financial loss.  Although the only possible harm resulting from the Letter would have been the loss of Christopher Ranch as a client, or a

substantial reduction in the business between Plaintiffs and Christopher Ranch, no such loss is averred to in the FAC.

Respectfully submitted,

DATED:  April 4, 2016                    **HELLER & EDWARDS**

By:  /s/: Lawrence E. Heller            .
        Lawrence E. Heller,
        Attorneys for Defendants
        C. Agriculture Group Corp., Jin Xia
        Wen and Mingju Xu