**HELLER & EDWARDS**
Lawrence E. Heller, Esq. State Bar No. 69770
9454 Wilshire Blvd., Suite 500
Beverly Hills, California 90212
Tel:   (310) 550-8833
Fax:   (310) 858-6637

Attorneys for Defendants C. Agriculture Group Corp., Jin Xia Wen and Mingju Xu

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMONI INTERNATIONAL SPICE, INC., a California corporation, and ZHENGZHOU HARMONI SPICE., LTD., corporation,<br><br>           Plaintiff,<br><br>vs.<br><br>WENXUAN BAI, an individual, et al.<br><br>           Defendants. | Case No.: 2:16-cv-00614-BRO (ASx)<br><br>**DEFENDANTS, C AGRICULTURE GROUP CORP., JIN XIA WEN AND MINGJU XU'S, REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE PLAINTIFFS' STATE LAW CLAIMS PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**<br><br>Hearing Date: May 9, 2016<br>Hearing Time: 1:30 p.m.<br>Courtroom:   14<br><br>[Filed contemporaneously with Declarations of Mingju Xu and James J. DeCristofaro] |

Defendants, C. Agriculture Group Corp, Jin Xia Wen, and Mingju Xu, (collectively "C Agriculture"), hereby submit their joint Reply to Plaintiff's Opposition to Defendants' Motion to Strike Plaintiffs' State Law Claims Pursuant to *Code of Civil Procedure §425.16*:

# **TABLE OF CONTENTS**

I.  PLAINTIFF'S OPPOSITION AND THE ALLEGATIONS MADE IN THEIR FIRST AMENDED COMPLAINT ARE PREDICTED UPON UNWARRANTED CONCLUSIONSWHICH ARE WHOLLY REFUTED BY THE FACTUAL DECLARATIONS OF DEFENDANT MINGU XU AND ATTORNEY JAMES DECRISTOFARO……………………………….1

II. ALL OF THE CASES CITED BY PLAINTIFFS SUPPORT THE APPLICATION OF *CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16* TO THE FACTS AT BAR………………………………………...…5

III. CONCLUSION…………………………………………………………...8

# TABLE OF AUTHORITIES

**Cases**

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
  2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) ............................................................. 8
*Bailey v. Brewer*,
   (2011) 197 Cal. App. 4th 781 .................................................................................... 5
*Cohen v. Brown,*
   (2009) 173 Cal.App.4th 302 ...................................................................................... 6
*Flatley v. Mauro*
   (2006) 39 Cal. 4th 299 ............................................................................................... 6
*Mansell v. Otto*
   (2003)108 Cal.App.4th 265 ....................................................................................... 8
*Mendoza v. Hamzeh*,
   (2013) 215 Cal.App.4th 799 ...................................................................................... 6
*Neville v. Chudacoff*,
   (2008) 160 Cal.App.4th 1255 .................................................................................... 8
*State v. Harrington*
   (1969) 128 Vt. 242, [260 A.2d 692] .......................................................................... 6
*Stenehjem v. Sareen*
   (2014) 226 Cal. App. 4th 1405 .............................................................................. 5, 6
*Wilson v. Parker, Covert & Chidester,*
   (2002) 28 Cal.4th 811 ................................................................................................ 7

**Statutes**

*California Civil Code* §47(b) ........................................................................................ 5
Code of Civil Procedure §425.16 ............................................................................ passim

# MEMORANDUM OF POINT AND AUTHORITIES

## I. PLAINTIFFS OPPOSITION AND THE ALLEGATIONS MADE IN THEIR FIRST AMENDED COMPLAINT ARE PREDICTED UPON UNWARRANTED CONLUSIONS WHICH ARE WHOLLY REFUTED BY THE FACTUAL DECLARATIONS OF DEFENDANT MINGJU XU AND ATTORNEY JAMES DECRISTOFARO

The Opposition filed by Plaintiffs, Harmoni International Spice, Inc., and Zhengzhou Harmoni Spice., Ltd. ("Plaintiffs"), is replete with hyperbole and speculation, but lacks any facts supporting its unwarranted conclusions. Although Plaintiffs repeatedly characterize attorney James DeCristofaro' s November 18, 2015 pre-litigation demand letter (the "Letter"), as, among other things, extortive, fraudulent and criminal, the Letter is in fact devoid of any threats whatsoever. It merely warns that Defendant C Agriculture has authorized its counsel to file litigation if the parties are unable to resolve the demands made in the Letter. There are no threats to report the Plaintiffs or Christopher Ranch, LLC to the Department of Commerce, or to any other governmental agencies. There are no threats, nor is there a mention of any intention, to publicize any of the facts in the Letter, which are supported by evidence that is enclosed therewith. As pointed out in C Agriculture's Motion to Strike, the only statement made in the letter that could be considered a "threat" is that "C Agriculture authorized [the DeCristofaro Law Firm] to take all appropriate legal action including the filing of a lawsuit." (Letter, p. 2, ¶ 4, Exhibit "A" to C Argiculture's Request for Judicial Notice, Docket # 41).

Plaintiffs assert in their Opposition that the Letter is part and parcel of an "overall extortionate scheme to harm Plaintiffs." (Oppo. 6:16-19). Not only are there no substantiating facts for this contention in either Plaintiffs' Opposition or in their First Amended Complaint, but that assertion is directly contradicted by the supporting declaration of Defendant Mingju Xu ("Xu dec."), Defendant C Agriculture's CEO and manager, concurrently filed with the instant Reply. Defendant Xu attests under oath

1

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PURSUANT TO CCP § 425.16

that he has "never met or even communicated with any of the other Defendants named in this lawsuit, except for Defendant Wenxuan Bai, who he met once some four or five years ago...and Defendant Jicheng Ye, who he also met once four or five years ago" (Xu dec.,¶7).  Also contrary to Plaintiffs' assertions in their Opposition, Defendant Xu declares that no one at C Agriculture has ever met, no less conferred with, Defendant/attorney Robert Hume. (Xu dec., ¶5).

Plaintiffs, in a desperate attempt to somehow tie the Letter into their fantasized grand conspiracy, latch on to the timing of the Letter which was sent some ten days prior to the point in time that Defendants Montoya, Crawford and Katz are alleged to have filed an unrelated petition with the Department of Commerce. (Oppo. 2:8-12). As weak and speculative as this purported "evidence" is to begin with, it is again directly contradicted by both the supporting declaration of Defendant Xu ["when he [DeCristofaro] wrote the November 18, 2015 letter at issue in this litigation I had no idea that any of the other Defendants were seeking a review of the Plaintiffs with the Department of Commerce"—Xu dec.,¶6],[1] and the accompanying Declaration of James DeCristofaro ("DeCristofaro dec.") ["But I do not now, nor did I at any time prior to November 18, 2015, have any such knowledge whatsoever that a petition was even contemplated or ever filed until I was told about it a couple of days ago"— DeCristofaro dec., ¶5).

Plaintiffs argue in their Opposition that the fact that Defendant C Agriculture has yet to file a lawsuit evidences that they had no intent of doing do so when the Letter was written and sent.  Again, Plaintiffs' unsupported conjecture is directly contradicted by both the Xu and DeCristofaro declarations.  Both Defendant Xu and Attorney DeCristofaro testify that C Agriculture had every intention of filing a lawsuit when the Letter was written. (DeCristofaro dec., ¶¶ 4&7, Xu dec., ¶9.)  As these

---

[1] Of course Defendant Xu had no idea that any of the remaining defendants were seeking a DOC review since he had never spoken to any of them, other than to Defendants Bai and Ye, some four or five years earlier (Xu dec., ¶7).

declarants also attest, no lawsuit was filed because, upon receiving Plaintiffs' responsive letter (no response was ever received from Christopher Ranch, LLC), which was written by the New York offices of Winston & Strawn, Plaintiffs' attorneys herein, C agriculture was asked by their lawyer to provide a substantial pre-filing retainer so that he could associate in another large firm to prosecute C Agriculture's Clayton Act claims, and defend against Plaintiffs' threatened counter claims, which C Agriculture could not afford. (DeCristofaro dec.,¶6, Xu dec., ¶9.) What both Defendant Xu and Attorney DeCristofaro testify to, and what cannot be refuted by Plaintiffs, is that C Agriculture had every intention of filing a lawsuit when the Letter was first written. In fact, as Defendant Xu attests in his declaration, if this case gets that far, C Agriculture will file a counterclaim against the Plaintiffs, and probably a third party claim against Christopher Ranch, LLC, in this litigation. (Xu dec.,¶ 9).

      Without citing to any law whatsoever, Plaintiffs unreasonably infer that the Letter was written in bad faith because Christopher Ranch LLC's use of prison labor in unsanitary conditions would have had nothing to do with the antitrust litigation threatened to be filed in the Letter. (Oppo. 6:21-25). Whether or not legally true, Plaintiffs' conclusion is irrelevant to the determination of C Agriculture's good faith in having their lawyer send the Letter, based on the incriminating evidence that Defendant X had personally obtained and provided to the Plaintiffs along with the Letter (Xu dec.,¶2&3, DeCristofaro dec.,¶2).  Moreover, whether Attorney DeCristofaro's research was accurate or not, he did in fact research the Clayton Act and, based on that research, determined that the reduced labor costs engendered by using prison labor, pursuant to which Plaintiff Harmoni and Christopher Ranch, LLC could sell peeled garlic at a price well below market value, was an anticompetitive practice that enabled a lawsuit to be filed by C Agriculture under the Clayton Act. (DeCristofaro dec. ¶ 3).

Lest it be forgotten, the very basis of the Letter was the irrefutable fact that the accusation that Christopher Ranch, LLC was importing garlic that was processed by prison labor was evidenced by the photographs and a video which were taken in China by Defendant Xu, who had personal knowledge at that time that Christopher Ranch LLC was importing and selling "Golden King" garlic in the Unites States (Xu dec., ¶ 2&3). That evidence was referenced in, and was enclosed, in the Letter sent to Plaintiff Harmoni and to Christopher Ranch LLC on November 18, 2015.

Although artfully phrased, nowhere in their Opposition, or in the First Amended Complaint, do Plaintiffs affirmatively allege that Christopher Ranch LLC, it's supposed customer, was not utilizing prison labor, and was not importing and selling 5 lbs bags of "Golden King" garlic, which Defendant Xu personally witnessed being packed into boxes bearing that name by prisoners in China. Plaintiffs are very careful to assert only that <u>they</u> did not utilize prison labor, and indeed that's precisely what the Letter says: that "on delivery to Zhengzhou Xiwannian's supplier, the garlic was packed into boxes bearing the logo of Golden King, a brand owned and operated by Christopher Ranch LLC." (Letter, ¶3)[2].

Also in contravention to the statements repeatedly made by Plaintiffs in their Opposition and their First Amended Complaint, nowhere does the Letter threaten to make anything stated therein public. The fact that a lawsuit becomes a public record upon its filing is true for every lawsuit that is filed following a demand letter. Following Plaintiffs argument to its logical conclusion in this regard, any pre-litigation demand letter that threatens a lawsuit (as they all do) would disqualify that

---

[2] In fact, as evidenced by Exhibit "1" to C Agriculture's Supplemental Request for Judicial Notice, being concurrently filed with Moving Defendants' Replies, Christopher Ranch, LLC does indeed import and sell the Golden King garlic brand being depicted in the photographs and video provided by Defendant Xu to his counsel, which were enclosed in the Letter. (DeCristofaro dec., ¶2).

letter from enjoying the litigation privilege under California Civil Code §47(b). That is Neither the law in California, nor in the Ninth Circuit.

## II. ALL OF THE CASES CITED BY PLAINTIFFS SUPPORT THE APPLICATION OF CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 TO THE FACTS AT BAR

The case of *Bailey v. Brewer*, (2011) 197 Cal. App. 4th 781, 790, cited by the Plaintiffs on page 4 of their Opposition, best optimizes the deficiency in Plaintiffs' Opposition and the allegations being made in the First Amended Complaint.

> "A party resisting the assertion of the litigation privilege, however, must do more than simply assert that litigation to which the statement is related is without merit, and therefore the proponent of the litigation could not in good faith have believed it had a legally viable claim. To adopt such an interpretation would virtually eradicate the litigation privilege for all but the most clearly meritorious claims." *Id.*[3]

What differentiates every single one of the cases cited by Plaintiffs in their Opposition from the situation at hand is that in all of those cases some threat, other than the threat to file a lawsuit, was made in the pre-litigation demand. In fact, in all of the cases cited by Plaintiffs where there was a threat made to publicize a potential defendants' acts, those were <u>unrelated</u> to the conduct underlying the potential plaintiff's claim. The case of *Stenehjem v. Sareen* (2014) 226 Cal. App. 4th 1405, which is also cited by the Plaintiffs in their Opposition, clearly make this point, while

---

[3] Plaintiffs cite the *Brewer* case as an example of a holding wherein the pre-litigation statements were not protected under § 425.16, but fail to inform the Court that the lawsuit threatened to be filed in that case had already been litigated and *res judicata* therefore applied. "In reaching this conclusion, we note that our ruling is a narrow one. It applies only in cases where the proponent of the contemplated litigation has been barred from relitigating the contemplated claims under the doctrine of res judicata. In such circumstances, no reasonable plaintiff could have believed in good faith that the contemplated litigation was legally viable." *Bailey v. Brewer*, 197 Cal. App. 4th at 794-795. Surely not the case herein.

relying on the leading California Supreme Court case of *Flatley v. Mauro* (2006) 39 Cal. 4th 299:

> "Furthermore, the alleged criminal activity that Stenehjem threatened to expose in a qui tam action was '<u>entirely unrelated to any alleged injury suffered by</u>' Stenehjem as alleged in his defamation and wrongful termination claims. (*Flatley, supra,* 39 Cal.4th at pp. 330–331, 46 Cal.Rptr.3d 606, 139 P.3d 2.)[15] Stenehjem's threat is thus similar to Mauro's threat to expose Flatley for having committed "unspecified violations of various criminal offenses involving immigration and tax law as well as violations of the Social Security Act" (*Id.* at p. 330, 46 Cal.Rptr.3d 606, 139 P.3d 2) in an effort to exact a settlement from Flatley for the assault claim asserted by Mauro on his client's behalf. Stenehjem's threat to expose Sareen's alleged crimes is also similar to the threat made by the defendant in *State v. Harrington* (1969) 128 Vt. 242, [260 A.2d 692] (*Harrington*), a case cited by our high court in *Flatley.* (See *Flatley,* at pp. 328, 329, 331, 46 Cal.Rptr.3d 606, 139 P.3d 2.)" *Id.* at 1423. (Emphasis added).

Likewise, in the cases of *Cohen v. Brown,* (2009) 173 Cal.App.4th 302 and *Mendoza v. Hamzeh,* (2013) 215 Cal.App.4th 799, both cited by Plaintiffs, anti-SLAPP motions were denied because those defendants had made specific threats to report those plaintiffs to regulatory or criminal authorities based on unrelated acts. In the *Cohen* case the defendant threatened to report the plaintiff, an attorney, to the State Bar.[4] In the *Mendoza* case the threat was to report the plaintiff to the California

---

[4] It is particularly noteworthy that in *Cohen* the court found that the plaintiff's threat to go to the State Bar (and indeed his actual filing of a state bar complaint) had nothing to do with the defendant's client receiving his share of certain settlement funds, but was about the plaintiff attorney receiving his attorney's fees through a fee-splitting arrangement that the defendant attorney was alleged to have breached. The *Cohen* court not only found that the State Bar

Attorney General, the District Attorney, the IRS for tax fraud and the Better Business Bureau, all of which had nothing to do with that plaintiff's claim. Here, C Agriculture made no threats whatsoever in its Letter, whether related or unrelated to their Clayton Act claim, other than to state that they had authorized their counsel to file a lawsuit.

Specifically respecting the second step relating to the applicability of § 425.16, which shifts the burden of proof to the Plaintiffs who must establish a reasonable probability of prevailing on their state law claims, Plaintiffs first argue that they need only show that those claims have "minimal merit." But "the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim… Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilson v. Parker, Covert & Chidester,* (2002) 28 Cal.4th 811, 821.

To overcome this barrier Plaintiffs posit the singular argument that the litigation privilege is not applicable because C Agriculture had no intention of filing litigation. But, in contrast to Plaintiffs' speculative supposition that Plaintiffs had no such intent, which is based solely on the fact that until now a lawsuit has not been filed, the accompanying declarations of C Agriculture's CEO, Mingju Xu, and of its lawyer, DeCristofaro, irrefutably establish that at the time of sending the Letter Defendant C Agriculture fully intended to file litigation, and it still intends to do so as a counter claim against Plaintiffs and a third party claim against Christopher Ranch, should this lawsuit proceed beyond the pleading stage. As attested to in those two declarations, only when confronted with having to come up with a larger unaffordable retainer than initially anticipated, which was demanded by their counsel after his receipt of Plaintiff

---

complaint had no merit, but also that it was unrelated to the plaintiff attorney's claim. *Cohen*, 173 Cal.App.at 318.

1  Harmoni's December 10, 2015 responsive letter from Winston & Strawn, did C
2  Agriculture determine that it did not have the financial ability to file a lawsuit against
3  Plaintiff Harmoni and Christopher Ranch, LLC. (Xu dec., ¶9, DeCristofaro dec.,¶6).

4      At any rate, whether or not a lawsuit was ultimately filed is wholly immaterial
5  to the determination as to whether a defendant had acted in good faith when sending a
6  demand letter which accuses a plaintiff of wrongdoing. "A statement (is protected by
7  the litigation privilege if it) <u>concerns the subject of the dispute</u> and <u>is made in
8  anticipation of litigation contemplated in good faith</u>[5] and under serious consideration
9  then the statement may be petitioning activity protected by section 425.16." *Neville v.
10 Chudacoff*, (2008) 160 Cal.App.4th 1255, 1268 (Emphasis added). See also *Adobe
11 Sys. Inc. v. Coffee Cup Partners, Inc.,* also cited by Plaintiffs in their Opposition, 2012
12 WL 3877783, at *11 (N.D. Cal. Sept. 6, 2012).

13     It has been conclusively established herein that the Letter "concerned the
14 subject of the dispute" between the parties; was supported by irrefutable evidence,
15 which accompanied the Letter; and when it was sent, C Agriculture had a good faith
16 intention to file the threatened lawsuit should the parties be unable to amicably resolve
17 the asserted claims. (Xu dec.¶9, DeCristofaro dec., ¶7).

18 III. **CONCLUSION**

19     Unlike Plaintiffs, Defendants C Agriculture do not rely on conjecture or
20 speculation, but rather have presented evidence in support of their Motion to Strike
21 and this Reply to Plaintiffs' Opposition. That evidence cannot possibly be
22 contravened or refuted. In the final analysis the Letter which is the basis for
23 Plaintiffs' case against these Moving Defendants is no more than a typical, run of the
24 mill pre-litigation demand letter. No matter how hard Plaintiffs attempt to

---

[5] Indeed, neither malice nor bad faith vitiates the litigation privilege. "In determining whether a publication falls within the litigation privilege, the presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable." *Mansell v. Otto* (2003)108 Cal.App.4th 265, 279 n. 47.

1 mischaracterize the language of the Letter and infer therefrom a nefarious threat, the
2 Letter speaks for itself and clearly falls within the ambit of § 425.16. Therefore, it is
3 respectfully submitted that Plaintiffs' state law claims against these Moving
4 Defendants must be dismissed by this Court.

DATED: April 4, 2016

Respectfully submitted,
**HELLER & EDWARDS**

By: /s/: Lawrence E. Heller
Lawrence E. Heller,
Attorneys for Defendant
C. Agriculture Group Corp.,
Jin Xia Wen and Mingju Xu