LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-00614-BRO (ASx)** | Date | August 5, 2016 |
|---|---|---|---|
| Title | **HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL.** | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**        (IN CHAMBERS)

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE [108]

## I.    INTRODUCTION

Pending before the Court is Defendants C. Agriculture Group Corp. ("C. Agriculture"), Jin Xia Wen, and Mingju Xu's (collectively, the "C. Agriculture Defendants") Motion to Dismiss Plaintiffs Harmoni International Spice, Inc. ("Harmoni International") and Zhengzhou Harmoni Spice Co., LTD's ("Zhengzhou Harmoni") (collectively, "Plaintiffs") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 108 (hereinafter, "Mot.").) The C. Agriculture Defendants also ask the Court to strike Plaintiffs' allegations in the SAC "which refer to, or are predicated on, the C Agriculture Demand Letter" pursuant to Federal Rule of Civil Procedure 12(f). (*See* Mot. at 2, 7.) After considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for resolution without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the C. Agriculture Defendants' Motion is **GRANTED WITH PREJUDICE**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Parties

#### 1.  Plaintiffs

Plaintiff Harmoni International is a California Corporation with its principal place of business in California.  (Dkt. No. 98 ("SAC") ¶ 31.)  Harmoni International is engaged in the importation and sale of fresh garlic, including garlic bulbs and peeled garlic, dehydrated garlic, ginger, and paprika.  (*Id.*)  Plaintiff Zhengzhou Harmoni is a subsidiary of Harmoni International, has its principal place of business in the Henan Province of China, and is engaged in the production, sale, and exportation of fresh garlic, including garlic bulbs and peeled garlic, from China to the United States.  (SAC ¶ 32.)  Harmoni International acts as the exclusive importer of Plaintiff Zhengzhou Harmoni's fresh garlic for the United States market.  (SAC ¶ 31.)

#### 2.  Moving Defendants

Defendant C. Agriculture is a New York corporation with its principal place of business in New York City, New York.  (SAC ¶ 44.)  C. Agriculture does business in California and New York, and is a distributor of fresh garlic and other spices and vegetables.  (*Id.*)  Defendant Jin Xia Wen ("Wen") owns C. Agriculture, and Mingju Xu ("Xu") is its manager.  (SAC ¶¶ 50–51.)  Both Wen and Xu are individuals residing in New York.  (*Id.*)

#### 3.  Non-Moving Defendants Relevant to the Pending Motions

Defendant Hume ("Hume") is an attorney residing in El Prado, New Mexico.  (SAC ¶ 36.)  Hume is the principal founder of Hume & Associates.  (*Id.*)  At times relevant to this action, Hume resided in, and had his principal place of business in, Ojai, California.  (*Id.*)  At all relevant times, Defendant Montoya ("Montoya") was an associate attorney with Hume & Associates.  (SAC ¶ 37.)  Plaintiffs represent that Montoya left Hume & Associates shortly after Plaintiffs filed this action.  (*Id.*)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

Defendant Crawford ("Crawford") is an individual residing in Dixon, New Mexico.  (SAC ¶ 38.)  Crawford grows garlic and other produce on his two-acre farm, known as El Bosque Garlic Farm.  (*Id.*)  Defendant Katz ("Katz") is an individual residing in Llano, New Mexico, who, like Crawford, grows garlic and other produce on his farm, known as the "Boxcar Farm."  (SAC ¶ 39.)

Defendant Huamei Consulting Co., Inc. ("Huamei USA") is a California corporation with its principal place of business in Ojai, California.  (SAC ¶ 40.)  Huamei USA allegedly works with Hume & Associates and Huamei Consulting Co., Ltd. ("Huamei China")—a non-moving defendant and Huamei USA's affiliate—to provide producers, exporters, and United States importers of Chinese garlic with a variety of professional services related to antidumping matters.  (*Id.*)

Defendant Kwo Lee, Inc. ("Kwo Lee") is a California corporation with its principal place of business in St. Louis, Missouri.  (SAC ¶ 42.)  Shuzhang Li is an individual residing in St. Louis, Missouri, and is the owner of Kwo Lee.  (SAC ¶ 43.)  Kwo Lee is engaged in the importation of fresh garlic from China for a number of companies owned and/or controlled by non-moving defendants Wenxuan Bai and Ruopeng Wang.  (SAC ¶ 42.)

Defendant Wenxuan Bai ("Bai") is a businessman residing in China.  (SAC ¶ 33.)  According to Plaintiffs, Bai is the owner of, or is otherwise associated with, Defendant Qingdao Tiantaixing Co., Ltd. ("QTF"), Defendant Qingdao Lianghe International Trading Co., Ltd. ("Lianghe"), and non-defendant Qingdao Xintianfeng Foods Co., Ltd. ("QXF").  (SAC ¶ 15.)  Plaintiffs also allege that Bai has been actively involved in the business operations of Defendant Heibei Golden Bird Trading Co., Ltd. ("Golden Bird"), another large Chinese exporter whose business operations are allegedly intertwined with those of QTF, QXF, and Lianghe.  (*Id.*)

Defendant Jicheng Ye ("Ye"), like Bai, is a businessman residing in China.  (SAC ¶ 34.)  Plaintiffs allege that Ye has been acting in concert with Bai "to destroy Plaintiffs' competitive position in the U.S. garlic market and to replace Zhengzhou Harmoni's exports with garlic exported by his own companies or those of his co-conspirators."  (SAC ¶ 16.)  Ye allegedly owns and/or controls a number of different entities exporting

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

fresh garlic to the United States, including Defendant Jinxiang Hejia Co., Ltd. and non-defendants Sunny Import and Export Limited.  (*Id.*)

Plaintiffs aver that Bai and Ye are "actively assisted" by Defendant Ruopeng Wang ("Wang"), a Chinese businessman who controls and operates Defendant Golden Bird, (SAC ¶ 17), with which Defendant Bai allegedly has close ties, (SAC ¶ 15). Defendant Wang also allegedly controls Huamei China.  (SAC ¶ 18.)[1]

## B.    Factual Background

In 1994, the Department of Commerce ("DOC") issued an antidumping order covering fresh garlic from, among other places, the People's Republic of China (the "Chinese Garlic Order").[2]  (SAC ¶ 2.)  The purpose of the Chinese Garlic Order was to impose duties on exporters of Chinese garlic to prevent the "dumping" of low-priced garlic in the United States, which would effectively reduce the value of domestic-grown garlic and injure competition among domestic competitors unable to compete with the lower-priced Chinese garlic.  (*See* SAC ¶ 83.)  Plaintiffs note that

> subtitle B of title VII of the Tariff Act of 1930 provides that antidumping duties will be imposed when two conditions are met: (a) the DOC determines that the foreign subject merchandise is being, or is likely to be, sold in the United States at less than fair value, and (b) the U.S. International Trade Commission ("ITC") determines that a domestic industry has been materially injured or is threatened with material injury by reason of imports of that merchandise.

---

[1] Although there are other defendants named in this action, (*see generally* SAC), only the defendants discussed are relevant to the instant Motion pending before the Court.

[2] Plaintiffs allege that the country-wide rate for garlic exported from China is $4.71 per kilogram, which is roughly 2.5 times the amount the garlic could be sold for on the market, thereby effectively barring the legal importation of fresh garlic from China by producers and exporters subject to the country-wide rate.  (SAC ¶ 121.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

(SAC ¶ 84 (citing 19 U.S.C. § 1673).)  Interested parties, usually comprised of commercial manufacturers, producers, or wholesalers of a product they believe is being imported and being sold at less than fair value, may file petitions to the DOC and the ITC alleging injury to a domestic industry as a result of "dumping" conduct.  (SAC ¶ 85.) The DOC also initiates investigations *sua sponte*.  (*Id.*)

Since 1994, the DOC "has conducted annual administrative reviews of companies subject to the Chinese Garlic Order as well as reviews of 'new shippers' of Chinese garlic."  (SAC ¶ 4.)  Because of these reviews, most Chinese garlic is subject to high duties, due in part to Chinese garlic exporters' "persistent" antidumping violations.  (SAC ¶ 5.)  One notable exception is garlic imported by Plaintiff Harmoni International from Plaintiff Zhengzhou Harmoni, which has enjoyed a zero duty rate since it was a "new shipper" in 2001.  (SAC ¶ 6.)  Plaintiff Zhengzhou Harmoni has maintained that rate to the present day and is the only current Chinese exporter with a zero duty rate.[3]  (SAC ¶ 126.)  As Plaintiff Zhengzhou Harmoni's parent company and exclusive importer, Plaintiff Harmoni International allegedly enjoys an advantage in the marketplace because of its subsidiary's zero duty rate.  (SAC ¶ 8.)

According to Plaintiffs, "[r]ather than comply with U.S. antidumping laws in order to improve their competitive position," each of the named defendants "participated in an [e]nterprise which embarked upon a series of unlawful and illegal acts designed to defraud the DOC, U.S. Customs and Border Protection ('Customs'), the agency charged with administering the DOC's antidumping orders, and the [CIT]."  (SAC ¶ 9.)  Plaintiffs allege that Defendant Bai has "driven" the scheme, (SAC ¶ 15), working closely with Defendants Ye and Wang, who, together, have been working through Hume & Associates to engage in the allegedly fraudulent conduct, (SAC ¶¶ 16–18).

---

[3] Specifically, Plaintiffs allege that Zhengzhou Harmoni received a zero duty rate in Period of Review ("POR") 8, the eighth year after the initial Chinese Garlic Order was issued and the first year in which Zhengzhou Harmoni was reviewed.  (SAC ¶ 124.)  In the next two consecutive administrative reviews, POR 9 and POR 10, the DOC calculated the same zero cash deposit rate for Zhengzhou Harmoni.  (SAC ¶ 125.)  Since POR 10, which was in 2004, the DOC has not reviewed Zhengzhou Harmoni, thereby allowing Zhengzhou Harmoni to maintain its zero duty rate.  (SAC ¶ 126.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

     In the most recent alleged "scheme," Hume & Associates, on behalf of Bai, Ye, and Wang, allegedly "recruited" Defendants Crawford and Katz, two garlic farmers from New Mexico, to petition the DOC to review Plaintiff Zhengzhou Harmoni's garlic exportations.  (SAC ¶ 22.)  According to Plaintiffs, these requests contain "false and misleading allegations against Plaintiffs."  (*Id.*)  Plaintiffs also aver that the DOC "filings are part of an ongoing effort to force Plaintiffs to incur the significant expense and burdens associated with an administrative review, strip Plaintiffs of their lawful competitive advantage due to their zero dumping duty rate, and increase the Chinese garlic market share of various Enterprise members."  (*Id.*)  Plaintiffs allege that the petition is being "bankrolled by a $1.6 million 'war chest' set up at Hume and Wang's instigation by the Chinese Garlic Association[4] in September 2014."  (SAC ¶ 25.)  "This war chest was created for the purpose of destroying Plaintiffs' business in the United States and replacing Zhengzhou Harmoni's exports with Chinese garlic exported by companies controlled by Bai, Ye, and Wang unless Plaintiffs would agree to meet the extortionate cash payment demands of the Enterprise."  (*Id.*)

     Finally, and most pertinent to the instant Motion, Plaintiffs allege that the C. Agriculture Defendants, which allegedly have close ties to Bai, Ye, Hume, and other defendants, purportedly sent a "false and extortionate" demand letter to Harmoni International and one of its largest United States customers, Christopher Ranch L.L.C. ("Christopher Ranch"), on November 18, 2015.  (*See* SAC ¶¶ 26, 279.)  In the demand letter, the C. Agriculture Defendants, through their attorney, James DeCristofaro, allege "that Harmoni and Christopher Ranch 'acted together' in order to sell peeled garlic 'at a price significantly below the U.S. market price for peeled garlic,' that this behavior was an antitrust violation, and that this 'arrangement' was made possible by using 'garlic imports from China processed with prison labor.'"  (SAC ¶ 280 (quoting the demand letter).)  The letter concludes by "demanding" a settlement of $32 million.  (*See* SAC ¶ 282.)

---

[4] The term "Chinese Garlic Association" refers to a group allegedly comprised of "Chinese garlic exporters owned or controlled by Defendants Bai, Ye, and Wang."  (SAC ¶ 20.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | | Date | August 5, 2016 |
|---|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | | |

According to Plaintiffs, "C Agriculture made these false claims in an effort to defame and extort Harmoni," and "C Agriculture knew it had no basis to claim that Harmoni used prison labor in the garlic it imported." (SAC ¶ 284.) Plaintiffs also allege that "C Agriculture's letter constitutes an extortionate threat to publicly accuse Harmoni of a crime it did not commit unless Harmoni pays it $32 million." (SAC ¶ 285.) Plaintiffs add that "C Agriculture apparently had no good faith intention to actually file a lawsuit against Harmoni and/or Christopher Ranch, and, in fact, did not do so." (SAC ¶ 289.) Additionally, Plaintiffs aver that "[t]he letter was made for the purpose of interfering directly with Plaintiffs' business relationships, defaming and damaging Plaintiffs' relationships with their customer Christopher Ranch, as well as for the purpose of extorting Plaintiffs, and did not serve as a necessary, useful, or good faith step in any litigation process." (*Id.*)

Plaintiffs also imply that the C. Agriculture Defendants' demand letter was in furtherance of the alleged scheme that Bai controlled, alleging that "C Agriculture's principals and management, Wen and Xu, played an active role in the subject defamation and attempted extortion . . . [and] [b]oth have close business ties to Bai and Ye[] and have employed Hume as counsel in prior matters." (SAC ¶ 290.) Plaintiffs also claim that there is additional circumstantial evidence of the C. Agriculture Defendants' connection with the overarching scheme; namely, that "on March 9, 2016, Hume submitted a letter on behalf of QTF to the DOC, requesting the DOC to investigate the assertion in the C Agriculture [demand] letter that Plaintiffs use prison labor to process the Chinese garlic they imported to the United States." (SAC ¶ 291.)

Finally, Plaintiffs allege that the C. Agriculture Defendants, on eight separate occasions, made fraudulent statements via electronic interface to Customs in an effort to act as a "funnel" of garlic grown or exported by Chinese Enterprise members into the United States.[5] (*See* SAC ¶¶ 150, 174–175, 178, 306.) "Under this funneling scheme, Bai and Wang, with the assistance of C Agriculture and others, were unlawfully selling

---

[5] Specifically, Plaintiffs allege that the C. Agriculture Defendants submitted fraudulent documentation to Customs through Custom's electronic interface on the following dates: February 22, 2013; February 23, 2013; February 28, 2013; March 1, 2013; March 2, 2013; March 8, 2013; March 9, 2013; and March 15, 2013. (SAC ¶ 306.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

Golden Bird's favorable dumping duty rate to other Enterprise members for the purpose of circumventing the anti-dumping deposit rate that would have ordinarily been applicable," (SAC ¶ 181), which purportedly harmed Plaintiffs by decreasing their "market share" due to the low costs at which competing garlic exporters were able to sell their products, (SAC ¶¶ 182–183). Thus, Plaintiffs seek damages in the amount of lost sales caused by the purportedly fraudulent scheme. (*See* SAC ¶ 183.)

### C.    Procedural Background

Plaintiffs initiated this action on January 27, 2016, filing their Original Complaint with this Court. (Dkt. No. 1.) Plaintiffs filed their First Amended Complaint ("FAC") on March 4, 2016, alleging the following six claims against all of the defendants: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (Dkt. No. 26 ("FAC") ¶¶ 259–275); (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, (FAC ¶¶ 276–281); (3) unfair competition, under California common law, (FAC ¶¶ 282–286); (4) trade libel, under California law, (FAC ¶¶ 287–291); (5) tortious interference with contractual relations, pursuant to California law, (FAC ¶¶ 292–298); and, (6) intentional interference with prospective economic advantage, under California law, (FAC ¶¶ 299–307).

On March 4, 2016, Plaintiffs also filed a Motion for Preliminary Injunction, (Dkt. No. 27), asking the Court to issue an order requiring "Defendants Hume, Montoya, Crawford, and Katz to retract all false statements" made in their DOC petitions, (*see* Dkt. No. 27-8). In the same Motion, Plaintiffs' also requested that the Court enjoin Defendants Hume, Montoya, Crawford, Katz, C. Agriculture, Wen, and Xu from making false statements in the future. (*See id.*)

On March 18, 2016, the C. Agriculture Defendants filed a Motion to Dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) and (12)(f). (Dkt. No. 37.) The same day, the C. Agriculture Defendants also filed a Motion to Strike the second through sixth claims in Plaintiffs' FAC pursuant to California Civil Procedure Code section 425.16, also known as an "anti-SLAPP" Motion. (Dkt. No. 39.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

Also on March 18, 2016, Defendants Hume, Shuzhang Li, and Huamei USA (collectively, the "Hume Defendants") filed a Motion to Dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 44.) The same day, Defendants Montoya, Crawford, and Katz (collectively, the "Montoya Defendants") filed a Motion to Dismiss Plaintiffs' FAC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Dkt. No. 45.) Finally, on March 25, 2016, the Hume and Montoya Defendants filed an anti-SLAPP Motion as well as a Motion to Strike certain portions of Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(f). (Dkt. No. 48.)

On May 16, 2016, the Court held oral argument regarding the foregoing Motions. (Dkt. No. 89.) On May 26, 2016, the Court granted the Montoya Defendants' Rule 12(b)(2) Motion, granted the C. Agriculture Defendants' and the Hume and Montoya Defendants' anti-SLAPP Motions and therefore dismissed Plaintiffs' second through sixth claims with prejudice, denied as moot Plaintiffs' Motion for Preliminary Injunction, granted the C. Agriculture Defendants' Rule 12(b)(6) Motion as to Plaintiffs' RICO claim with leave to amend, denied the Hume Defendants' Rule 12(b)(6) Motion as to Plaintiffs' RICO claim, and denied as moot the moving parties' Rule 12(f) Motions to the extent they sought to strike portions of Plaintiffs' FAC the Court had already stricken by granting the anti-SLAPP Motions. (Dkt. No. 90 (hereinafter, "Order").)

On June 24, 2016, Plaintiffs filed their SAC, omitting the state law causes of action, retaining the 18 U.S.C. § 1962(c) RICO claim, and adding an 18 U.S.C. § 1962(d) RICO claim. (*See generally* SAC.) On July 11, 2016, the C. Agriculture Defendants filed a Motion to Dismiss Plaintiffs' SAC. (Mot.) Plaintiffs filed their Opposition on July 18, 2016. (Dkt. No. 115 (hereinafter, "Opp'n").) The C. Agriculture Defendants filed their Reply on July 25, 2016, (hereinafter, "Reply")), accompanied by a Request for Judicial Notice, (Dkt. No. 118 (hereinafter "RJN")). On August 1, 2016, Plaintiffs filed objections to the C. Agriculture Defendants' Request for Judicial Notice. (Dkt. No. 120.)

## III.   REQUEST FOR JUDICIAL NOTICE

As discussed above, the C. Agriculture Defendants have filed a Request for Judicial Notice. (*See* RJN.) Specifically, the C. Agriculture Defendants ask the Court to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

take judicial notice of (1) a sample entry summary submitted to U.S. Customs Authorities by the C. Agriculture Defendants on March 15, 2013, (Decl. of Lawrence E. Heller ("Heller Decl.") (Dkt. No. 118-1) ¶ 2, Ex. A); (2) the slip opinion in the matter of *Fresh Garlic Producers Association v. United States*, 121 F. Supp. 3d 1313, 1320 (CIT 2015), (Heller Decl. ¶ 3, Ex. B); and, (3) the subsequent slip opinion in the matter of *Fresh Garlic Producers Association v. United States*, dated November 30, 2015, (Heller Decl. ¶ 4, Ex. C).

In considering matters presented by the parties, a court may properly take judicial notice of (1) material which is included as part of the complaint or relied upon by the complaint, and (2) matters in the public record. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one "not subject to reasonable dispute in that it (1) is generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Further, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *See* Fed. R. Evid. 201(c)(2); *In re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). However, a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee*, 250 F.3d 668 (quoting Fed. R. Evid. 201(b)).

Given that each of these documents appears to have been publicly filed, the Court **GRANTS** the C. Agriculture Defendants' Request in its entirety. However, the C. Agriculture Defendants ask the Court to conclude, based on the "entry summary" document, that C. Agriculture was a "purchaser" of Chinese garlic from Golden Bird, not an "importer." (Reply at 1.) Plaintiffs dispute this fact, noting that the document itself lists C. Agriculture as an "importer." (Dkt. No. 120 at 1; *see also* Heller Decl. ¶ 2, Ex. A at 2.) Given that the Court may not take judicial notice of facts which are subject to reasonable dispute, *Lee*, 250 F.3d 668, the Court does not decide as to whether C. Agriculture was a purchaser or an importer of Chinese garlic from Golden Bird.

As to the second document, Plaintiffs correctly note that the exhibit the C. Agriculture Defendants have submitted is a printout from a private, third-party website. (*See* Heller Decl. ¶ 3, Ex. B.) "As a general matter, courts are hesitant to take notice of

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

information found on third party websites and routinely deny requests for judicial notice." *Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015). Accordingly, the Court will not presume that the document the C. Agriculture Defendants have submitted is the slip opinion in question. However, given that the slip opinion itself, as a publicly-filed document, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), the Court takes judicial notice of the opinion itself. The same reasoning applies for the third document, as the exhibit the C. Agriculture Defendants have submitted fails to indicate the document's origin. (*See* Heller Decl. ¶ 4, Ex. C.) However, the Court may take judicial notice of the opinion itself, given that it is a publicly filed document. The Court accordingly takes judicial notice of the opinion, but it does not take notice of the document attached to the Heller declaration.

## IV.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.*

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: first, the court must discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, the court must determine "whether they plausibly give rise to an entitlement to relief." *See id.* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

679; *accord Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  A court should consider the contents of the complaint and its attached exhibits, documents incorporated into the complaint by reference, and matters properly subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

A district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by any amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").  Leave to amend, however, "is properly denied . . . if amendment would be futile."  *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V.   DISCUSSION

As discussed above, Plaintiffs allege two RICO claims against the C. Agriculture Defendants.  (*See* SAC.)  Plaintiffs bring their first RICO claim pursuant to 18 U.S.C. § 1962(c), (*see* SAC ¶¶ 293–311), and their second RICO claim pursuant to 18 U.S.C. § 1962(d), (*see* SAC ¶¶ 312–318).  Both claims are predicated on the C. Agriculture Defendants' alleged acts of mail and wire fraud.  (*See* SAC ¶¶ 300, 318.)  The Court will address Plaintiffs' § 1962(c) claim first, then it will discuss Plaintiffs' § 1962(d) claim.

### A.   18 U.S.C. § 1962(c)

Title 18 provides a civil remedy for "[a]ny person injured in his business . . . by reason of a violation of section 1962."  18 U.S.C. § 1964(c).[6]  Pursuant to 18 U.S.C. § 1962, RICO makes it unlawful for a person "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

---

[6] Section 1964(c) provides a private cause of action for RICO predicate offenses of mail and wire fraud in violation of § 1962(c).  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 6–7 (2010).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | | Date | August 5, 2016 |
|---|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | | |

"The elements of a civil RICO claim are as follows: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)). To allege a violation of mail or wire fraud under 18 U.S.C. §§ 1341 or 1343, respectively, a plaintiff must show: (1) there was a scheme to defraud; (2) the defendants used the mail (or wire, radio, or television) in furtherance of the scheme; and, (3) the defendants acted with the specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth more than neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. *Odom*, 486 F.3d at 553. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *Id.* at 765.

### 1. Enterprise

"The term 'enterprise' is defined in 18 U.S.C. § 1961(4) as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Living Designs*, 431 F.3d at 361; *see also Odom*, 486 F.3d at 552 ("[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise."). In its previous Order, the Court concluded that Plaintiffs had adequately alleged in their FAC that the C. Agriculture Defendants were part of an associated-in-fact enterprise. (*See* Order at 45.) Given that Plaintiffs have alleged the same facts supporting this element in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

their SAC, the result is the same here.  (*Compare* FAC ¶¶ 60, 128–130, 248–249, 258, 270, *with* SAC ¶¶ 61–63, 171–207, 232, 277–279, 306.)

### 2.      Pattern of Racketeering Activity

"Racketeering activity" is defined as any act indictable under specified provisions of Title 18 of the United States Code, "and includes the predicate acts of mail fraud [and] wire fraud." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004); *see also* 18 U.S.C. § 1961(1).  To amount to a "pattern" of racketeering activity, there must have been "at least two [predicate] acts of racketeering activity" within ten years of each other.  18 U.S.C. § 1961(5).  But although two predicate acts are necessary for a pattern, they are not sufficient alone.  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989).  Moreover, where, as here, a plaintiff alleges RICO claims against multiple defendants, the "plaintiff must allege at least two predicate acts by *each* defendant."  *In re WellPoint, Inc.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011).  Inherent in the requirement for a pattern of racketeering activity is the requirement of continuity.  *See H.J. Inc.*, 492 U.S. at 237.  "[T]o prove a pattern of racketeering activity a plaintiff [] must show that the racketeering predicates are related, and that they amount to or pose a threat of continued activity."  *Id.* at 239.  These are two distinct requirements.  *See id.* at 242 ("[W]hat must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements.").  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."  *Id.*

In its previous Order, the Court concluded that Plaintiffs had failed to demonstrate that the C. Agriculture Defendants engaged in a "pattern" of racketeering activity because Plaintiffs alleged "only one predicate act against the C. Agriculture Defendants—sending the demand letter."  (Order at 46.)  The Court therefore granted the C. Agriculture Defendants' Rule 12(b)(6) Motion on that ground.  (*See id.*)

To remedy their pleading deficiency, Plaintiffs have added allegations providing that, in addition to sending the demand letter on November 18, 2015, the C. Agriculture Defendants made eight fraudulent submissions to Customs via Custom's electronic

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-00614-BRO (ASx)** | | Date | August 5, 2016 |
|---|---|---|---|---|
| Title | **HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL.** | | | |

interface.[7]  (*See* SAC ¶¶ 174–176, 178, 306.)  According to Plaintiffs, the C. Agriculture Defendants sent the eight submissions over a three-week period of time, from February 22, 2013 through March 15, 2013.  (SAC ¶ 306.)  As previously discussed, Plaintiffs aver that the submissions were fraudulent because the C. Agriculture Defendants falsely declared that the exported garlic originated from Golden Bird when in fact, Plaintiffs allege, the garlic originated from other members of the Enterprise not subject to Golden Bird's low duty rate.  (SAC ¶ 178.)

The C. Agriculture Defendants' principal argument regarding this element is that the two allegedly "predicate" acts of sending the demand letter and submitting false statements to Customs are unrelated and thus cannot form the basis of a RICO claim. (Mot. at 12.)  In opposition, Plaintiffs point out that the false statements constitute eight separate predicate acts, not one.  (Opp'n at 8.)  Plaintiffs also maintain that the acts are related because they are all motivated by a single purpose—to harm Plaintiffs' business. (Opp'n at 7–8.)

The United States Supreme Court held that, as to the relationship requirement, "[c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *H.J. Inc.*, 492 U.S. at 240.  Here, the Court disagrees with Plaintiffs that the demand letter and the allegedly false submissions to Customs are "related."  Although it is plausible that the demand letter was sent for the purpose of harming Plaintiffs, the same cannot be said of Plaintiffs' allegation that the C. Agriculture Defendants' intent in sending the fraudulent submissions was to harm Plaintiffs.  While the Court must accept as true Plaintiffs' allegations that the C. Agriculture Defendants sent fraudulent submissions to Customs in an effort to obtain a low duty rate for Enterprise members otherwise subject to the country-wide rate, the Court need not accept as true Plaintiffs' conclusory allegation that the C. Agriculture Defendants' intent in doing so was to harm Plaintiffs.  Supporting this conclusion is the fact that, even viewing the facts in a light most favorable to Plaintiffs, such an allegation is implausible.  The plausible intent underlying a scheme to defraud

---

[7] For purposes of this Order, the Court assumes, without deciding, that these eight submissions constitute "predicate acts" under RICO.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

Customs in order to obtain a low duty rate for Chinese garlic growers and exporters is to allow those individuals to sell their garlic in the United States, and to do so at a low price. Any harm to Plaintiffs is only incidental, suggesting that the intent is not to harm Plaintiffs, but rather to increase profits, which only indirectly harms Plaintiffs. Plaintiffs' conclusory allegation to the contrary is insufficient to demonstrate a relationship between the demand letter and the Customs submissions.

Given that the alleged predicate acts are unrelated, they must separately constitute a "pattern of racketeering activity." As the Court concluded in its previous Order, (*see* Order at 46), the C. Agriculture Defendants' demand letter constitutes only one predicate act, and without a relationship to any other alleged predicate act, it cannot, standing alone, constitute a *pattern* of racketeering activity.[8] Accordingly, the Court concludes that the C. Agriculture Defendants' demand letter, by itself, is insufficient to demonstrate a RICO violation.[9]

---

[8] The C. Agriculture Defendants also argue that their demand letter cannot constitute a predicate act because the Court "indicated" in its previous Order that the letter was protected under the *Noerr-Pennington* doctrine. (Mot. at 3.) The C. Agriculture Defendants' argument is misguided. The Court neither indicated nor concluded that the demand letter was protected under the *Noerr-Pennington* doctrine; rather, the Court noted that the doctrine generally applies to pre-suit demand letters. (*See* Order at 49 n.32.) The Court expressly declined to address whether the *Noerr-Pennington* doctrine applied to the demand letter because the Court had already concluded that Plaintiffs failed to adequately allege a pattern of racketeering as to the C. Agriculture Defendants. (*See id.*) Nevertheless, the Court need not determine here whether the *Noerr-Pennington* doctrine applies to the demand letter, because even assuming it does not apply, thereby allowing the demand letter to serve as a predicate act, Plaintiffs fail to establish a relationship between the demand letter and any other alleged predicate act. And, as previously discussed, the demand letter, standing alone, is insufficient to establish a pattern of racketeering activity.

[9] To the extent Plaintiffs argue that there is a "relationship" between the allegedly fraudulent submissions and the demand letter based on the "results, participants, victims, or methods of commission," *H.J. Inc.*, 492 U.S. at 240, the Court disagrees. As to the demand letter, the result was that Plaintiffs were put on notice of a potential Clayton Act claim against it; the participants were the C. Agriculture Defendants and Plaintiffs; the alleged "victims" were Plaintiffs; and the method of commission was a demand letter seeking a settlement. By contrast, regarding the allegedly fraudulent submissions to Customs, the alleged result was that Customs was defrauded, thereby permitting Chinese

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

The inquiry does not end here, however, as Plaintiffs have also alleged eight additional predicate acts—the purportedly fraudulent submissions to Customs. Those acts clearly satisfy the "relationship" requirement, as they each achieved the same alleged result—defrauding Customs—involved the same victim—Customs—and had the same alleged purpose—to obtain a low duty rate for Enterprise members otherwise subject to the country-wide rate. Accordingly, the Court concludes that the purportedly fraudulent submissions satisfy the "relationship" test.

The Customs submissions, however, must also satisfy the "continuity" requirement. *See H.J. Inc.*, 492 U.S. at 240. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241 (citing *Barticheck v. Fid. Union Bank/First Nat. State*, 832 F.2d 36, 39 (3d Cir. 1987)). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ." *Id.* at 242. Here, Plaintiffs' allegations regarding the Customs submissions fail to satisfy the closed-ended concept of continuity, as the alleged acts spanned a period of only three weeks. (*See* SAC ¶ 306.) However, Plaintiffs argue that they also satisfy the open-ended concept of continuity. (Opp'n at 9–11.)

"Whether the predicates . . . establish a threat of continued racketeering activity depends on the specific facts of each case." *H.J. Inc.*, 492 U.S. at 242. "A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *Id.* For example, if an individual "were to sell 'insurance' to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each

---

garlic growers and exporters subject to the country-wide rate to export garlic at Golden Bird's low duty rate; the participants were the C. Agriculture Defendants, Golden Bird, the Enterprise members receiving the benefit of the low duty rate, and Customs—Plaintiffs were not involved; the alleged "victim" was Customs; and the method of commission was an electronic submission that included allegedly false statements regarding the identities of Chinese garlic growers and exporters. Accordingly, there is no "relationship" between the Customs submissions and the demand letter.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

month to collect the 'premium' that would continue their 'coverage,'" such conduct would present a "specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity," even though "the number of related predicates involved may be small and they may occur close together in time." *Id.* "The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 243.

Here, Plaintiffs maintain that they have alleged facts demonstrating that the Enterprise has continued its fraudulent pattern of obtaining new shipper rates and submissions of false statements to defraud Customs, and that the C. Agriculture Defendants remain an active distributor of garlic for purported Enterprise members. (Opp'n at 10 (citing SAC ¶¶ 10, 12, 27, 148, 184–191, 301–302).) In response, the C. Agriculture Defendants argue that Plaintiffs improperly attempt to establish continuity by arguing that C. Agriculture imported garlic from Golden Bird from 2009 to 2014, even though the predicate acts are not based on garlic importation, but rather making fraudulent statements to Customs. (Reply at 5.) This argument, however, misses the mark. Plaintiffs are not claiming that they satisfy the closed-ended concept of continuity because the allegedly illegal importation of Chinese garlic occurred from 2009 to 2014; rather, they are arguing that they have satisfied the open-ended concept of continuity because the C. Agriculture Defendants' purportedly fraudulent submissions demonstrate that such conduct is typical in their business practice. Notwithstanding the C. Agriculture Defendants' failure to respond meaningfully to Plaintiffs' argument, the Court need not determine whether Plaintiffs have adequately alleged open-ended continuity. As discussed below, the Court finds that Plaintiffs have failed to sufficiently plead the proximate cause element of their § 1962(c) RICO claim.

### 3.    Proximate Cause

The last element of a RICO claim is that the predicate acts must have caused the plaintiff's harm. *Living Designs*, 431 F.3d at 361. "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Grp.*, 559 U.S. at 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

(quoting *Holmes v. Sec. Inv'r Prot. Corp*, 503 U.S. 258, 268 (1992)). "Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes*, 503 U.S. at 268). "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Id.* (quoting *Holmes*, 503 U.S. at 271.

The parties differ in their conclusions as to which United States Supreme Court case controls here. The C. Agriculture Defendants argue that *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451 (2006) is on-point and thus should apply.[10] (Mot. at 16–18.) According to Plaintiffs, however, *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) is closely analogous and should govern here. (Opp'n at 12–13.) The Court will therefore discuss both cases and analyze their application to the instant action.

In *Anza*, both the plaintiff and the defendants were competitors in the market of selling steel mill products, along with related supplies and services. *Anza*, 547 U.S. at 454. The plaintiff sued the defendants in the Southern District of New York, claiming the defendants were engaged in an unlawful racketeering scheme for the purpose of gaining sales and market share at the plaintiff's expense. *Id.* Specifically, the plaintiff alleged that the defendants "adopted a practice of failing to charge the requisite New York sales tax to cash-paying customers, even when conducting transactions that were not exempt from sales tax under state law." *Id.* This allegedly allowed the defendants to reduce their prices without affecting their profit margin. *Id.* According to the plaintiff, the defendants "submitted fraudulent tax returns to the New York State Department of Taxation and Finance in an effort to conceal their conduct." *Id.*

The Court in *Anza* ultimately concluded that the plaintiff had failed to establish proximate causation. *Id.* at 457–61. In its analysis, the Court first noted that the

---

[10] The C. Agriculture Defendants also argue that *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) is analogous. (*See* Mot. at 18–21.) However, given that the link between the predicate acts and the harm in *Hemi* was much more attenuated than in *Anza* and the present case, *see Hemi Grp.*, 559 U.S. at 6–12, the Court finds *Hemi* unhelpful in deciding whether Plaintiffs have satisfied the proximate causation requirement. The Court therefore does not discuss *Hemi* in this Order.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

plaintiff's theory was predicated on an allegation that it was harmed because the defendants defrauded the New York tax authority and used the proceeds from the fraud to lower prices and therefore attract more customers, which, in turn, reduced the plaintiff's volume of business. *See id.* at 457–58. The Court stated that "[t]he direct victim of this conduct was the State of New York, not" the plaintiff, as "[i]t was the State that was being defrauded and the State that lost tax revenue as a result." *Id.* at 458. The Court further reasoned that, although the plaintiff asserted that it suffered its own harms when the defendants "failed to charge customers for the applicable sales tax . . . [t]he cause of [the plaintiff's] asserted harms . . . [wa]s a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.*

The Court also noted that, in determining whether a plaintiff has established proximate causation in the civil RICO context, courts must also consider "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Id.* (citing *Holmes*, 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.")). To this point, the Court noted that there was "a second discontinuity between the RICO violation and the asserted injury"—the plaintiff's "lost sales could have resulted from factors other than [the defendants'] alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [the plaintiff's] lost sales were the product of [the defendants'] decreased prices." *Id.* at 459. The Court also pointed out "the speculative nature of the proceedings that would follow if [the plaintiff] were permitted to maintain its claim." *Id.* "A court considering the claim would need to begin by calculating the portion of [a defendant's] price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of [a plaintiff's] lost sales attributable to the relevant part of the price drop." *Id.* The Court concluded by stating that, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries. In this case, the answer is no." *Id.* at 461.

In *Bridge*, which this Court cited and discussed briefly in its previous Order, (*see* Order at 47–48), the United States Supreme Court began by stating the detailed facts of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

the case.  *See Bridge*, 553 U.S. at 642.  The Court explained that the Cook County
Treasurer's Office holds an annual "public auction at which it sells tax liens it has
acquired on the property of delinquent taxpayers." *Id.*  "Prospective buyers bid on the
liens, . . . [which] are stated as percentage penalties the property owner must pay the
winning bidder in order to clear the lien." *Id.*  "The bidder willing to accept the lowest
penalty wins the auction and obtains the right to purchase the lien in exchange for paying
the outstanding taxes on the property." *Id.*  The Court further explained that the auctions
are highly competitive, often resulting in multiple bidders who are willing to accept the
lowest penalty permissible—bidding 0%, or no penalty.  *Id.* at 642.  When the auction
results in a tie, with multiple participants bidding 0%, the county "allocate[s] parcels 'on
a rotational basis' in order to ensure that liens are apportioned fairly among 0% bidders."
*Id.* at 642–43.  This procedure, however, creates a problem: "Bidders who, in addition to
bidding themselves, send agents to bid on their behalf will obtain a disproportionate share
of liens." *Id.* at 643.  "To prevent this kind of manipulation, the county adopted the
'Single, Simultaneous Bidder Rule,' which requires each 'tax buying entity' to submit
bids in its own name and prohibits it from using 'apparent agents, employees, or related
entities' to submit simultaneous bids for the same parcel." *Id.*  "Upon registering for an
auction, each bidder must submit a sworn affidavit affirming that it complies with the
Single, Simultaneous Bidder Rule." *Id.*

Both the plaintiffs and the defendants in *Bridge* were regular participants in the
Cook County tax sales.  *Id.*  According to the plaintiffs, the defendants "had fraudulently
obtained a disproportionate share of liens by violating the Single, Simultaneous Bidder
Rule at the auctions held from 2002 to 2005." *Id.*  More specifically, the defendants had
allegedly violated RICO by agreeing to file fraudulent affidavits attesting that they
complied with the county's rule, obtaining their relative portion of the lien after bidding
0%, and transferring their multiple liens to a single entity, which then obtained a
disproportionate share of liens from the sale.  *Id.* at 644.

After the district court dismissed the plaintiffs' RICO claims for lack of standing,
observing that the plaintiffs were not recipients of the misrepresentation and therefore did
not rely on it, the Seventh Circuit reversed, holding that the plaintiffs had standing, that
proximate cause was established, and that the plaintiffs did not need to demonstrate that

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

they relied on the misrepresentations. *Id.* at 645. The Court granted certiorari to resolve a split of authority regarding whether first-party reliance is an essential element of a civil RICO claim predicated on mail fraud. *Id.* at 646.

As discussed in the previous Order, (*see* Order at 48), the Court ultimately concluded that first-party reliance is not required. *Bridge*, 553 U.S. at 649. In addressing proximate cause, the Court also held that the predicate act of fraudulently submitting affidavits attesting to compliance with the county's rule directly caused the plaintiffs' injuries, as the plaintiffs "lost valuable liens they otherwise would have been awarded" as a result of the alleged fraud. *Id.* at 649.

After carefully considering both cases, the Court finds that the instant action is more like *Anza* than *Bridge*. Although both *Anza* and *Bridge* involved a defendant which, like the defendant in this case, allegedly defrauded a third-party (the New York tax authority in *Anza*, the county in *Bridge*, and Customs in this case), the harm suffered by the plaintiff in *Anza* is more akin to the harm suffered by Plaintiffs in the instant action. Namely, the plaintiff in *Anza* alleged that it was harmed by the lost sales caused by the defendants' ability to charge lower prices due to its fraudulent practice of omitting sales tax and hiding that fact by submitting fraudulent tax returns. Similarly, here, Plaintiffs allege that they have been harmed by lost sales caused by the increased competition in the garlic market, which was made possible by the C. Agriculture Defendants' allegedly fraudulent statements to Customs because those statements allowed the Chinese garlic exporters and growers to send Chinese garlic to the United States using Golden Bird's low duty rate. Further, like the plaintiff in *Anza*, Plaintiffs' "lost sales could have resulted from factors other than [the C. Agriculture Defendants'] alleged acts of fraud." *Anza*, 547 U.S. at 459. As the *Anza* Court explained, "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [Plaintiffs'] lost sales were the product" of the competition the C. Agriculture Defendants allegedly made possible through their purportedly fraudulent conduct. *See id.*

The instant action is also unlike *Bridge* because the damages the plaintiffs allegedly suffered in *Bridge* were more directly traceable to the predicate acts than the alleged injuries Plaintiffs allege here. For example, in *Bridge*, there were a specific

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

amount of liens to which the plaintiffs could have been entitled absent the defendants' collusive, fraudulent conduct, and the plaintiffs would not have suffered harm absent the fraudulent conduct.  Thus, there was a quantifiable and direct loss in *Bridge*, whereas here, the loss is much more speculative and attenuated given that the lost profits Plaintiffs allegedly incurred, as the *Anza* Court explained, *see Anza*, 547 U.S. at 459, could have been caused by a number of different factors.[11]

In sum, the Court concludes that the connection between Plaintiffs' alleged harm of lost sales and profits that was purportedly caused by the C. Agriculture Defendants' Customs submissions is too attenuated to satisfy the proximate causation requirement. As the *Anza* Court stated, "[a] RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense."  *Id.* at 460.  As previously stated, the *Anza* Court also instructed that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  *Id.* at

---

[11] Plaintiffs cite dicta in *Anza* and distinguish it in an effort to satisfy the proximate cause element.  (*See* Opp'n at 14.)  Specifically, Plaintiffs cite the following: "National, however, could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud.  It may have received a cash inflow from some other source or concluded that the additional sales would justify a smaller profit margin.  Its lowering of prices in no sense required it to defraud the state tax authority."  *Anza*, 547 U.S. at 458–59.  Plaintiffs argue that, by contrast, it was *only* the C. Agriculture Defendants' allegedly fraudulent conduct that could have led to Plaintiffs' lost profits.  (*See* Opp'n at 14.)  The Court finds Plaintiffs' attempt to distinguish *Anza* unavailing.  First, the inquiry into whether there were additional explanations for the defendant-competitor's lowered prices was only one factor of many in the Court's analysis.  *See Anza*, 547 U.S. at 457–60.  Further, that analysis does not translate to the instant action, because, unlike the plaintiff in *Anza*, Plaintiffs here do not allege that their harm resulted from the C. Agriculture Defendants' lowered prices; rather, they allege that the C. Agriculture Defendants defrauded Customs, which allowed Chinese garlic growers and exporters to sell their products in the United States market, which purportedly caused Plaintiffs to lose profits because of the increased competition. However, as previously stated, and as discussed in *Anza*, "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [Plaintiffs'] lost sales were the product of [the increased competition]."  *Id.* at 459.  Thus, Plaintiffs' alleged harm is too speculative and attenuated to have been proximately caused by the C. Agriculture Defendants' purportedly fraudulent submissions to Customs.

---

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

461.  As in *Anza*, the answer here is no.[12]  Accordingly, the C. Agriculture Defendants' Motion to Dismiss is **GRANTED WITH PREJUDICE** as to Plaintiffs' § 1962(c) claim, as amendment would be futile given the lack of proximate causation between the predicate acts and Plaintiffs' allegedly suffered harm.  *See Carrico*, 656 F.3d at 1008; *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("As here, where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.").[13]

**B.      18 U.S.C. § 1962(d)**

In their second cause of action, Plaintiffs bring a § 1962(d) claim, alleging that the C. Agriculture Defendants conspired to violate § 1962(c).  (SAC ¶¶ 312–318.)  The C. Agriculture Defendants' principal argument regarding this claim is that Plaintiffs improperly added this claim when they amended their FAC.  (Mot. at 21.)  The Court agrees.

"When the language of an order clearly states that a plaintiff may only amend to address certain deficiencies identified in the order, courts have held that a plaintiff is barred from adding new claims or parties."  *Jameson Beach Prop. Owners Ass'n v.*

---

[12] Plaintiffs make an additional attempt to distinguigh *Anza*, arguing that "[i]n *Anza*, . . . it was the profits of the RICO scheme – not, as here, the illegal conduct itself – that resulted in the harm to plaintiffs."  (Opp'n at 14.)  The Court disagrees.  In *Anza*, the benefit of the predicate acts was the lowered cost to the defendant, which purportedly allowed it to sell its products at lower prices, which then reduced the plaintiff's market share.  Here, too, the benefit of the allegedly fraudulent submissions was to permit Chinese garlic growers and exporters to send garlic to the United States using Golden Bird's low duty rate, which allowed them to sell garlic in the United States at a low price, which then allegedly reduced Plaintiffs' market share.  *Anza* and the instant action are the same in that respect, and Plaintiffs' arguments to the contrary are unavailing.

[13] The Court also does not grant Plaintiffs leave to amend to demonstrate a "relationship" between the alleged predicate acts—the demand letter and the Customs submissions—because amendment would be futile.  *See Carrico*, 656 F.3d at 1008.  The demand letter and the Customs submissions are too attenuated and unrelated for any additional allegations to establish a relationship between the two for purposes of RICO liability.

---

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 16-00614-BRO (ASx)** | | Date | August 5, 2016 |
|---|---|---|---|---|
| Title | **HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL.** | | | |

*United States*, No. 2:13-CV-01025-MCE-AC, 2014 WL 4925253, at *4 (E.D. Cal. Sept. 29, 2014).  For example, in *Benton v. Baker Hughes*, the court found that the previous order did not grant plaintiff leave to add new claims when the order stated that plaintiff "may file an amended complaint addressing the deficiencies identified herein."  *See Benton v. Baker Hughes*, No. CV 12-07735 MMM (MRWx), 2013 WL 3353636, at *3 (C.D. Cal. June 30, 2013); *Benton v. Baker Hughes*, No. CV 12-07735 MMM (MRWx) (C.D. Cal. Jan. 3, 2013), ECF No. 23.

Here, in its previous Order, the Court specifically granted Plaintiffs leave to amend their § 1962(c) claim.  (*See* Order at 46–47.)  It did not grant Plaintiffs' leave to add new claims.  (*See id.*)  Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within twenty-one days after serving it, or after a pleading or motion responsive to it has been filed, whichever is earlier.  Fed. R. Civ. P. 15(a)(1).  In all other cases, a party can amend its pleading only with the opposing party's written consent or leave of court.  Fed. R. Civ. P. 15(a)(2).  Given that Rule 15(a)(1) was inapplicable, Plaintiffs were required to seek either leave of Court or the named defendants' written consent to add a new cause of action.  Because Plaintiffs failed to do so, the Court hereby **STRIKES** Plaintiffs' § 1962(d) claim from their SAC.  If Plaintiffs wish to add this claim, they must either file a Motion for Leave to Amend, or they must obtain written consent from the defendants in this action.  *See* Fed. R. Civ. P. 15(a)(2).

Even assuming Plaintiffs did not improperly add their § 1962(d) claim, the new cause of action would nevertheless fail as applied to the C. Agriculture Defendants.  Where a plaintiff "has failed to allege the requisite substantive elements of RICO, the conspiracy cause of action cannot stand."  *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992); *see also Neibel v. Trans World Assurance Co.*, 108 F.3d 1123, 1127 (9th Cir. 1997) (clarifying that, "if the section 1962(c) claim does not state an action upon which relief could *ever* be granted, regardless of the evidence, then the section 1962(d) claim cannot be entertained"), *implied overruling on other grounds recognized by United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004).  Here, as discussed above, Plaintiffs' § 1962(c) cannot be entertained, as Plaintiffs have failed to adequately allege facts which—even accepting them as true—(1) demonstrate a

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 16-00614-BRO (ASx) | Date | August 5, 2016 |
|---|---|---|---|
| Title | HARMONI INTERNATIONAL SPICE, INC. ET AL. V. WENXUAN BAI ET AL. | | |

relationship between the alleged predicate acts (the demand letter and the Customs submissions) and (2) satisfy the proximate cause element.  Given that Plaintiffs' § 1962(c) claim fails, Plaintiffs' § 1962(d) claim necessarily fails as well.  *See Wollersheim*, 971 F.2d at 367 n.8.  Thus, as to Plaintiffs' § 1962(d) claim, to the extent Plaintiffs seek and obtain leave to amend to add this claim, the claim cannot apply to the C. Agriculture Defendants given that Plaintiffs cannot state a claim against the C. Agriculture Defendants under § 1962(c).  The C. Agriculture Defendants' Motion is therefore **GRANTED WITH PREJUDICE** as to Plaintiffs' § 1962(d) claim.[14]  To clarify, this conclusion does not preclude Plaintiffs from seeking and obtaining leave to amend in order to add the § 1962(d) claim as applied to any other defendant.

## VI.   CONCLUSION

For the foregoing reasons, the C. Agriculture Defendants' Rule 12(b)(6) Motion is **GRANTED WITH PREJUDICE**.  The hearing scheduled for August 8, 2016, is hereby **VACATED**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ah |

---

[14] To the extent the C. Agriculture Defendants move to strike portions of Plaintiffs' SAC that mention the C. Agriculture Defendants' demand letter pursuant to Rule 12(f), that Motion is **DENIED as moot** in light of the fact the Court has granted the C. Agriculture Defendants' 12(b)(6) Motion with prejudice as to both of Plaintiffs' claims.